UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                    )
DIANE G. SHORT; SAMIRA PARDANANI;   )
JUDITH DAVIAU; and JOSEPH BARBOZA,  )
Individually and as Representatives )
of a Class of Participants and      )
Beneficiaries in and on Behalf of   )
the BROWN UNIVERSITY DEFERRED       )
VESTING RETIREMENT PLAN, and the    )
BROWN UNIVERSITY LEGACY RETIREMENT  )
PLAN,                               )
                                    )
         Plaintiffs,                )
                                    )
    v.                              )   C.A. No. 17-318 WES
                                    )
BROWN UNIVERSITY in Providence in   )
the State of Rhode Island and       )
Providence Plantations,             )
                                    )
         Defendant.                 )
_____)

## MEMORANDUM AND ORDER

WILLIAM E. SMITH, Chief Judge.

I.  Introduction

This case is one of many, look-alike lawsuits filed nationwide by current and former members of faculty and staff of private (mainly elite) universities in which it is alleged that the universities imprudently managed retirement accounts to the detriment of their employee-plan participants. Plaintiffs Diane G. Short, Samira Pardanani, Judith Daviau, and Joseph Barboza (collectively, "Plaintiffs"), eligible faculty and staff at Defendant Brown University ("Brown" or "Defendant"), and vested

participants in one of Brown's two retirement plans, sue individually and as representatives of a class of participants and beneficiaries of the Brown University Deferred Vesting Retirement Plan ("Deferred Vesting Plan") and the Brown University Legacy Retirement Plan ("Legacy Plan") (collectively, "Plans"). Plaintiffs suggest they were short-changed by Brown in saving for their retirement. More precisely, Plaintiffs allege that Brown, as the Plans' named fiduciary and plan administrator, has breached its duties of prudence and loyalty contra to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461. Brown moves to dismiss (ECF No. 21), suggesting Plaintiffs have not overcome the pleading standard of Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the below reasons, Brown's Motion is granted in part and denied in part.

II. Background[1]

Plaintiffs, plan-participants, bring this action, individually and on behalf of a class of participants and beneficiaries of the Plans, under 29 U.S.C. § 1132(a)(2) and (3). (Compl. ¶ 1, ECF No. 1.) Brown's Plans are defined contribution,

---

[1] Because this is a Rule 12(b)(6) motion and the Court "assume[s] the truth of all well-pleaded facts and indulge[s] all reasonable inferences therefrom that fit the plaintiff's stated theory of liability," Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 18 (1st Cir. 2002), this section describes the facts as Plaintiffs allege them.

individual account, employee pension benefits plans, defined under 29 U.S.C. § 1002(2)(A) and § 1002(34). (Id. ¶ 11.) The Plans, under which eligible faculty and staff members at Brown may participate, provide the principal source of retirement income for Brown's employees and are premised on deferrals of employee compensation and employer matching contributions. (Id. ¶ 13.)

With assets above $1 billion as of December 31, 2015, the Legacy Plan constitutes a "Mega" plan. (Id. ¶¶ 14-15.) That Plan had 6,325 participants as of December 31, 2014, and a year later it had 4,535 participants. (Id. ¶ 15.) With more than $244 million in assets as of December 31, 2015, 8,054 participants as of December 31, 2014, and 9,594 participants one year later, the Deferred Vesting Plan qualifies as a "Large" plan. (Id. ¶¶ 14-15.) Brown, as the "Plan Administrator under 29 U.S.C. § 1002(16)(A)(i)," and a named fiduciary pursuant to section 402(a)(1) of ERISA, "is responsible for day-to-day plan operations." (Id. ¶ 21.) Specifically, as Plan Administrator, Brown:

> is vested with exclusive and complete responsibility and discretionary authority to control the operation, management and administration of the Plans, with all powers necessary to enable it properly to carry out such responsibilities, including the selection and compensation of the providers of administrative services to the Plans and the selection, monitoring, and removal of the investment options made available to participants for the investment of their contributions and provision of their retirement income.

(Id. ¶ 22.) For similar reasons, Brown is a fiduciary to the Plans because it maintains discretionary authority and/or control with respect to the Plans' management, management and disposition of Plan assets, and discretionary authority or responsibility in the Plans' administration. (Id. ¶ 23.) Brown's Plans are known as 403(b) retirement plans.[2]

Plaintiffs allege that Brown failed to fulfill its fiduciary duties pursuant to ERISA. For example, according to Plaintiffs, on or before December 31, 2014, the Legacy Plan "offered a bewildering array of 175 investment options through Fidelity Investments and offered an additional 24 investment options through TIAA-CREF, which included numerous duplicative investment choices (e.g., 9 target retirement date funds offered by Fidelity Investments and 9 target retirement date funds offered by TIAA CREF)." (Id. ¶ 7(a).) As of December 31, 2015, the Legacy Plan offered 35 investment options through TIAA-CREF and 26 through Fidelity Investments; those options continued to include duplicative investment choices. (Id. ¶ 7(b).) On or before December 31, 2014, similarly, the Deferred Vesting Plan "offered a bewildering array of 177 investment options through Fidelity

---

[2] Tax-exempt organizations, public schools (including state colleges and universities), and churches may offer plans that qualify under § 403(b), commonly called 403(b) plans. See 26 U.S.C. § 403(b)(1)(A).

Investments and offered an additional 26 investment options through TIAA-CREF." (Id. ¶ 7(c).) As of that date, the Deferred Vesting Plan also included many duplicative investment choices "and dozens of highly specialized funds that lack diversification and inappropriate for inclusion in a menu of investment choices in a participant-directed individual account plan." (Id.) As of December 31, 2015, at least 35 investment options were offered through TIAA-CREF whereas Fidelity Investments offered at least 26, which included duplicative choices. (Id. ¶ 7(d).) Specifically, both Plans offered the TIAA Traditional Annuity, "a fixed annuity contract that returns a contractually specified minimum interest rate."[3] (Id. ¶ 29.) The Plans also offered "variable annuities that invest in underlying securities for a given investment style," including the "CREF Stock Account, CREF Money Market Account, CREF Inflation-Linked Bond Account, CREF Social Choice Account, CREF Bond Market Account, CREF Global Equities Account, CREF Growth Account, and CREF Equity Index Account." (Id. ¶ 31.) These annuities' value fluctuated based on investment performance and the accounts' expenses. (Id.) Similarly offered was the TIAA Real Estate Account, a TIAA-CREF

---

[3] "Assets invested in the TIAA Traditional Annuity are held in the general account of Teachers Insurance and Annuity Association of America and are dependent on the claims-paying ability of Teachers Insurance and Annuity Association of America." (Compl. ¶ 29, ECF No. 1.)

maintained, insurance company separate account, i.e., "an investment vehicle that aggregates assets from more than one retirement plan for a given investment strategy, but those assets are segregated from the insurance company's general account assets."  (Id. ¶ 33.)  What remains for the Plans' investment options are various TIAA-CREF mutual funds, which "charge varying amounts for investment management, but also charge distribution, marketing, and other expenses, depending on the type of investment and share class."  (Id. ¶ 34.)

III. Legal Standard

To overcome a motion to dismiss under Rule 12(b)(6), a complaint must possess sufficient facts "to state a claim for relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "The court must take all of the pleaded factual allegations in the complaint as true," Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014), and draw all reasonable inferences in favor of the plaintiff.  Riggs v. Curran, 863 F.3d 6, 10 (1st Cir. 2017).  "Barring 'narrow exceptions,' courts tasked with this feat usually consider only the complaint, documents attached to it, and documents expressly incorporated into it." Foley, 772 F.3d at 71-72 (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)).  "[A] primary purpose of a Rule 12(b)(6) motion is to weed out cases that . . . based on the factual scenario on

which the case rests, the plaintiff could never win." Id. at 72. "[P]laintiffs are not required to submit evidence to defeat a Rule 12(b)(6) motion, but need only sufficiently allege in their complaint a plausible claim." Id.

Further, at the motion-to-dismiss stage, "further record development — and particularly input from those with expertise in the arcane area of the law where ERISA's . . . provisions intersect with its fiduciary duty requirements . . . [is] essential to a reasoned elaboration of that which constitutes a breach of fiduciary duty in this context." LaLonde v. Textron, Inc., 369 F.3d 1, 6 (1st Cir. 2004). "In factually complex ERISA cases like the instant ones, dismissal is often inappropriate." Brotherston v. Putnam Invs., No. 15-13825-WGY, 2016 WL 1397427, at *1 (D. Mass. 2016); see also Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 598 (8th Cir. 2009) ("No matter how clever or diligent, ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences.").

IV. Discussion

At the outset, because Plaintiffs expressly concede that Counts III and IV do not survive Brown's Motion for lack of standing, the Court dismisses those Counts. (See Pls.' Opp'n to Mot. to Dismiss ("Pls.' Opp'n") 1 n.2 ("Plaintiffs do not oppose dismissal of Counts III and IV . . . as Plaintiffs were not borrowers under this loan program.")). The Court's discussion is

7

therefore limited to Counts I and II. As to these counts, while many of Plaintiffs' theories fall away, there is enough heft to their claims to survive Brown's Motion to Dismiss.

A. Duty of Loyalty

As an initial matter, Plaintiffs, for at least two reasons,[4] fail to state a claim that Brown breached its duty of loyalty. First, Plaintiffs' Complaint is bereft of sufficient factual allegations to state a claim for breach of the duty of loyalty.[5] And all other allegations with respect to the duty of loyalty merely "piggy back" on Plaintiffs' duty-of-prudence allegations, which is not sufficient to state a claim for the duty of loyalty. (See, e.g., Compl. ¶¶ 2, 48, 59, 100, 110-28.); see also Cassell v. Vanderbilt Univ., 285 F. Supp. 3d 1056, 1062-63 (M.D. Tenn. 2018) ("Plaintiffs' loyalty claims are characterizations that piggy back off their prudence claims. The facts alleged in the Amended Complaint assert that Defendants . . . engaged in self-

---

[4] As is true with other aspects of their case, Plaintiffs are doomed by their failure to substantively respond to Brown's Motion on this score, which "operates as a waiver or forfeiture of the claim and an abandonment of any argument against dismissing the claim." Daugherty v. Univ. of Chi., No. 17C3736, 2017 WL 4227942, at *9 (N.D. Ill. Sept. 22, 2017).

[5] The one allegation that might possibly be construed as stating a claim (although it is largely conclusory) is in the context of Count III, which Plaintiffs concede should be dismissed. (See Compl. ¶ 133.)

dealing or acted for the purpose of benefitting a third party. Any facts that remotely relate to a duty of loyalty are insufficient to state a claim."); Cunningham v. Cornell Univ., No. 16-cv-6525 (PKC), 2017 WL 4358769, at *4 (S.D.N.Y. Sept. 29, 2017) ("Because these claims do not support an inference that defendants' actions were for the purpose of providing benefits to themselves or someone else and did not simply have that incidental effect, the loyalty claims . . . are dismissed.").

B. Duty of Prudence

1. Count I

In Count I, Plaintiffs suggest that Brown did not engage in a prudent process for evaluating and monitoring fees and expenses that TIAA and Fidelity charged to the Plans in breach of its duty of prudence under ERISA. (See Compl. ¶¶ 110-16.) In support, Plaintiffs fault Brown for: (1) offering too many investment options, including duplicative options, rather than a "core" line-up (id. ¶¶ 25-28, 49-50, 121); (2) using more than one record-keeper (id. ¶¶ 40-48); (3) failing to employ a competitive bidding process with respect to record-keeping (id. ¶¶ 36-38, 48); (4) offering investment options that charged "multiple layers of expense charges" (id. ¶¶ 32-33); and (5) offering investment options that charged asset-based fees and used revenue sharing, instead of a per-participant rate (id. ¶¶ 37, 39, 51-53).

Like Plaintiffs' duty-of-loyalty claims, Plaintiffs neglect

9

to rebut certain of Brown's arguments with respect to the duty-of-prudence claims. And for that reason, those particular theories must fall away. First, by offering not one word in response to Brown's Motion with respect to their allegations that the Plans offered investments with multiple layers of fees, Plaintiffs waive this aspect of their imprudence claim. See Tower v. Leslie-Brown, 326 F.3d 290, 299 (1st Cir. 2003) ("[F]ailure to brief an argument does, in fact, constitute waiver . . . ."). Likewise, Plaintiffs fail to respond and therefore abandon their claim that it was imprudent for Brown to use asset-based fees and revenue sharing. See id.

Another aspect of Plaintiffs' imprudence claim that falls away — albeit for different reasons — is the allegation that Brown was imprudent in offering a surplus of investment options and failing to feature a set of "core" investment options. Plaintiffs fail to state a claim in this respect. Brown is correct that courts have repeatedly rejected, as a matter of law, identical claims in factually analogous cases, and ERISA does not impose that fiduciaries limit plan participants' investment options. (See Def.'s Mem. in Supp. Mot. to Dismiss ("Def.'s Mem.") 18-20, ECF No. 21-1.) The Court finds these cases persuasive. Allegedly offering too many investment options for participants does not suffice for a breach of ERISA's duty of prudence. See, e.g., Henderson v. Emory Univ., 252 F. Supp. 3d 1344, 1350 (N.D. Ga.

10

2017) ("Having too many options does not hurt the Plans' participants, but instead provides them opportunities to choose the investments that they prefer."); Sacerdote v. N.Y. Univ., No. 16-cv-6284 (KBF), 2017 WL 3701482, at *11 (S.D.N.Y. Aug. 25, 2017) ("But while ERISA requires fiduciaries to monitor and remove imprudent investments, nothing in ERISA requires fiduciaries to limit plan participants' investment Options in order to increase the Plan's ability to offer a particular type of investment (such as funds offering institutional share classes). Indeed, courts have bristled at paternalistic theories that suggest ERISA forbids plan sponsors to allow participants to make their own choices.") (internal quotation marks and citations omitted); Vanderbilt Univ., 285 F. Supp. 3d at 1066-67 (same). And, in any event, Plaintiffs fail to rebut Brown's argument on this score, so the Court disregards any duty-of-prudence claim conditioned on such a theory. See Alioto v. Town of Lisbon, 651 F.3d 715, 721 (7th Cir. 2011) ("[T]he rule that a person waives an argument by failing to make it before the district court . . . [applies] where a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss."); cf. Rocafort v. IBM Corp., 334 F.3d 115, 121 (1st Cir. 2003) (applying waiver rule to situation where "a plaintiff properly raises an issue in his complaint, but then fails to adequately address it as part of his summary judgment").

Notwithstanding, enough remains to Plaintiffs' Count I claim to withstand Brown's Motion. The Court first considers whether Plaintiffs state a claim that Brown acted imprudently by using more than one record-keeper. Because Plaintiffs do not allege what services TIAA and Fidelity provided as record-keepers, Brown suggests, the Court cannot infer that no prudent fiduciary could have chosen to use both companies. (<u>See</u> Def.'s Mem. 20.) Although conceding that a single record-keeper is not a legal prerequisite, Plaintiffs argue that a prudent fiduciary in these circumstances would have chosen fewer record-keepers. (Pls.' Opp'n 16.)

Plaintiffs' allegation that a prudent fiduciary would have chosen one — rather than two — record-keepers suffices at this stage to state a plausible claim. In <u>Henderson</u>, 252 F. Supp. 3d at 1353, the district court allowed a nearly identical allegation to move past a motion to dismiss. There, the plaintiffs' complaint cited the use of three separate record-keepers "[d]espite the long-recognized benefits of a single recordkeeper" as causing an inefficient and costly structure that passed on excessive and unreasonable fees to plan participants. The plaintiffs also alleged that comparably sized plans maintained only one, rather than multiple, record-keepers, which helped minimize costs. <u>Id.</u> Swap out three with two record-keepers and you have Plaintiffs' allegations in this case. (<u>See, e.g.</u>, Compl. ¶¶ 47-49.) And at this stage, what Plaintiffs allege on this score suffices to allow

12

their duty-of-prudence claim to proceed. See Henderson, 252 F. Supp. 3d at 1353; see also Nicolas v. Trustees of Princeton Univ., Civ. No. 17-3695, 2017 WL 4455897, at *4 (D.N.J. Sept. 25, 2017) (finding plaintiff's allegation that defendant "imprudently contracted with two recordkeepers, creating an 'inefficient and costly structure'" sufficient to clear motion-to-dismiss stage); Sacerdote, 2017 WL 3701482, at *9 ("While it should be noted that having a single recordkeeper is not required as a matter of law, based on the facts here alleged . . . the allegation that a prudent fiduciary would have chosen fewer recordkeepers and thus reduced costs for Plan participants — the 'recordkeeping consolidation' allegation — is sufficient at this stage . . . .").

The Court next considers whether Plaintiffs state a claim that Brown acted imprudently by failing to engage in a competitive bidding process. Brown argues that, as a matter of law, "[a]llegations that a plan administrator should have engaged in competitive bidding for services are also not sufficient to support a claim of breach of fiduciary duty under ERISA." (Def.'s Mem. 21.) And it argues bidding is but one available process to determine fees and expenses, and that it is not required that fiduciaries use competitive bidding to select record-keepers. (Id.) Brown also faults Plaintiffs for not alleging or challenging the process through which Brown retained TIAA and Fidelity as record-keepers. (Id.)

Plaintiffs' claim that a prudent fiduciary in like circumstances would have solicited competitive bids plausibly alleges a breach of the duty of prudence. Like courts that have considered analogous arguments by defendant-universities, the Court deems unpersuasive Brown's point that ERISA does not per se require competitive bidding. See Sacerdote, 2017 WL 3701482, at *8; Tracey v. Mass. Inst. of Tech., No. 16-11620-NMG, 2017 WL 4478239, at *1, *3 (D. Mass. Oct. 4, 2017) (finding unpersuasive defendants' argument that "ERISA does not require a fiduciary to solicit competitive bids" in context of allegation that "MIT never engaged in a competitive bidding process for [recordkeeping] services" because "[a]s part of the 'prudent man standard' one would expect a fiduciary to obtain bids at some point during the extensive period of managing the fund, considering that the fees amount to millions of dollars per year"); Vanderbilt Univ., 285 F. Supp. 3d at 1064-65 (finding factually analogous claims sufficient to survive motion to dismiss and, in any event, that, "[w]hether [it] was actually imprudent involves questions of fact that the Court cannot consider at this stage of the litigation").

Finally, the Court considers whether Plaintiffs state a claim generally regarding excessive fees and expenses. Plaintiffs allege that the Plans paid significantly too much for recordkeeping compared to market rates, suggesting that $35-$45 annually per participant would be reasonable, when Plan participants annually

14

pay about $300. (Compl. ¶¶ 55-58; Pls.' Opp'n 12.) Brown argues that Plaintiffs fail to allege that no reasonable fiduciary would make the same decisions as Brown. That is, Brown suggests Plaintiffs' allegation that a "reasonable recordkeeping fee for the Plans would have been a fixed amount between . . . approximately $35-$45 per participant" (Compl. ¶ 55), is insufficient because Plaintiffs fail to include a comparison to what other universities with 403(b) plans pay for recordkeeping services or how many use a flat-fee per participant. (Def.'s Mem. 23-24.) Further, Brown argues, "so many universities have been sued for paying more than the '$35-$45' selected by Plaintiffs as the 'right' amount . . . that their fee estimate is not a plausible basis for a claim of imprudence." (Id. at 24.)

Brown's averment is not persuasive at the motion-to-dismiss stage. Plaintiffs allege specific facts to support their claim, including identifying what, based on various factors including the record-keeping market, "the outside limit of a reasonable record-keeping fee for the Plan[s] would be . . ." Vanderbilt Univ., 285 F. Supp. 3d at 1064; see also Sacerdote, 2017 WL 3701482, at *9 ("[C]aselaw also supports claims for imprudence based on specific allegations of the level of fees and why such fees were/are unreasonable . . . . Plaintiffs allege that '[e]xperts in the recordkeeping industry' determined that the 'market rate' for administrative fees for plans like [these] . . . was $35 per

15

participant, and that the Plans' recordkeeping fees far exceeded that amount.").

And, in any event, "[t]he question whether it was imprudent to pay a particular amount of record-keeping fees generally involves questions of fact that cannot be resolved on a motion to dismiss." Vanderbilt Univ., 285 F. Supp. 3d at 1064. Brown's comparison to other universities is premature. This aspect of Plaintiffs' claim survives.

2. Count II

In Count II, Plaintiffs aver that rather than "engage in a prudent process for the selection and retention of Plan investment options," Brown selected "more expensive funds with inferior historical performance." (Compl. ¶ 122.) Specifically, Plaintiffs challenge Brown's process with respect to: (1) the CREF Stock Account (id. ¶¶ 63-76, 123); (2) the TIAA Real Estate Account (id. ¶¶ 77-89, 124); and (3) the TIAA Traditional Annuity[6] (id. ¶¶ 90-99, 125).

Brown argues that because "hindsight and allegations of poor performance are all that Plaintiffs offer on their claim that Brown was imprudent in the selection and retention of the three TIAA

---

[6] Beyond conclusory recitations and references to the complaint's allegations (see Pls.' Opp'n 4), Plaintiffs offer no response with respect to the TIAA Traditional Annuity; accordingly, they abandon any aspect of their claim pertaining to this particular investment account.

16

annuity investment options about which Plaintiffs complain," Plaintiffs' claim should be dismissed. (Def.'s Mem. 25.) Underperforming funds is alone insufficient to allege that no prudent fiduciary would have made the same choices, Brown avers. (Id.)

Plaintiffs respond that Count II states a plausible claim for excessive investment management fees and performance losses in contravention of Brown's duty to "minimize costs" and to "incur only costs that are reasonable." (Pls.' Opp'n 17.) "Plaintiffs allege — and Brown cannot dispute — the CREF Stock and TIAA Real Estate funds had both drastically underperformed comparable lower-cost alternatives over the preceding one-, five-, and ten-year periods." (Id. at 18; see Compl. ¶¶ 68-89.) For example, Plaintiffs cite a recommendation from independent investment consultant Aon Hewitt in March of 2012 that the CREF Stock Account should be removed based on its historic underperformance and strategy that vastly reduced the ability of the fund to produce excess returns over time. (Pls.' Opp'n 18-19; Compl. ¶ 73.)

To the extent Brown suggests otherwise, or presents different benchmarks to measure the Plans' performance, it raises factual issues that cannot be decided at the pleading stage. The court deems persuasive the analysis of courts considering analogous theories in analogous circumstances, which have allowed a theory like Plaintiffs' to move forward in spite of the defendant-

17

university's attempt (like Brown's here) to insert different performance benchmarks. See Henderson, 252 F. Supp. 3d at 1352 ("[T]he proper benchmark can be more appropriately determined on summary judgment."). For instance, in Henderson, the court held that the plaintiffs properly alleged a plausible imprudence claim in alleging that the "defendants failed to remove the CREF Stock Account and TIAA Real Estate Account after periods of underperformance and higher costs compared to similar funds." Id. There, the court cited the Supreme Court's decision in Tibble v. Edison Int'l, 135 S. Ct. 1823, 1829 (2015), for the principle that "[a] plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones." Id.; see also Daugherty v. Univ. of Chi., No. 17C3736, 2017 WL 4227942, at *7-8 (N.D. Ill. Sept. 22, 2017) (finding sufficient plaintiffs' allegation "that the CREF Stock Account and TIAA Real Estate Account underperformed for years compared to industry standards, and that Defendant failed to prudently evaluate, monitor, and remove those investment options"). But see Cunningham, 2017 WL 4358769, at *5 (dismissing as dicta Tibble's suggestion that a plan fiduciary has a continuing duty to monitor and remove investments and finding the case did not preclude dismissal).

Brown's argument has been considered — and rejected — by courts considering near-identical circumstances. See Sacerdote,

2017 WL 3701482, at *10 ("While it is true that a decline in price indicates only that, in hindsight, the investment may have been a poor one . . . here there is the additional allegation of a ten-year record of consistent underperformance."). Here, Plaintiffs' allegation that the accounts in Brown's Plans consistently underperformed satisfies Plaintiffs' burden to overcome a motion to dismiss. (See, e.g., Compl. ¶¶ 71, 80.)

C. Statute of Limitations

Also reserved for another day is Brown's argument that ERISA's statute of limitation bars Plaintiffs' claims. Brown submits that ERISA's six-year statute of limitations bars Plaintiffs' claims because most decisions that Plaintiffs challenge (including selecting various investment accounts, using an asset-based revenue-sharing model for administrative expenses and two record-keepers, and offering too many investment options) were decisions Brown made more than six years ago. (Def.'s Mem. 33.) Plaintiffs respond that, rather than "challenge the initial design aspects of the Plans," they challenge the excessive recordkeeping fees that Plaintiffs are now paying (and have been paying over the past six years), and other ongoing conduct by Brown. (Pls.' Opp'n 20.) A fuller record is necessary to resolve any statute-of-limitations problems posed by this case. See, e.g., Vanderbilt Univ., 285 F. Supp. 3d at 1070 ("It is possible that further development of the record will reveal that Plaintiffs had actual knowledge of these

alleged breaches . . . but the Court cannot dismiss claims based on the three-year statute of limitations at this time."); Cates v. Trs. of Columbia Univ., No. 16-cv-6524, 2017 WL 3724296, at *2 (S.D.N.Y. Aug. 28, 2017) ("Defendants' allegations under the statute of limitations survive as well, as the Court does not have enough information to rule on them at this stage — a fuller record is necessary."); Sacerdote, 2017 WL 3701482, at *15 ("On the circumstances here, the Court cannot dismiss any claims based on the statute of limitations at this time. A fuller record is needed. Whether or not plaintiffs had actual knowledge of defendant's alleged breach . . . is a question for another day.").

V. Conclusion

Accordingly, Brown's Motion (ECF No. 21) is DENIED in part and GRANTED in part, as outlined above.

IT IS SO ORDERED.

/s/ William E. Smith
William E. Smith
Chief Judge
Date: July 11, 2018