**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| DIANE G. SHORT, JUDITH DAVIAU, and JOSEPH BARBOZA, Individually and as representatives of a class of participants and beneficiaries in and on behalf of the  BROWN UNIVERSITY DEFERRED VESTING RETIREMENT PLAN, and the BROWN UNIVERSITY LEGACY RETIREMENT PLAN, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | CA NO. 1:17-CV-00318-WES-PAS |
| vs. | ) ) | |
| BROWN UNIVERSITY in Providence in the State of Rhode Island and Providence Plantations, | ) ) ) ) | |
| Defendant. | ) ) | |

<u>**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' UNOPPOSED MOTION FOR AN ORDER:
PROVIDING FINAL APPROVAL FOR CLASS ACTION SETTLEMENT AND
APPROVING THE PLAN OF ALLOCATION**</u>

## TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................................ 1

II.  LITIGATION AND SETTLEMENT HISTORY ................................................... 3

   A.   Description of the Action ....................................................................... 3

   B.   The Settlement Agreement ..................................................................... 7

      1.   Benefits to Class Members ............................................................ 7

      2.   Retention of an Independent Fiduciary ........................................ 8

      3.   Attorney's Fees, Costs and Plaintiffs' Case Contribution Awards ............... 9

      4.   Release of Claims ........................................................................... 9

      5.   Notice and Objections .................................................................. 10

III. DISCUSSION ....................................................................................................... 11

   A.   Class Certification .................................................................................. 11

   B.   Legal Standards Governing Final Approval of Class Settlements .................. 12

   C.   The Settlement is Fair, Reasonable and Adequate ............................. 13

      1.   The Parties Engaged in Good Faith, Arm's-Length Negotiations ............... 13

      2.   The Parties Had the Benefit of Substantial Information ................ 14

      3.   Experienced Class Counsel Support the Settlements .................... 15

      4.   The Settlement Has Been Well Received to Date .......................... 15

   D.   The Settlement Provides Substantial Benefits to the Class ............... 16

   E.   Additional *Grinnell* Factors Support Final Approval ....................... 16

      1.   The Risks of Establishing Liability and Damages ........................ 17

      2.   Complexity, Length, and Expense of Litigation ........................... 18

   F.   The Proposed Plan of Allocation is Fair, Reasonable and Adequate ............ 19

   G.   The Notice Program Was Robust .......................................................... 20

IV.  CONCLUSION ..................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prod., Inc. v. Windsor*,
   521 U.S. 591 (1997) ............................................................................................... 11

*Armstrong v. Bd. of Sch. Directors of City of Milwaukee*,
   616 F.2d 305 (7th Cir. 1980) ................................................................................. 14

*Bezdek v. Vibram USA Inc.*,
   79 F. Supp. 3d 324 (D. Mass.) ........................................................................ 14, 20

*Bezdek v. Vibram USA, Inc.*,
   809 F.3d 78 (1st Cir. 2015) ..................................................................................... 12

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ........................................................................ 13, 16, 17

*Clark v. Duke Univ.*,
   No. 1:16-CV-1044, 2019 WL 2588029 (M.D.N.C. June 24, 2019) ........................ 20

*Garcia-Rubiera v. Fortuno*,
   727 F.3d 102 (1st Cir. 2013) ................................................................................... 20

*Gehrich v. Chase Bank USA, N.A.*,
   316 F.R.D. 215 (N.D. Ill. 2016) .................................................................. 15, 17, 19

*Hill v. State St. Corp.*,
   No. CIV.A. 09-12146-GAO, 2015 WL 127728 (D. Mass. Jan. 8, 2015) ................ 15

*Hispanics United of DuPage Cty. v. Vill. of Addison, Ill.*,
   988 F. Supp. 1130 (N.D. Ill. 1997) ........................................................................ 14

*Hochstadt v. Bos. Sci. Corp.*,
   708 F. Supp. 2d 95 (D. Mass. 2010) ....................................................................... 14

*In re Celexa & Lexapro Mktg. & Sales Practices Litig.*,
   No. MDL 09-2067-NMG, 2014 WL 4446464 (D. Mass. Sept. 8, 2014) ................ 14

*In re Lupron Mktg. & Sales Practices Litig.*,
   345 F. Supp. 2d 135 (D. Mass. 2004) ..................................................................... 13

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   588 F.3d 24 (1st Cir. 2009) .............................................................................. 12, 19

*In re PolyMedica Corp. Sec. Litig.*,
  432 F.3d 1 (1st Cir. 2005) ............................................................................ 11

*In re Processed Egg Prod. Antitrust Litig.*,
  284 F.R.D. 278 (E.D. Pa. 2012) .................................................................... 16

*In re Relafen Antitrust Litig.*,
  231 F.R.D. 52 (D. Mass. 2005) ..................................................................... 13

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
  535 F. Supp. 2d 249 (D.N.H. 2007) .............................................................. 19

*Isby v. Bayh*,
  75 F.3d 1191 (7th Cir. 1996) ........................................................................ 17

*Mangone v. First USA Bank*,
  206 F.R.D. 222 (S.D. Ill. 2001) .................................................................... 13

*Medoff v. CVS Caremark Corp.*,
  No. 09-CV-554-JNL, 2016 WL 632238 (D.R.I. Feb. 17, 2016) ............... 11, 20

*Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund*,
  582 F.3d 30 (1st Cir. 2009) .......................................................................... 12

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ................................................................. 13

*Nilsen v. York Cty.*,
  382 F. Supp. 2d 206 (D. Me. 2005) .............................................................. 20

*Rolland v. Cellucci*,
  191 F.R.D. 3 (D. Mass. 2000) ...................................................................... 15

*Sacerdote v. New York Univ.*,
  328 F. Supp. 3d 273 (S.D.N.Y. 2018) ................................................. *passim*

*Susquehanna Corp. v. Korholz*,
  84 F.R.D. 316 (N.D. Ill. 1979) ..................................................................... 13

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
  463 F.3d 646 (7th Cir. 2006) ........................................................................ 18

*To End Repression v. City of Chicago*,
  561 F. Supp. 537 (N.D. Ill. 1982) ................................................................ 14

*Walker v. City of Hutchinson, Kan.*,
   352 U.S. 112 (1956).................................................................................................... 20

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)........................................................................................ 21

**Statutes**

29 U.S.C. § 1002(16)(A)(i)............................................................................................... 3
29 U.S.C. § 1104(c) ........................................................................................................ 17

**Rules**

Fed. R. Civ. P. 12(b)(1) and 12(b)(6) ............................................................................. 4
Fed. R. Civ. P. 23 ...................................................................................................... 1, 20
Fed. R. Civ. P. 23(a) ............................................................................................ 6, 11, 12
Fed. R. Civ. P. 23(b) ............................................................................................ 6, 11, 12
Fed. R. Civ. P. 23(c)(2)(B) ........................................................................................... 20
Fed. R. Civ. P. 23(e) ............................................................................................. *passim*

**Regulations**

29 C.F.R. § 2550.404a-2 .................................................................................................. 8

**Other Authorities**

3 Newberg on Class Actions § 8:15 .............................................................................. 20

## I.    __INTRODUCTION__

Plaintiffs Diane G. Short, Judith Daviau and Joseph Barboza[1] ("Plaintiffs"), individually and on behalf of all others similarly situated, move this Court pursuant to Fed. R. Civ. P. 23, for an Order: (1) finally approving the parties' proposed $3,500,000 class action settlement, including therapeutic relief (the "Settlement"); (2) approving class certification for settlement purposes; and (3) approving the Plan of Allocation of the Settlement proceeds to Class Members.

By its Order of April 15, 2019, this Court: (i) granted Plaintiffs' Unopposed Motion for Preliminary Approval of the Class Action Settlement; (ii) certified the Settlement Class for settlement purposes; (iii) approved the form and manner of giving notice to the proposed Settlement to members of the affected Class; (iv) appointed Class Counsel; and (v) set a schedule providing for: (a) the filing of the instant Motion for Final Approval of the Settlement and the Plan of Allocation, (July 3, 2019); (b) the Motion for Approval of Attorney's Fees, Reimbursement of Expenses, and for a Case Contribution Award to the Plaintiffs (July 3, 2019); and (c) the final fairness hearing (August 1, 2019). ECF No. 47.

The proposed Settlement is fair, reasonable, adequate and in the best interests of the Class, and thus merits final approval. Declaration of Todd S. Collins ("Collins Decl.") ¶ 5. It provides a substantial and immediate benefit to the Brown University Deferred Vesting Retirement Plan and the Brown University Legacy Retirement Plan (the "Plans") and their participants, who are the members of the Class, in the form of a $3.5 million cash payment in addition to affirmative or therapeutic relief intended to help control Plan expenses. *Id*. It is the product of hard-fought litigation, which included motion practice, the exchange and review of key documents, critical factual and damage analyses, and arm's-length settlement negotiations between experienced

---

[1] Plaintiff Samira Pardanani was voluntarily dismissed from this case on July 10, 2017. (ECF No. 3.)

1

counsel directed by a seasoned and respected mediator, the Hon. Morton Denlow. *Id*. Following mediation, the parties negotiated the detailed terms of the Stipulation of Settlement, which was presented to the Court as an exhibit to Plaintiffs' Motion for Preliminary Approval. ECF Nos. 45, 46.

The benefits conferred by the Settlement must be considered in the context of the risk that further litigation might lead to no recovery, or to a smaller recovery for Plaintiffs and Class members. Defendant Brown University ("Defendant" or the "University") mounted a vigorous defense from the early stages of the litigation, and Plaintiffs expect that they would have continued to do so during discovery, trial and, potentially, through appeal.

If approved, the Settlement will provide a substantial monetary benefit to Settlement Class Members, totaling $3,500,000. In addition, it will provide therapeutic relief regarding matters at the core of Plaintiffs' allegations against the University. Settlement will also remove the substantial risk that, at trial, Plaintiffs and the Settlement Class would have received nothing. As discussed below, last year participants in New York University retirement plans, alleging claims like those of Plaintiffs here, lost their case following a bench trial. *See Sacerdote v. New York Univ.*, 328 F. Supp. 3d 273 (S.D.N.Y. 2018).

On April 15, 2019, the Court-approved Notice was mailed to 14,838 Class members. Declaration of the Settlement Administrator Regarding Dissemination of Notice, Heffler Claims Group, LLC ("Heffler," and the "Heffler Decl.") Decl. ¶ 7. The reaction of the Settlement Class has been favorable, as evidenced by the fact that to date no objections have been filed. *Id*. ¶ 12. (The deadline for objections is July 18, 2019.) The lack of objections to date supports final approval of the Settlement.

## II.    LITIGATION AND SETTLEMENT HISTORY

### A.    Description of the Action

On July 6, 2017, Plaintiffs commenced this action by filing a class action complaint in this Court. (ECF No. 1.) Plaintiffs are participants in the Plans. With more than $1 billion in assets and 6,325 participants as of December 31, 2015, the Legacy Retirement Plan alone qualifies as a "Mega" plan. The Deferred Vesting Retirement Plan had more than $244 million in assets and 9,594 participants as of December 31, 2015. (Complaint at ¶¶ 14-15, 21.) The Plans provide the primary source of retirement income for many employees of the University. (*Id*. ¶ 13.) Defendant serves as the Plans' sponsor and administrator pursuant to 29 U.S.C. § 1002(16)(A)(i). (*Id*. ¶ 21.) Defendant has all discretionary authority to administer the Plans, including the discretionary authority to select the Plans' investment options and service providers. (*Id*. ¶¶ 22-24.)

Defendants retained both TIAA and Fidelity Investments as recordkeepers for the Plans and approved an asset-based compensation structure for TIAA and Fidelity Investments without any per-participant limitations. (*Id*. ¶ 48.) This caused recordkeeping fees to grow unfettered as the Plans' assets have grown. From December 31, 2008 to December 31, 2015, the Legacy Plan's assets alone increased by approximately 68% from $733,681,683 to $1,075,013,274. (*Id*. ¶¶ 56-59.) Defendant could have provided meaningful caps on the amount of revenue sharing to ensure that any excessive amounts were returned to the Plans, but failed to do so, causing the Plans' participants to lose millions of dollars in their retirement savings. (*Id*. ¶¶ 60-61.) These asset-based fees were paid indirectly out of the Plans' investment options – which were exclusively TIAA and Fidelity Investments products. (*Id*. ¶ 91.)

Despite the long-recognized benefits of a single recordkeeper for a defined contribution plan, including lower administrative fees (*id*. ¶¶ 48-55), Defendant engaged two recordkeepers (TIAA and Fidelity Investments) to administer the Plans. (*Id*. ¶¶ 48-55.) Plaintiffs allege that this

structure was inefficient and caused the Plans' participants to pay duplicative, excessive, and unreasonable fees for recordkeeping and administrative services. (*Id*.) There was no prudent reason for Defendant's failure to engage in a process to reduce such duplicative services and fees. (*Id*.) Plaintiffs alleged that a reasonable recordkeeping fee for the Plans would have been a fixed amount between $500,000 and $650,000 (approximately $35 per participant with an account balance). (*Id*. ¶ 55.) However, calculations based on disclosures in the Plans' Forms 5500 indicate that TIAA alone received indirect compensation for recordkeeping and administrative services of $3.9 million just from the CREF variable annuities, TIAA Real Estate Account, and TIAA Traditional Annuity. (*Id*. ¶¶ 56-57.) This amount does not include any other indirect compensation received from revenue sharing from TIAA and Fidelity Investments mutual funds. (*Id*.) Accordingly, Plaintiffs allege the Plans' participants paid millions of dollars every year in excessive recordkeeping fees.

The University also breached its fiduciary duties to the Plans, according to Plaintiffs, by including too many investment options, with each Plan offering at least 24 investments choices managed by TIAA-CREF and over 175 investment choices managed by Fidelity Investments. (*Id*. ¶¶ 7, 25-28.) The University also burdened the Plans with duplicative, expensive, and underperforming TIAA investment products, including the TIAA Traditional Annuity (*id*. ¶¶ 90-99), the CREF Stock Account (id. ¶¶ 63-76); and the TIAA Real Estate Account (*id*. ¶¶ 77-89.)

On October 20, 2017, the University filed a motion to dismiss the Complaint in its entirety on jurisdictional grounds and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). The University argued that the Complaint failed to allege that the Plans paid excessive recordkeeping fees, Plaintiffs' process for evaluating investment options was deficient, and the

investment options at issue did not show chronic underperformance.[2] The University also moved to strike the jury demand.

On July 11, 2018, the Court issued an opinion granting in part and denying in part the University's motion to dismiss. ECF No. 33. The Court dismissed on standing grounds Counts III and IV, which asserted claims that the University breached its fiduciary duty of loyalty and engaged in a transaction prohibited by ERISA by offering an allegedly illegal loan program.

With respect to Counts I and II, the Court ruled that Plaintiffs failed to state a claim that the University breached its duty of loyalty. With respect to Plaintiffs' breach of fiduciary duty of prudence claims in Count I, the Court found that Plaintiffs failed to state a claim based on allegations that the Plans offered investments with multiple layers of fees. Likewise, the Court rejected Plaintiffs' allegations that it was imprudent for Defendants to use asset-based fees and revenue sharing. The Court also dismissed the claim that the University was imprudent in offering too many investment options rather than a set of "core" investment options.

However, the Court ruled that Plaintiffs stated a claim that the University acted imprudently by using more than one recordkeeper. Also, the Court held that Plaintiffs' claim that a prudent fiduciary in like circumstances would have solicited competitive bids for recordkeeping services plausibly alleges a breach of the duty of prudence. Finally, the Court found that Plaintiffs state a claim regarding excessive fees and expenses.

As to Count II, the Court ruled that Plaintiffs stated a claim for breach of the duty of prudence concerning the University's process for selecting and retaining the CREF Stock Account and the TIAA Real Estate Account, which Plaintiffs claimed had prolonged periods of

---

[2] *See generally* ECF No. 21.

underperformance and higher costs compared to similar funds. However, the Court dismissed a similar claim concerning the TIAA Traditional Annuity.

On August 10, 2018, the University answered the Complaint. ECF No. 36.

On April 15, 2019, the Court entered an Order (ECF No. 47) granting Plaintiffs' Unopposed Motion for Preliminary Approval of the Settlement. The Preliminary Approval Order provided for certification of the non-opt-out Settlement Class for settlement purposes (Order at 3-5). Specifically, the Court found that the Settlement Class satisfy the four requirements of Fed. R. Civ. P. 23(a) (numerosity, commonality, typicality, and adequacy), and Fed. R. Civ. P. 23(b)(1)(A) as a mandatory class action (either because of the risk of incompatible standards for the party opposing the class or because of the risk that the class adjudication would, as a practical matter, either dispose of the claims of non-parties or substantially impair their interests). The Court also approved of the undersigned attorneys as Class Counsel for the Settlement Class.

In addition, the Court approved the form of the Class Notice and ordered the Plans' recordkeepers to supply the Settlement Administrator with the last known addresses of each Member of the Settlement Class. (Order at 6-7). The Court ordered the Settlement Administrator to send the Notice to the members of the Settlement Class via first-class U.S. Mail. (*Id.* at 7). Additionally, the Court ordered the Settlement Administrator to electronically publish the Class Notice on a website maintained by the Settlement Administrator. (*Id.*)

As set forth in the Declaration of the Settlement Administrator, on June 14, 2019, Notices were printed and mailed to the 14,838 Settlement Class Members via postage prepaid, first-class U.S. Mail. Heffler Decl. at ¶ 7.

B.      **The Settlement Agreement**

1.      **Benefits to Class Members**

The Stipulation of Settlement, attached as Attachment 1, establishes a Settlement Amount of $3.5 million, plus specified therapeutic relief, as compensation to the Settlement Class to compensate them for the University's alleged fiduciary breaches. *See* Stipulation of Settlement ¶ 11.

Pursuant to the terms of the Stipulation of Settlement, within fifteen (15) calendar days after the Court entered its Preliminary Approval Order, the University paid $100,000 of the Settlement Amount to an account identified by Class Counsel to cover the initial Settlement Administrative Expenses, including the costs of sending Notice to the Settlement Class. *Id.* ¶ 12. The University will deposit the remaining amount (the "Settlement Fund") of three million four hundred thousand ($3.4) dollars into the Settlement Account within fifteen (15) calendar days after Complete Settlement Approval. *Id.* ¶¶ 11-13.

The Settlement Fund will be used cover all the administrative costs associated with implementing the Settlement; any attorney's fees and costs approved by the Court; any Case Contribution Awards for Plaintiffs approved by the Court; amounts for the Independent Fiduciary, if required under the terms of the Stipulation of Settlement; and any applicable taxes. *Id.* ¶ 14. The money in the Settlement Fund, less administration costs, Court-approved fees and expenses, and case contribution awards, will be distributed to members of the Settlement Class pursuant to the terms of the Stipulation of Settlement and the proposed Plan of Allocation, which is attached as Exhibit C to the Collins Declaration, or such other allocation plan as may be ordered by the Court. *Id.* ¶ 25. The Settlement Fund will be administered by a Settlement Administrator. *Id.* ¶ 26. The Settlement Administrator will be responsible for calculating the amounts payable to Members of

the Settlement Class pursuant to the Plan of Allocation based on information to be provided by the Plans' recordkeepers or fiduciary. *Id.*

For Members of the Settlement Class who have an account in either of the Plans as of the date of entry of the Final Approval Order, the distribution will be made directly into their accounts. *Id.* ¶ 27. For those Members of the Settlement Class who no longer have an account in the Plans as of the time of distribution, the distribution will be made via a tax-qualified distribution process, which will transfer such funds to Retirement Clearinghouse LLC, to be deposited into a safe-harbor automatic rollover individual retirement accounts as described in 29 C.F.R. § 2550.404a-2. No payment of less than $25 shall be distributed to any Settlement Class Member who does not have an account in either of the Plans as of the date of entry of the Final Approval Order. *Id.*

In addition to monetary relief, the Settlement provides prospective relief to the Plans. Specifically, Defendant agrees: (a) to use commercially reasonable best efforts to further reduce recordkeeping fees from the Plans' two recordkeepers for a period three (3) years from the date of entry of the Final Approval Order, and in the event that fees increase despite Brown's efforts, Brown will notify participants and explain the occurrence; and (b) to conduct a Request for Proposal process for the role of independent investment advisor to the Plans. *Id.* ¶ 30.

Pursuant to the terms of the Stipulation of Settlement, the cash payment will be made to Members of the Settlement Class who meet the class definition, without the need for submitting a claim form or other request for payment. The Stipulation of Settlement does not provide for a "claims made" Settlement, or for any "reversion" of the Settlement Fund to Defendants or any of their affiliates.

## 2.    Retention of an Independent Fiduciary

As is required by Prohibited Transaction Exemption 2003-39, 68 FR 75632 (Dec. 31, 2003), as amended 75 FR 33830 (June 15, 2010), the Stipulation of Settlement provides that the

University agrees to select an Independent Fiduciary to provide the authorization required by Prohibited Transaction Exemption 2003-39. Stipulation of Settlement ¶ 19. The University agrees to pay the costs associated with the retention of the independent fiduciary, up to $25,000. *Id.* The Stipulation of Settlement provides that the Independent Fiduciary must provide a report authorizing the Settlement at least fourteen (14) calendar days prior to the Fairness Hearing. *Id.* ¶ 32(b).

Accordingly, the Settlement is being evaluated by a fiduciary whose sole loyalty is the Settlement Class, and that fiduciary will evaluate the Settlement as to whether it is: (1) reasonable and fair in the light of the litigation risk and the value of the claims, (2) consistent with an arm's length agreement, and (3) not part of an agreement or arrangement to benefit a party in interest. Stipulation of Settlement ¶¶ 18, 32(b).

### 3.    Attorney's Fees, Costs and Plaintiffs' Case Contribution Awards

As set forth in Plaintiffs' Unopposed Motion for Approval of Attorney Fee Award, Reimbursement of Expenses, and Approval of Plaintiffs' Case Contribution Awards, filed simultaneously with the instant motion, Class Counsel's fees, costs and expenses and Plaintiffs' Case Contribution Awards will be paid from the Settlement Fund, as the Court may so order. Stipulation of Settlement ¶ 20. Class Counsel will petition the Court for an award of attorney's fees not to exceed 30% of the Settlement Amount, plus expenses. *Id*. Class Counsel also will petition the Court for Case Contribution Awards not to exceed $5,000 per named Plaintiff in recognition of the service of Plaintiffs. *Id*. ¶ 24. All requests will be subject to Court approval. *Id*. ¶ 21.

### 4.    Release of Claims

Under the terms of the Stipulation of Settlement, Settling Plaintiffs, the Members of the Settlement Class, and the Plans (by and through the Independent Fiduciary) shall release any and

all claims, including all claims asserted in the Complaint, for losses suffered by the Plans, the Plans' participants, or beneficiaries, in connection with: (a) the selection, retention and/or monitoring of the investment options available in the Plans; (b) the appointment and/or monitoring of the Plans' fiduciaries; (c) the recordkeeping fees, administrative fees, and expenses incurred by the Plans; (d) the prudence and loyalty of the Plans' fiduciaries; and/or (e) the TIAA participant loan program available under the Plans ("Released Claims"). Stipulation of Settlement ¶ 7. The Released Claims shall not include claims relating to the covenants or obligations set forth in the Stipulation of Settlement, and the Stipulation of Settlement does not bar, waive or release any individual claims pertaining to computations of or errors in individual benefit calculations or failure to follow participant instructions or failure to comply with the terms of the Plans (except to the extent that any such claim may relate to the claims asserted in the Complaint), or any claims against the Teachers Investment and Annuity Association as asserted or contemplated in *Haley v. Teachers Investment and Annuity Association*, 1:17-cv-00855-JPO (S.D.N.Y.). The full scope of the Parties' releases is set forth in the Stipulation of Settlement at ¶¶ 7-9.

## 5.     Notice and Objections

Pursuant to Fed. R. Civ. P. 23(e)(1) and (e)(5), the Stipulation of Settlement provides for notice to the Settlement Class and an opportunity for Members of the Settlement Class to object to approval of the Settlement. *Id*. ¶ 2. In its April 15, 2019 Preliminary Approval Order, the Court approved of the form and content of the Class Notice, finding that it fairly and adequately: (1) described the terms and effects of the Stipulation of Settlement; (2) gives notice to the Settlement Class of the time and place; (3) describes how the recipients of the Class Notice may object to approval of the Settlement.

In accordance with the April 15, 2019 Preliminary Approval Order, on June 14, 2019, the Class Notice was mailed directly to the last known mailing address of each Member of the

Settlement Class. Heffler Decl. ¶ 7. In addition, the Class Notice was electronically published on a website maintained by the Settlement Administrator. Heffler Decl. ¶ 8. Thus, Plaintiffs have established their timely compliance with the mailing and publication requirements of the Preliminary Approval Order

## III.    DISCUSSION

### A.    Class Certification

In its order of April 15, 2019, the Court preliminarily certified the following class of plaintiffs in this action:

> All participants and beneficiaries who had an account balance in either the Brown University Deferred Vesting Retirement Plan or the Brown University Legacy Retirement Plan (the "Plans") during the Class Period, excluding any participant who is a fiduciary to either of the Plans.

The "Class Period" is defined as July 6, 2011 through the date of Preliminary Approval, *i.e.*, April 15, 2019.

Before assessing whether the Settlement is within the range of reasonableness for the purposes of preliminary approval, the Court must determine whether it may finalize that certification. The decision to certify a class is within this court's broad discretion. *See In re PolyMedica Corp. Sec. Litig.*, 432 F.3d 1, 4 (1st Cir. 2005). To be certified, a class must satisfy all four requirements of Fed. R. Civ. P. 23(a) and at least one of the criteria outlined in Fed. R. Civ. P. 23(b). *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 613–14 (1997). "[T]hese requirements are easily satisfied in a case such as this, brought by a class" of participants and beneficiaries of a retirement plan seeking to recover from a defendant for losses allegedly caused by breaches of ERISA's fiduciary duties of prudence and loyalty. *Medoff v. CVS Caremark Corp.*, No. 09-CV-554-JNL, 2016 WL 632238, at *2 (D.R.I. Feb. 17, 2016).

The Court's Preliminary Approval Order preliminarily certified the Settlement Class for settlement purposes only under Fed. R. Civ. P. 23(a) and (b)(1)(A). Nothing has changed to alter the propriety of certification of the Class for settlement purposes and, for the all the reasons set forth in Plaintiffs' preliminary approval brief, Plaintiffs respectfully request that the Court grant final certification of the Settlement Class pursuant to Rules 23(a) and (b)(1).

> **B.     Legal Standards Governing Final Approval of Class Settlements**

Under Fed. R. Civ. P. 23(e) a court may approve a proposed settlement if it is "fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2); *see also In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 32 (1st Cir. 2009). Although case law identifies "laundry lists of factors" courts may consider, "the ultimate decision by the judge involves balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proposed settlement." *Bezdek v. Vibram USA, Inc.*, 809 F.3d 78, 82 (1st Cir. 2015) (quoting *Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund*, 582 F.3d 30, 44 (1st Cir. 2009)). Moreover, the First Circuit has directed courts to "realistically evaluate settlements based on the circumstances of the case," and with regard for the policy of encouraging settlements in "hard-fought, complex class action[s]." *In re Pharmaceutical Industry Average Wholesale Price Litigation*, 588 F.3d at 36.

"If the parties negotiated at arm's length and conducted sufficient discovery, the district court must presume the settlement is reasonable." *In re Pharmaceutical Industry Average Wholesale Price Litigation*, 588 F.3d at 32–33. *See also Bezdek*, 809 F.3d at 82. Courts within this circuit have also considered, in assessing whether a settlement should be presumed fair, whether "the proponents of the settlement are experienced in similar litigation" and the number of

objections received (if any) from class members. *See In re Lupron Mktg. & Sales Practices Litig.*, 345 F. Supp. 2d 135, 137 (D. Mass. 2004).

Aside from these presumptions, courts in this Circuit also consider the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000):

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*See, e.g., In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 72 (D. Mass. 2005).

As shown below, the proposed Settlement is entitled to a presumption of fairness. Moreover, the *Grinnell* factors weigh heavily in favor of approval.

**C.    The Settlement is Fair, Reasonable and Adequate**

**1.    The Parties Engaged in Good Faith, Arm's-Length Negotiations**

The Settlement the result of good faith, arm's-length negotiations between well-informed and experienced counsel.[3] Counsel considered information learned through the exchange of probative documents; the positions taken by the parties in the pleadings and during motion practice; and the Court's rulings in this case and similar ERISA class actions involving private

---

[3] The arm's-length nature of the settlement negotiations creates a presumption that the Settlement is fair. *See Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("A settlement following sufficient discovery and genuine arm's-length negotiation is presumed fair."); *Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001) (a settlement proposal arrived at after arm's length negotiations by fully informed, experienced and competent counsel may be properly presumed to be fair and adequate) (citing *Susquehanna Corp. v. Korholz*, 84 F.R.D. 316, 320 (N.D. Ill. 1979)).

universities.[4] Like all aspects of this litigation, the negotiations were hard-fought. It is the opinion of the counsel who achieved the Settlement that it is not only fair and reasonable, but a favorable result for the members of the Class. Collins Decl. ¶ 5-6. Class Counsel's beliefs are based on their deep familiarity with the factual and legal issues in this case and the risks associated with continued litigation. Accordingly, this factor strongly supports final approval of the Settlement. *Id.*

### 2.      The Parties Had the Benefit of Substantial Information

Experienced Class Counsel have been able to review critical documents concerning Defendant's exercise of its duties in connection with operation of the Plans, which allowed them to assess the probability of success on the merits of the claims. Class Counsel recognize that the Court's ruling on the University's motion to dismiss on July 11, 2018 (ECF No. 33), as well as the production of documents by Defendant in the months following that ruling, suggested to Class Counsel that settling prior to class certification and trial might present a better outcome for the Class than pursuing the litigation to trial. Importantly, the information available to Class Counsel was sufficient to enable Class Counsel "to act 'intelligently' when negotiating [the] settlement." *In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, No. MDL 09-2067-NMG, 2014 WL 4446464, at *4 (D. Mass. Sept. 8, 2014); *see also Hochstadt v. Bos. Sci. Corp.*, 708 F. Supp. 2d 95, 107 (D. Mass. 2010) (granting final approval where "the parties conducted sufficient discovery 'to make an intelligent judgment about settlement.'"). The fact that additional discovery might have been had does not mitigate against final approval of the Settlement. *See Bezdek v. Vibram*

---

[4] Courts recognize that the opinion of experienced counsel supporting a settlement is entitled to considerable weight. *See Armstrong v. Bd. of Sch. Directors of City of Milwaukee*, 616 F.2d 305, 325 (7th Cir. 1980), *overruled by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998) (in determining the fairness of a class settlement, "the court is entitled to rely heavily on the opinion of competent counsel"); *Hispanics United of DuPage Cty. v. Vill. of Addison, Ill.*, 988 F. Supp. 1130, 1170 (N.D. Ill. 1997) (same); *All. To End Repression v. City of Chicago*, 561 F. Supp. 537, 548 (N.D. Ill. 1982) ("Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel.").

*USA Inc.*, 79 F. Supp. 3d 324, 348 (D. Mass.), *aff'd,* 809 F.3d 78 (1st Cir. 2015) (granting final approval where the discovery obtained was "less exhaustive than that in a number of class action settlements that have been approved in this district," because the parties had a sufficient understanding of the merits of the case in order to engage in informed negotiations). Thus, this factor supports final approval.

### 3.    Experienced Class Counsel Support the Settlement

Class Counsel are highly experienced ERISA litigators and strongly support the settlement. Based on their depth of experience, Class Counsel respectfully submit that the Settlement is in the best interests of the Settlement Class. *See* Collins Decl. at ¶ 5-7, 9-12.  This view is entitled to substantial weight. *See Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000) ("When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight."). Even though Class Counsel may have a bias "because they stand to benefit from approval this factor (whatever its weight) favors approval." *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 230 (N.D. Ill. 2016) (citations omitted). Accordingly, the opinions of Class Counsel support final approval.

### 4.    The Settlement Has Been Well Received to Date

The reaction of the Settlement Class to the settlement has been overwhelmingly positive. The Preliminary Approval Order provides that objections to the Settlement and notices of intention to appear at the hearing are to be submitted to the Court, with copies to Co-Lead Counsel and counsel for Defendants, postmarked no later than July 18, 2019. ECF No. 47. To date, neither Class Counsel nor Heffler have received any objections to the Settlement. Heffler Decl. ¶ 12. This positive reception by the Class evidences the fairness of the Settlements. *See*, *e.g.*, *Hill v. State St. Corp.*, No. CIV.A. 09-12146-GAO, 2015 WL 127728, at *8 (D. Mass. Jan. 8, 2015) (where only

two objections and ten requests for exclusion received, "[t]he very positive reaction of the Settlement Class supports the approval of the Settlement."); *In re Processed Egg Prod. Antitrust Litig.*, 284 F.R.D. 278, 298 (E.D. Pa. 2012) (absence of objections weigh in favor of approval of settlement). Thus, the reaction of the Settlement Class supports final approval.

>   **D.**    **The Settlement Provides Substantial Benefits to the Class**

The Settlement provides substantial consideration for the benefit of the Class. In addition to therapeutic relief with respect to Defendant's future conduct regarding Plan expenses, the Net Settlement Fund will be available for distribution to Class members after payment of reasonable attorney's fees, costs, expenses and Case Contribution Awards as approved by this Court. Stipulation of Settlement ¶¶ 13, 24-27.

>   **E.**    **Additional *Grinnell* Factors Support Final Approval**

The above-listed factors demonstrate that the Settlement is entitled to a presumption of fairness. Application of the *Grinnell* factors – some of which overlap with the above analysis – likewise demonstrates that the settlement is fair, reasonable and adequate. *City of Detroit*, 495 F.2d at 463. Indeed, two of the factors are the same: the parties agreed on the Settlement after meaningful document discovery, and the reaction of the Settlement Class has been positive. *Id.*

Other *Grinnell* factors likewise weigh in favor of approval of the Settlement. This litigation, like many ERISA litigations, is complex, time consuming and expensive. The facts and legal issues are unusually technical and complicated, and both summary judgment and trial would involve testimony from numerous fact and expert witnesses on, *inter alia*, performance of TIAA investment products, the reasonableness of expenses charged to the Plans and its participants, and alleged prohibited transactions under ERISA. Moreover, the University has denied any wrongdoing and has raised numerous defenses, and there was considerable risk in continuing to litigate through verdict, post-trial motion practice and appeals. The Settlement avoids these risks,

16

eliminates delay, avoids further expenses and provides concrete benefits to the Class. The following *Grinnell* factors, in particular, support final approval

### 1.    The Risks of Establishing Liability and Damages

Under the terms of the Stipulation of Settlement, the University has agreed to pay $3.5 million in cash, which represents a substantial recovery for the Settlement Class. Liability in this case is heavily contested, and both sides would face considerable risks should the litigation proceed. In contrast, the proposed Settlement will produce a certain and substantial recovery for Settlement Class Members. The court should not "reject[]" a settlement "solely because it does not provide a complete victory to plaintiffs," for "the essence of settlement is compromise." *Gehrich*, 316 F.R.D. at 228 (quoting *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996) (internal quotation marks omitted)).

While Plaintiffs believe that the claims asserted against Defendant are meritorious, they recognize that their breach of fiduciary duty claims present a number of substantial risks to establishing both liability and damages, and there was no certainty that Plaintiffs would have prevailed at trial. Collins Decl. ¶ 6. The University mounted a vigorous defense to Plaintiffs' claims and has raised multiple defenses in its pleadings, including the defenses of statute of limitations and/or the doctrine of laches, waiver, estoppel, release or payment, standing, lack of proximate causation, contribution and/or failure to mitigate, and their contention pursuant to ERISA § 404(c), 29 U.S.C. § 1104(c), that Plaintiffs exercised independent control over their investment elections in the Plan. *See* ECF No. 36 at p. 29-31.

With respect to Defendant's liability, the University claims that it properly managed the Plans and employed prudent processes to evaluate the Plans' expenses, including recordkeeping fees, as well as investment options. The University asserts that its decisions were within the range of those made by similarly-situated plan fiduciaries at the time they were made.

17

As to the recordkeeping claim, the University claims that it repeatedly negotiated reductions in fees throughout the Class Period. The University also contends that Plaintiffs' damages estimates are overstated. Thus, Plaintiffs faced a risk that they would be unable to establish the University's liability, and if they were able to do so, they faced the further risk that a trier of fact would find damages that were less than the $3.5 million Settlement the University offered.

At mediation, one of the chief factors weighed by the parties was the fact that in one of the similar retirement plan lawsuits against private universities, *Sacerdote*, 328 F. Supp. 3d 273, the court issued a verdict and judgment in favor of defendant New York University on all claims. This verdict provides strong support for Plaintiffs' decision to accept Defendant's offer of $3.5 million plus therapeutic or affirmative relief rather than risking a litigated result, even though Plaintiffs believe their case is strong and would have prevailed at trial.

Considering all these risks, Plaintiffs and their counsel believe the Settlement represents a favorable outcome for Class members. The Settlement will avoid the risks and expenses of continued litigation and will achieve immediate relief for Class members.

## 2.    Complexity, Length, and Expense of Litigation

Absent this Settlement, continued litigation of this action would be complex and lengthy, requiring the investment of considerable resources by both parties and the Court. The likely complexity, length, and expense of continued litigation factor also favors approval. *See Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). Although the parties have exchanged key documents, if the litigation were to proceed Plaintiffs would need to engage in significant discovery regarding the Plans from the University as well as from the Plans' recordkeepers. This would require the parties to retain additional experts, "analyze an enormous quantity of data, and engage in substantial motion practice, which could have resulted in reducing

or negating, and certainly would have delayed, any judgment in favor of Plaintiffs, even putting

aside the near certainty of appeal." *Gehrich*, 316 F.R.D. at 230. Because the Settlement allows the

parties to avoid such time-consuming and expensive litigation, this factor supports final approval.

### F.    The Proposed Plan of Allocation is Fair, Reasonable and Adequate

The standard for approving a plan of allocation for a settlement fund in a class action, like

the one governing approval of the settlement as a whole, is that the plan must be fair, reasonable

and adequate. Fed. R. Civ. P. 23(e)(2); *see also In re Pharmaceutical Industry Average Wholesale*

*Price Litigation*, 588 F.3d at 32 ("a district court can approve a class action settlement only if it is

fair, adequate and reasonable") (citation omitted); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F.

Supp. 2d 249, 262 (D.N.H. 2007) ("the plan of allocation must be fair, reasonable, and adequate.")

(citation omitted)). Generally, to be found "fair and reasonable," the plan of allocation

recommended by competent and experienced counsel needs to have "a reasonable basis." *In re*

*Tyco Intern., Ltd. Multidistrict Litigation*, 535 F. Supp. 2d at 262.

The proposed Plan of Allocation (attached as Exhibit C to the Collins Declaration), meets

this standard. In summary, the Plan allocates the Settlement proceeds pro rata based on each Class

member's average quarterly account balance for the entire Class Period. The Settlement proceeds

will be allocated net of: (1) Court-approved attorney's fees, Case Contribution Awards for the

named Plaintiffs, and costs of litigation; (2) expenses incurred in the management of the Settlement

Fund and implementation of the terms of the Settlement Agreement; and (3) fees for the retention

of an independent fiduciary to review and approve the terms of the Settlement Agreement and the

release of Brown University and the Plan fiduciaries from the Released Claims, to the extent those

fees exceed $25,000.[5]

---

[5] The fees of the independent fiduciary will not exceed $25,000.

19

The Plan of Allocation allocates the Net Settlement Fund in a manner similar to plans that have been approved by courts in analogous cases and implemented fairly and efficiently. *See Clark v. Duke Univ.*, No. 1:16-CV-1044, 2019 WL 2588029, at *6 (M.D.N.C. June 24, 2019) (granting final approval of ERISA class action settlement where the plan of allocation "treats class members equitably relative to each other"); *Daugherty v. Univ. of Chicago*, No. 17-cv-3736, at Dkt. 77 (N.D. Ill. Sept. 12, 2018) (approving plan of allocation and granting final approval of settlement of ERISA class action) (attached as Exhibit B to Collins Declaration).

For these reasons, the Court should approve the Plan of Allocation.

### G.    The Notice Program Was Robust

The Notice provided to the Settlement Class satisfied the requirements of Rule 23 and due process. Fed. R. Civ. P. 23(e)(1) requires "notice in a reasonable manner to all class members who would be bound" by a settlement. Fed. R. Civ. P. 23(e)(1). "The notice program need not be perfect, but it must provide the 'best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.'" *Medoff*, 2016 WL 632238, at *7 (quoting Fed. R. Civ. P. 23(c)(2)(B)).

The notice meets Rule 23 and due process requirements if it is "reasonably calculated to reach the class members and inform them of the existence of and the opportunity to object to the settlement." *Nilsen v. York Cty.*, 382 F. Supp. 2d 206, 210 (D. Me. 2005); *accord Bezdek*, 79 F. Supp. 3d at 336. The First Circuit has noted "the impossibility of setting up a rigid formula as to the kind of notice that must be given; notice required will vary with circumstances and conditions." *Garcia-Rubiera v. Fortuno*, 727 F.3d 102, 112 (1st Cir. 2013) (quoting *Walker v. City of Hutchinson, Kan.*, 352 U.S. 112, 115 (1956)); *see also* 3 Newberg on Class Actions § 8:15 (5th ed.) (settlement notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their

20

objections" (citations omitted)); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) ("There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.").

Here, the Settlement Administrator, Heffler, provided notice to the Settlement Class pursuant to the Preliminary Approval Order and Stipulation of Settlement. ECF No. 47. On June 14, 2019, the Settlement Administrator mailed the Class Notices to the 14,838 Class Members via postage prepaid, first-class U.S. Mail. Heffler Decl. ¶ 7, Exhibit A (sample Notice form). The Class Notices advised Class Members of the Settlement, and that they could file an objection postmarked by July 18, 2019. *Id.*

In addition, on or about June 12, 2019, Heffler developed, activated, and continues to maintain, the Settlement website accessible at www.BrownUniversityERISAsettlement.com. *Id.* at ¶ 8. At the website, Class Members can view information and find answers to frequently-asked questions regarding the Settlement: view and download copies of documents related to the Settlement and obtain information on the process and requirements for making for Objections; be informed of the Final Approval Hearing date, time and location; and be informed about the principal provisions of the Settlement, the requests for Plaintiffs' Case Contribution Awards and Class Counsel's fees and expenses, and other matters pertaining to the Settlement. *Id.* Finally, Heffler established a toll-free number to allow Class Members to obtain additional information regarding the Settlement through a recorded Interactive Voice Response (IVR) system. *Id.* at ¶ 10.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Plaintiff's Unopposed Motion for Final Approval of the Settlement and approve the Plan of Allocation.

Respectfully submitted,

Dated:  July 3, 2019                     /s/Sonja L. Deyoe
                                         Sonja L. Deyoe (R.I. Bar No. 6301)
                                         Law Offices of Sonja L. Deyoe
                                         395 Smith Street
                                         Providence, RI 02908
                                         Telephone: (401) 864-5877
                                         Facsimile: (401) 354-7464
                                         sld@the-straight-shooter.com

                                         Todd S. Collins
                                         Eric Lechtzin
                                         Ellen T. Noteware
                                         BERGER MONTAGUE PC
                                         1818 Market Street, Suite 3600
                                         Philadelphia, PA 19103-6365
                                         Telephone: (215) 875-3000
                                         Facsimile: (215) 875-4604
                                         tcollins@bm.net
                                         scarson@bm.net
                                         enoteware@bm.net

                                         Garrett W. Wotkyns
                                         John J. Nestico
                                         SCHNEIDER WALLACE COTTRELL
                                         KONECKY WOTKYNS LLP
                                         8501 N. Scottsdale Road, Suite 270
                                         Scottsdale, Arizona 85253
                                         Telephone: (480) 428-0145
                                         Facsimile: (866) 505-8036
                                         gwotkyns@schneiderwallace.com
                                         jnestico@schneiderwallace.com

                                         Todd Schneider
                                         SCHNEIDER WALLACE COTTRELL
                                         KONECKY WOTKYNS LLP
                                         2000 Powell Street, Suite 1400
                                         Emeryville, California 94608
                                         Telephone: (415) 421-7100
                                         Facsimile: (415) 421-7105
                                         tschneider@schneiderwallace.com

                                         *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on July 3, 2019, I caused to be served, via electronic mail a true and correct copy of Plaintiffs' Unopposed Motion for an Order Finally Approving Class Action Settlement to the following:

Steven M. Richard
NIXON PEABODY LLP
One Citizens Plaza, Suite 500
Providence, Rhode Island 02903
srichard@nixonpeabody.com

Charles M. Dyke
NIXON PEABODY LLP
One Embarcadero Center, 18th Floor
San Francisco, California 94111
cdyke@nixonpeabody.com

H. Douglas Hinson
ALSTON & BIRD
The Atlantic Building
950 F Street, NW
Washington, DC 20004-1404
doug.hinson@alston.co

*Attorneys for Brown University*

/s/ Sonja L. Deyoe
Sonja L. Deyoe