**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| DIANE G. SHORT, SAMIRA PARDANANI, JUDITH DAVIAU, and JOSEPH BARBOZA, Individually and as representatives of a class of participants and beneficiaries in and on behalf of the BROWN UNIVERSITY DEFERRED VESTING RETIREMENT PLAN, and the BROWN UNIVERSITY LEGACY RETIREMENT PLAN, | ) ) ) ) ) ) ) ) | |
| | ) | CA NO. 1:17-CV-318-WES-PAS |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| BROWN UNIVERSITY in Providence in the State of Rhode Island and Providence Plantations, | ) ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

**DECLARATION OF TODD S. COLLINS IN SUPPORT OF**
**PLAINTIFFS' UNOPPOSED MOTION FOR AN ORDER:**
**PROVIDING FINAL APPROVAL FOR CLASS ACTION SETTLEMENT;**
**APPROVING THE PLAN OF ALLOCATION;**
**APPROVING CASE CONTRIBUTION AWARDS TO PLAINTIFFS; AND**
**AWARDING ATTORNEY'S FEES AND COSTS**

I, Todd S. Collins, declare as follows:

1.      I am a Managing Shareholder of Berger Montague PC ("Berger"), one of the counsel of record ("Class Counsel") for Plaintiffs Diane G. Short, Judith Daviau and Joseph Barboza ("Plaintiffs"). I submit this declaration in support of Plaintiffs' unopposed motion pursuant to Federal Rules of Civil Procedure 23, for an Order: (1) granting final approving the parties' proposed class action settlement, which provides for $3,500,000 in cash plus affirmative relief (the "Settlement"); (2) granting final class certification for settlement purposes; (3) approving the Plan of Allocation (attached hereto as Exhibit C); (4) approving case contribution awards to Plaintiffs; and (5) approving Class Counsel's application for an award of attorney's fees

and reimbursement of litigation expenses. The following paragraphs address the factors delineated in Rule 23(g) and provide the Court with a foundation for finding that Berger adequately represents the interests of Class members.

**A.**     **Work Identifying and Investigating Potential Claims in the Action**

2.     The attorneys at Berger, including my colleagues Ellen Noteware and Eric Lechtzin, have worked diligently and efficiently to investigate, then to litigate, and finally to settle claims alleging breaches of fiduciary duties by Defendant Brown University (the "University" or "Defendant"), which is the sponsor of the Brown University Deferred Vesting Retirement Plan and the Brown University Legacy Retirement Plan (the "Plans").

3.     Along with co-counsel, we reviewed numerous publicly available documents and client-provided documents concerning the Plans, such as Annual Reports to the U.S. Department of Labor on Form 5500, prospectuses for the Plans' various investment options, Plan Handbooks, Fee Disclosure Statements, Summary Plan Descriptions, and client account statements; drafted the complaint; briefed and argued Plaintiffs' opposition to Defendant's motion to dismiss; met and conferred with counsel for Defendant regarding scheduling and discovery; served discovery requests; closely examined more than 4,000 pages of documents produced by Defendant that relate to Plaintiffs' claims; and engaged in mediation before Retired Magistrate Judge Morton Denlow, on January 8, 2019.

4.     After a full day of tough negotiations, the parties reached the principal terms of the Settlement. Thereafter, we negotiated the detailed terms of the Settlement Agreement, and, after multiple, detailed conversations with Defendant, moved for preliminary approval of the Settlement on March 11, 2019. ECF. No. 45.

5.     Based on my extensive experience in litigating class actions, including ERISA cases, as set forth in detail below, it is my opinion that the proposed Settlement is fair, reasonable, and adequate, because it provides a substantial and immediate benefit to the Class and the Plans in the form of a $3.5 million cash payment plus forms of affirmative relief. It is the product of hard-

fought litigation, which included motion practice, the exchange and review of key documents, and arm's-length negotiations between experienced counsel directed by a seasoned and respected mediator, Judge Denlow.

6.     The benefits conferred by the Settlement must be considered in the context of the risk that protracted litigation might lead to no recovery, or to a smaller recovery for Plaintiffs and proposed Class members. While I believe that the claims asserted against Defendant are meritorious, I recognize that Plaintiffs' breach of fiduciary duty claims present a number of substantial risks to establishing both liability and damages, and there was no certainty that Plaintiffs would have prevailed at trial. In addition, I considered the verdict and judgment entered in a similar retirement plan lawsuit in favor of defendant New York University on all claims. *See Sacerdote v. New York Univ.*, 328 F. Supp. 3d 273 (S.D.N.Y. 2018). It is my opinion that the outcome in *Sacerdote* supports Plaintiffs' decision to accept Defendant's offer of $3.5 million plus therapeutic or affirmative relief rather than risking a litigated result. Considering such risks, I believe the Settlement represents a highly favorable outcome for Plaintiffs and the Class, as it will not only avoid the risks and expenses of continued litigation but also achieve immediate relief for Class members.

**B.     Experience Handling Class Actions and Other Complex Litigation, and the Types of Claims Asserted in the Action**

7.     Berger has been engaged in the practice of class action litigation for over 40 years. (Berger's firm resume is attached hereto as Exhibit A.) Berger pioneered the use of class actions in the United States, and its work has resulted in numerous record-breaking recoveries over the past five decades. For example:

- *In Re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, MDL-1720 (E.D.N.Y.) (Berger as co-lead counsel obtained a $7.25 billion settlement – the largest U.S. settlement in 2012 and the largest antitrust settlement in U.S. history, revised to $5.7 billion after opt-outs);

- *Cook v. Rockwell International Corp.*, No. 14-1112, 2015 WL 3853593 (10th Cir. June 23, 2015) (reinstating a $926 million trial judgment, including prejudgment

interest and punitive damages, obtained by Berger on behalf of thousands of property owners whose homes were contaminated by radioactive materials);

- *Exxon Valdez Oil Spill Litig.*, No. A89 0095 (D. Alaska) (Berger was a principal trial counsel and obtained a jury award of $5 billion, later reduced to $507.5 million by the U.S. Supreme Court);

- *King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, No. 2:06-cv-1797 (E.D. Pa. Oct. 19, 2015) ($512 million cash settlement in antitrust case alleging delayed generic entry of narcolepsy drug Provigil); and

- *In re TJX Cos. Retail Security Breach Litig.*, MDL No. 1838 (D. Mass.) (Berger appointed co-lead counsel in a consumer class action arising from what was then the largest data theft case in history and obtained a settlement valued at over $200 million).

8.    *The National Law Journal* has selected Berger twelve times (2003-2005, 2007-13, 2015-16) for its "Hot List" of the top plaintiffs'-oriented litigation firms in the United States with a history of high achievement and significant, groundbreaking cases. Typically, fifteen or fewer law firms in the United States are chosen each year for this honor.

9.    In the field of ERISA class actions, I and my colleagues at Berger have secured substantial recoveries on behalf of retirement plans and their participants. Examples of such settlements include the following:

- *In re Lucent Technologies, Inc. ERISA Litigation*, No. 01-cv-3491 (D.N.J.) ($69 million recovery);

- *In re* SPX *Corporation ERISA Litigation*, No. 3:04-cv-192 (W.D.N.C.) (recovery on behalf of 401(k) plan participants who invested in company stock, totaling approximately 90 percent of estimated losses);

- *In re Nortel Networks ERISA Litigation*, Civil Action No. 01-cv-1855 (M.D. Tenn.) ($21.5 million settlement in 401(k) company stock case); and

- *Daugherty v. The University of Chicago*, No. 1:17-cv-03736 (N.D. Ill.) ($6.5 million settlement in 403(b) breach of fiduciary duty class action) (the final approval Order is attached hereto as Exhibit B).

10.    In addition, I currently serve as co-lead plaintiffs' counsel in numerous class action cases against ERISA plan sponsors. These cases, which allege breaches of fiduciary duties, include

cases against AT&T, Charles Schwab Corporation, Mutual of Omaha, TIAA-CREF, and Princeton University.

      C.      **Knowledge of the Applicable Law**

11.     The attorneys at Berger have extensive knowledge of the procedural and substantive law at issue in this case, as illustrated by the attached firm résumé and the work done to date in this litigation.

12.     The firm's lawyers are familiar with the intricacies of class action procedure and ERISA litigation practice and have been recognized by their peers for their knowledge and accomplishments.

      D.      **Berger's Lodestar**

13.     Below is a summary of the time spent by Berger's attorneys and other professionals on this action, and the lodestar calculation is based on the firm's billing rates currently in effect. This summary was prepared at my request from contemporaneous daily time records regularly prepared and maintained by Berger, which are available for *in camera* review at the request of the Court.

14.     The time reflected below was time actually spent in the prosecution of this case by Berger attorneys and staff. Berger and the other Class Counsel were careful not to expend unnecessary hours and not to duplicate work done by others. The time submitted herein reflects only work done on behalf of the Class.

15.     My colleagues and I at Berger have reviewed the billing records that Berger maintained in this case, ensuring that none of the work reflected on the billing records was redundant or duplicative. As of the present, the total number of recorded hours spent on this litigation by Berger is 481.9, and the lodestar amount for attorney and support staff time, based on the firm's current rates, is $385,604.60. A breakdown of Berger's lodestar is reflected below:

| Name | Position | Hours | Rate | Lodestar |
|------|----------|-------|------|----------|
| Collins, Todd S. | Managing Shareholder | 223.9 | $960.00 | $214,944.00 |
| Noteware, Ellen T. | Shareholder | 47.8 | $705.00 | $33,699.00 |
| Eric Lechtzin | Shareholder | 196.9 | $675.00 | $132,907.50 |
| Various | Other Litigation Support Personnel | 3.8 | $354.36[1] | $1,346.60 |
| Green, Ruben | Paralegal | 9.5 | $255.00 | $2,707.50 |
| **TOTAL** | | **481.90** | | **$385,604.60** |

16.    The hourly rates shown above are charged in all of our cases in which the professionals listed above provide legal service. These hourly rates are the usual and customary rates that Berger charges in contingent and non-contingent matters.

17.    As Berger's work on this case is ongoing, I anticipate that Berger's lodestar will increase materially from the present date to the date by which this case is finally resolved, in light of work that will be required in connection with preparing for and participating in the Final Approval Hearing scheduled for August 1, 2019, continuing to communicate with Class Members, and administering the Settlement.

E.    **Berger's Expenses**

18.    This litigation required Berger to advance substantial costs. As of July 2, 2019, Berger expended costs in the amount of $9,849.08 to prosecute this action, as follows:

---

[1] This is a blended rate for several timekeepers, including IT personnel and paralegals.

| EXPENSE | AMOUNT |
|---|---|
| Telephone | $27.82 |
| Travel | $3,565.39 |
| Transcripts | $62.10 |
| Computer research | $298.07 |
| Postage, Delivery & freight | $56.26 |
| Database Hosting | $152.04 |
| Reproduction (copying, printing, and scanning) | $220.40 |
| Court Filing Fees | $150.00 |
| Mediation Fees | $5,317.00 |
| **TOTAL** | **$9,849.08** |

19.    The expenses incurred pertaining to this case are reflected in the books and records of this firm. These books and records are prepared from expense vouchers and check records and are an accurate record of the expenses incurred. All of the expenses incurred were reasonable and necessary to the prosecution of this case.

20.    I anticipate that Berger will incur additional expenses in an amount in excess of $647.60 in connection with my attendance at the Final Approval Hearing. As a result, Berger's total expenses will be not less than **$10,496.68.**


I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed July 3, 2019

Todd S. Collins

_____

    Todd S. Collins

# EXHIBIT A



1818 Market Street | Suite 3600 | Philadelphia, PA 19103
info@bm.net
bergermontague.com
800-424-6690

**About Berger Montague**

Berger Montague is a full-spectrum class action and complex civil litigation firm, with nationally known attorneys highly sought after for their legal skills. The firm has been recognized by courts throughout the country for its ability and experience in handling major complex litigation, particularly in the fields of antitrust, securities, mass torts, civil and human rights, whistleblower cases, employment, and consumer litigation. In numerous precedent-setting cases, the firm has played a principal or lead role.

The *National Law Journal,* which recognizes a select group of law firms each year that have done "exemplary, cutting-edge work on the plaintiffs' side," has selected Berger Montague in 12 out of the last 14 years (2003-05, 2007-13, 2015-16) for its "Hot List" of top plaintiffs' oriented litigation firms in the United States. In 2018, the *National Law Journal* recognized Berger Montague as "Elite Trial Lawyers" in two categories: Environmental Protection and Privacy/Data Breach. The firm has also achieved the highest possible rating by its peers and opponents as reported in *Martindale-Hubbell* and was ranked as a 2019 "Best Law Firm" by *U.S. News - Best Lawyers.*

Currently, the firm consists of 67 lawyers; 23 paralegals; and an experienced support staff. Few firms in the United States have our breadth of practice and match our successful track record in such a broad array of complex litigation.

**History of the Firm**

Berger Montague was founded in 1970 by the late David Berger to concentrate on the representation of plaintiffs in a series of antitrust class actions. David Berger helped pioneer the use of class actions in antitrust litigation and was instrumental in extending the use of the class action procedure to other litigation areas, including securities, employment discrimination, civil and human rights, and mass torts. The firm's complement of nationally recognized lawyers has represented both plaintiffs and defendants in these and other areas and has recovered billions of dollars for its clients. In complex litigation, particularly in areas of class action litigation, Berger Montague has established new law and forged the path for recovery.

The firm has been involved in a series of notable cases, some of them among the most important in the last 50 years of civil litigation. For example, the firm was one of the principal counsels for

plaintiffs in the *Drexel Burnham Lambert/Michael Milken* securities and bankruptcy litigation. Claimants in these cases recovered approximately $2 billion in the aftermath of the collapse of the junk bond market and the bankruptcy of *Drexel* in the late 1980's. The firm was also among the principal trial counsel in the *Exxon Valdez Oil Spill* litigation in Anchorage, Alaska, a trial resulting in a record jury award of $5 billion against Exxon, later reduced by the U.S. Supreme Court to $507.5 million. Berger Montague was lead counsel in the *School Asbestos Litigation*, in which a national class of secondary and elementary schools recovered in excess of $200 million to defray the costs of asbestos abatement. The case was the first mass tort property damage class action certified on a national basis. Berger Montague was also lead/liaison counsel in the *Three Mile Island Litigation* arising out of a serious nuclear incident.

Additionally, in the human rights area, the firm, through its membership on the executive committee in the *Holocaust Victim Assets Litigation*, helped to achieve a $1.25 billion settlement with the largest Swiss banks on behalf of victims of Nazi aggression whose deposits were not returned after the Second World War. The firm also played an instrumental role in bringing about a $4.37 billion settlement with German industry and government for the use of slave and forced labor during the Holocaust.

## Practice Areas and Case Profiles

**Antitrust**

In antitrust litigation, the firm has served as lead, co-lead or co-trial counsel on many of the most significant civil antitrust cases over the last 45 years, including *In re Corrugated Container Antitrust Litigation* (recovery in excess of $366 million), the *Infant Formula* case (recovery of $125 million), the *Brand Name Prescription Drug* price-fixing case (settlement of more than $700 million), the *State of Connecticut Tobacco Litigation* (settlement of $3.6 billion), the *Graphite Electrodes Antitrust Litigation* (settlement of more than $134 million), and the *High-Fructose Corn Syrup Litigation* ($531 million).

> Once again, Berger Montague has been selected by *Chambers and Partners* for its 2019 *Chambers USA* Guide as one of Pennsylvania's top antitrust firms. *Chambers USA 2019* states that Berger Montague's antitrust practice group is "a preeminent force in the Pennsylvania antitrust market, offering expert counsel to clients from a broad range of industries."
>
> The *Legal 500*, a guide to worldwide legal services providers, ranked Berger Montague as a Top-Tier Law Firm for Antitrust: Civil Litigation/Class Actions: Plaintiff in the United States in its 2019 guide and states that Berger Montague's antitrust department "has acted as lead counsel or co-lead counsel in antitrust cases of the utmost complexity and significance since its

- ***Payment Card Interchange Fee and Merchant Discount Antitrust Litigation:*** Berger Montague served as co-lead counsel for a national class including millions of merchants

in the *Payment Card Interchange Fee and Merchant Discount Antitrust Litigation* against Visa, MasterCard and several of the largest banks in the U.S. (*e.g.*, Chase, Bank of America and Citi). The lawsuit alleged that merchants paid excessive fees to accept Visa and MasterCard cards because the payment cards, individually and together with their respective member banks, violated the antitrust laws. The challenged conduct included, *inter alia*, the collective fixing of interchange fees and adoption of rules that hindered any competitive pressure by merchants to reduce those fees. The lawsuit further alleged that defendants maintained their conspiracy even after both Visa and MasterCard changed their corporate forms from joint ventures owned by member banks to publicly-owned corporations following commencement of this litigation. On September 18, 2018, after thirteen years of hard-fought litigation, Visa and MasterCard agreed to pay as much as approximately $6.26 billion, but no less than approximately $5.56 billion, to settle the case. This result is the largest-ever class action settlement of an antitrust case. The settlement received preliminary approval on January 24, 2019.

- *In re Domestic Drywall Antitrust Litigation:* Berger Montague served as co-lead counsel on behalf of a class of direct purchasers of drywall, in a case alleging that the dominant manufacturers of drywall engaged in a conspiracy to fix drywall prices in the U.S. and to abolish the industry's long-standing practice of limiting price increases for the duration of a construction project through "job quotes." Berger Montague represented a class of direct purchasers of drywall from defendants for the period from January 1, 2012 to January 31, 2013. USG Corporation and United States Gypsum Company (collectively, "USG"), New NGC, Inc., Lafarge North America Inc., Eagle Materials, Inc., American Gypsum Company LLC, TIN Inc. d/b/a Temple-Inland Inc., and PABCO Building Products, LLC were named as defendants in this action. On August 20, 2015, the district court granted final approval of two settlements—one with USG and the other with TIN Inc.—totaling $44.5 million. On December 8, 2016, the district court granted final approval of a $21.2 million settlement with Lafarge North America, Inc. On February 18, 2016, the district court denied the motions for summary judgment filed by American Gypsum Company, New NGC, Inc., Lafarge North America, Inc., and PABCO Building Products. On August 23, 2017, the district court granted direct purchaser plaintiffs' motion for class certification. On January 29, 2018, the district court granted preliminary approval of a joint settlement with the remaining defendants, New NGC, Inc., Eagle Materials, Inc., American Gypsum Company LLC, and PABCO Building Products, LLC, for $125 million. The settlement received final approval on July 17, 2018, bringing the total amount of settlements for the class to $190.7 million.

- *In re Currency Conversion Fee Antitrust Litigation:* Berger Montague, as one of two co-lead counsel, spearheaded a class action lawsuit alleging that the major credit cards had conspired to fix prices for foreign currency conversion fees imposed on credit card transactions. After eight years of litigation, a settlement of $336 million was approved in October 2009, with a Final Judgment entered in November 2009. Following the resolution of eleven appeals, the District Court, on October 5, 2011, directed distribution of the settlement funds to more than 10 million timely filed claimants, among the largest class of

claimants in an antitrust consumer class action. A subsequent settlement with American
Express increased the settlement amount to $386 million.  (MDL No. 1409 (S.D.N.Y)).

▪ ***In re Marchbanks Truck Service Inc., et al. v. Comdata Network, Inc.:***  Berger
Montague was co-lead counsel in this antitrust class action brought on behalf of a class
of thousands of Independent Truck Stops.  The lawsuit alleged that defendant Comdata
Network, Inc. had monopolized the market for specialized Fleet Cards used by long-haul
truckers. Comdata imposed anticompetitive provisions in its agreements with Independent
Truck Stops that artificially inflated the fees Independents paid when accepting the
Comdata's Fleet Card for payment.  These contractual provisions, commonly referred to
as anti-steering provisions or merchant restraints, barred Independents from taking
various competitive steps that could have been used to steer fleets to rival payment cards.
The settlement for $130 million and valuable prospective relief was preliminary approved
on March 17, 2014, and finally approved on July 14, 2014. In its July 14, 2014 order
approving Class Counsel's fee request, entered contemporaneously with its order finally
approving the settlement, the Court described this outcome as "substantial, both in
absolute terms, and when assessed in light of the risks of establishing liability and
damages in this case."

▪ ***Ross, et al. v. Bank of America (USA) N.A., et al.:***  Berger Montague, as lead counsel
for the cardholder classes, obtained final approval of settlements reached with Chase,
Bank of America, Capital One and HSBC, on claims that the defendant banks unlawfully
acted in concert to require cardholders to arbitrate disputes, including debt collections,
and to preclude cardholders from participating in any class actions.  The case was brought
for injunctive relief only.  The settlements remove arbitration clauses nationwide for 3.5
years from the so-called "cardholder agreements" for over 100 million credit card holders.
This victory for consumers and small businesses came after nearly five years of hard-
fought litigation, including obtaining a decision by the Court of Appeals reversing the order
dismissing the case, and will aid consumers and small businesses in their ability to resist
unfair and abusive credit card practices.   In June 2009, the National Arbitration Forum (or
"NAF") was added as a defendant. Berger Montague also reached a settlement with NAF.
Under that agreement, NAF ceased administering arbitration proceedings involving
business cards for a period of three and one-half (3.5) years, which relief is in addition to
the requirements of a Consent Judgment with the State of Minnesota, entered into by the
NAF on July 24, 2009.

▪ ***In re High Fructose Corn Syrup Antitrust Litigation:***  Berger Montague was one of
three co-lead counsel in this nationwide class action alleging a conspiracy to allocate
volumes and customers and to price-fix among five producers of high fructose corn syrup.
After nine years of litigation, including four appeals, the case was settled on the eve of trial
for $531 million.  (MDL. No. 1087, Master File No. 95-1477 (C.D. Ill.)).

▪ ***In re Linerboard Antitrust Litigation:***  Berger Montague was one of a small group of
court-appointed executive committee members who led this nationwide class action

against producers of linerboard.  The complaint alleged that the defendants conspired to reduce production of linerboard in order to increase the price of linerboard and corrugated boxes made therefrom.  At the close of discovery, the case was settled for more than $200 million. (98 Civ. 5055 and 99-1341 (E.D. Pa.)).

▪   *Johnson, et al. v AzHHA, et al.:*  Berger Montague was co-lead counsel in this litigation on behalf of a class of temporary nursing personnel, against the Arizona Hospital and Healthcare Association, and its member hospitals, for agreeing and conspiring to fix the rates and wages for temporary nursing personnel, causing class members to be underpaid.  The court approved $24 million in settlements on behalf of this class of nurses. (Case No. 07-1292 (D. Ariz.)).

▪   *In re Graphite Electrodes Antitrust Litigation:*  Berger Montague was one of the four co-lead counsel in a nationwide class action price-fixing case.  The case settled for in excess of $134 million and over 100% of claimed damages. (02 Civ. 99-482 (E.D. Pa.)).

▪   *In re Catfish Antitrust Litig. Action*:  The firm was co-trial counsel in this action which settled with the last defendant a week before trial, for total settlements approximating $27 million.  (No. 2:92CV073-D-O, MDL No. 928 (N.D. Miss.)).

▪   *In re Carbon Dioxide Antitrust Litigation:*  The firm was co-trial counsel in this antitrust class action which settled with the last defendant days prior to trial, for total settlements approximating $53 million, plus injunctive relief.  (MDL No. 940 (M.D. Fla.)).

▪   *In re Infant Formula Antitrust Litigation*:  The firm served as co-lead counsel in an antitrust class action where settlement was achieved two days prior to trial, bringing the total settlement proceeds to $125 million.  (MDL No. 878 (N.D. Fla.)).

▪   *Red Eagle Resources Corp., Inc., v. Baker Hughes, Inc.:*  The firm was a member of the plaintiffs' executive committee in this antitrust class action which yielded a settlement of $52.5 million.  (C.A. No. H-91-627 (S.D. Tex.)).

▪   *In re Corrugated Container Antitrust Litigation:*  The firm, led by H. Laddie Montague, was co-trial counsel in an antitrust class action which yielded a settlement of $366 million, plus interest, following trial. (MDL No. 310 (S.D. Tex.)).

▪   *Bogosian v. Gulf Oil Corp.:*  With Berger Montague as sole lead counsel, this landmark action on behalf of a national class of more than 100,000 gasoline dealers against 13 major oil companies led to settlements of over $35 million plus equitable relief on the eve of trial.  (No. 71-1137 (E.D. Pa.)).

▪   *In re Master Key Antitrust Litigation:*  The firm served as co-lead counsel in an antitrust class action that yielded a settlement of $21 million during trial.  (MDL No. 45 (D. Conn.)).

The firm has also played a leading role in cases in the pharmaceutical arena, especially in cases involving the delayed entry of generic competition, having achieved over $1 billion in settlements in such cases over the past decade, including:

- ▪ ***King Drug Co. v. Cephalon, Inc.:*** Berger Montague played a major role (serving on the executive committee) in this antitrust class action on behalf of direct purchasers of generic versions of the prescription drug Provigil (modafinil). After nine years of hard-fought litigation, the court approved a $512 million partial settlement, the largest settlement ever for a case alleging delayed generic competition. (Case No. 2:06-cv-01797 (E.D. Pa.)). The case is continuing against one defendant.

- ▪ ***In re Asacol Antitrust Litigation:*** The firm served as class counsel for direct purchasers of Asacol HS and Delzicol that alleged that defendants participated in a scheme to block generic competition for the ulcerative colitis drug Asacol. The case settled for $15 million. (Case No. 15-cv-12730-DJC (D. Mass.)).

- ▪ ***In re Celebrex (Celecoxib) Antitrust Litigation***: The firm represented a class of direct purchasers of brand and generic Celebrex (celecoxib) in an action alleging that Pfizer, in violation of the Sherman Act, improperly obtained a patent for Celebrex from the U.S. Patent and Trademark Office in a scheme to unlawfully extend patent protection and delay market entry of generic versions of Celebrex. The case settled for $94 million. (Case No. 14-cv-00361 (E.D. VA.)).

- ▪ ***In re K-Dur Antitrust Litigation:*** Berger Montague served as co-lead counsel for the class in this long-running antitrust litigation. Berger Montague litigated the case before the Court of Appeals and won a precedent-setting victory, and continued the fight before the Supreme Court. On remand, the case settled for $60.2 million. (Case No. 01-1652 (D.N.J.)).

- ▪ ***In re Aggrenox Antitrust Litigation:*** Berger Montague represented a class of direct purchasers of Aggrenox in an action alleging that defendants delayed the availability of less expensive generic Aggrenox through, inter alia, unlawful reverse payment agreements. The case settled for $146 million. (Case No. 14-02516 (D. Conn.)).

- ▪ ***In re Solodyn Antitrust Litigation:*** Berger Montague serves as co-lead counsel representing a class of direct purchasers of brand and generic Solodyn (extended-release minocycline hydrochloride tablets) alleging that defendants entered into agreements not to compete in the market for extended-release minocycline hydrochloride tablets in violation of the Sherman Act. The case settled for a total of more than $76 million. (Case No. 14-MD-2503-DJC (D. Mass.)).

- ▪ ***In re Prandin Direct Purchaser Antitrust Litigation:*** Berger Montague served as co-lead counsel and recovered $19 million on behalf of direct purchasers of the diabetes medication Prandin. (Case No. 2:10-cv-12141 (E.D. Mich.)).

- ***Mylan Pharmaceuticals, Inc. v. Warner Chilcott Public Ltd. Co.:***  Berger Montague was appointed as co-lead counsel in a case challenging Warner Chilcott's alleged anticompetitive practices with respect to the branded drug Doryx.  The case settled for $15 million.  (Case No. 2:12-cv-03824 (E.D. Pa.)).

- ***In re Neurontin Antitrust Litigation:***  Berger Montague served as part of a small group of firms challenging the maintenance of a monopoly relating to the pain medication Neurontin.  The case settled for $190 million.  (Case No. 02-1830 (D.N.J.)).

- ***In re Skelaxin Antitrust Litigation:***  Berger Montague was among a small group of firms litigating on behalf of direct purchasers of the drug Skelaxin.  The case settled for $73 million.  (Case No. 2:12-cv-83 / 1:12-md-02343) (E.D. Tenn.)).

- ***In re Wellbutrin XL Antitrust Litigation:***  Berger Montague served as co-lead counsel for a class of direct purchasers of the antidepressant Wellbutrin XL.  A settlement of $37.5 million was reached with Valeant Pharmaceuticals (formerly Biovail), one of two defendants in the case. (Case No. 08-cv-2431 (E.D. Pa.)).

- ***Rochester Drug Co-Operative, Inc. v. Braintree Labs., Inc.:***  Berger Montague, appointed as co-lead counsel, prosecuted this case on behalf of direct purchasers alleging sham litigation led to the delay of generic forms of the brand drug Miralax.  The case settled for $17.25 million. (Case No. 07-142 (D. Del.)).

- ***In re Oxycontin Antitrust Litigation:***  Berger Montague served as co-lead counsel on behalf of direct purchasers of the prescription drug Oxycontin.  The case settled in 2011 for $16 million.  (Case No. 1:04-md-01603 (S.D.N.Y)).

- ***Meijer, Inc., et al. v. Abbott Laboratories:***  Berger Montague served as co-lead counsel in a class action on behalf of pharmaceutical wholesalers and pharmacies charging Abbott Laboratories with illegally maintaining monopoly power and overcharging purchasers in violation of the federal antitrust laws.  Plaintiffs alleged that Abbott had used its monopoly with respect to its anti-HIV medicine Norvir (ritonavir) to protect its monopoly power for another highly profitable Abbott HIV drug, Kaletra.  This antitrust class action settled for $52 million after four days of a jury trial in federal court in Oakland, California.  (Case No. 07-5985 (N.D. Cal.)).

- ***In re Nifedipine Antitrust Litigation:***  Berger Montague played a major role (serving on the executive committee) in this antitrust class action on behalf of direct purchasers of generic versions of the anti-hypertension drug Adalat (nifedipine).  After eight years of hard-fought litigation, the court approved a total of $35 million in settlements.  (Case No. 1:03-223 (D.D.C.)).

- ***In re DDAVP Direct Purchaser Antitrust Litigation:***  Berger Montague served as co-lead counsel in a case that charged defendants with using sham litigation and a fraudulently obtained patent to delay the entry of generic versions of the prescription drug

DDAVP.  Berger Montague achieved a $20.25 million settlement only after winning a precedent-setting victory before the United States Court of Appeals for the Second Circuit that ruled that direct purchasers had standing to recover overcharges arising from a patent-holder's misuse of an allegedly fraudulently obtained patent.  (Case No. 05-2237 (S.D.N.Y.)).

▪   ***In re Terazosin Antitrust Litigation:***  Berger Montague was one of a small group of counsel in a case alleging that Abbott Laboratories was paying its competitors to refrain from introducing less expensive generic versions of Hytrin.  The case settled for $74.5 million.  (Case No. 99-MDL-1317 (S.D. Fla.)).

▪   ***In re Remeron Antitrust Litigation:***  Berger Montague was one of a small group of counsel in a case alleging that the manufacturer of this drug was paying its competitors to refrain from introducing less expensive generic versions of Remeron.  The case settled for $75 million.  (2:02-CV-02007-FSH (D. N.J.)).

▪   ***In re Tricor Antitrust Litigation:***  Berger Montague was one of a small group of counsel in a case alleging that the manufacturer of this drug was paying its competitors to refrain from introducing less expensive generic versions of Tricor.  The case settled for $250 million.  (No. 05-340 (D. Del.)).

▪   ***In re Relafen Antitrust Litigation:***  Berger Montague was one of a small group of firms who prepared for the trial of this nationwide class action against GlaxoSmithKline, which was alleged to have used fraudulently-procured patents to block competitors from marketing less-expensive generic versions of its popular nonsteroidal anti-inflammatory drug, Relafen (nabumetone).  Just before trial, the case was settled for $175 million.  (No. 01-12239-WGY (D. Mass.)).

▪   ***In re Cardizem CD Antitrust Litigation:***  Berger Montague served on the executive committee of firms appointed to represent the class of direct purchasers of Cardizem CD.  The suit charged that Aventis (the brand-name drug manufacturer of Cardizem CD) entered into an illegal agreement to pay Andrx (the maker of a generic substitute to Cardizem CD) millions of dollars to delay the entry of the less expensive generic product.  On November 26, 2002, the district court approved a final settlement against both defendants for $110 million.  (No. 99-MD-1278, MDL No. 1278 (E.D. Mich.)).

▪   ***In re Buspirone Antitrust Litigation:***  The firm served on the court-appointed steering committee in this class action, representing a class of primarily pharmaceutical wholesalers and resellers.  The Buspirone class action alleged that pharmaceutical manufacturer BMS engaged in a pattern of illegal conduct surrounding its popular anti-anxiety medication, Buspar, by paying a competitor to refrain from marketing a generic version of Buspar, improperly listing a patent with the FDA, and wrongfully prosecuting patent infringement actions against generic competitors to Buspar.  On April 11, 2003, the Court approved a $220 million settlement.  (MDL No. 1410 (S.D.N.Y.)).

▪ ***North Shore Hematology-Oncology Assoc., Inc. v. Bristol-Myers Squibb Co.:*** The firm was one of several prosecuting an action complaining of Bristol Myers's use of invalid patents to block competitors from marketing more affordable generic versions of its life-saving cancer drug, Platinol (cisplatin). The case settled for $50 million. (No. 1:04CV248 (EGS) (D.D.C.)).

**Commercial Litigation**

Berger Montague helps business clients achieve extraordinary successes in a wide variety of complex commercial litigation matters. Our attorneys appear regularly on behalf of clients in high stakes federal and state court commercial litigation across the United States. We work with our clients to develop a comprehensive and detailed litigation plan, and then organize, allocate and deploy whatever resources are necessary to successfully prosecute or defend the case.

▪ ***Erie Power Technologies, Inc. v. Aalborg Industries A/S, et al.:*** Berger Montague represented a trustee in bankruptcy against officers and directors and the former corporate parent and obtained a very favorable confidential settlement. (No. 04-282E (W.D. Pa.)).

▪ ***Moglia v. Harris et al.:*** Berger Montague represented a liquidating trustee against the officers of U.S. Aggregates, Inc. and obtained a settlement of $4 million. (No. C 04 2663 (CW) (N.D. Cal.)).

▪ ***Gray v. Gessow et al.:*** The firm represented a litigation trust and brought two actions, one against the officers and directors of Sunterra Inc. an insolvent company, and the second against Sunterra's accountants, Arthur Andersen and obtained an aggregate settlement of $4.5 million. (Case No. MJG 02-CV-1853 (D. Md.) and No. 6:02-CV-633-ORL-28JGG (M.D. Fla.)).

▪ ***Fitz, Inc. v. Ralph Wilson Plastics Co.:*** The firm served as sole lead counsel and obtained, after 7 years of litigation, in 2000 a settlement whereby fabricator class members could obtain full recoveries for their losses resulting from defendants' defective contact adhesives. (No. 1-94-CV-06017 (D.N.J.)).

▪ ***Provident American Corp. and Provident Indemnity Life Insurance Company v. The Loewen Group Inc. and Loewen Group International Inc.:*** Berger Montague settled this individual claim, alleging a 10-year oral contract (despite six subsequent writings attempting to reduce terms to writing, each with materially different terms added, all of which were not signed), for a combined payment in cash and stock of the defendant, of $30 Million. (No. 92-1964 (E.D. Pa.)).

▪ ***Marilou Whitney (Estate of Cornelius Vanderbilt Whitney) v. Turner/Time Warner:*** Berger Montague settled this individual claim for a confidential amount, seeking interpretation of the distribution agreement for the movie, *Gone with the Wind* and undistributed profits for the years 1993-1997, with forward changes in accounting and distribution.

9

▪ ***American Hotel Holdings Co., et. al v. Ocean Hospitalities, Inc., et. al.:*** Berger Montague defended against a claim for approximately $16 million and imposition of a constructive trust, arising out of the purchase of the Latham Hotel in Philadelphia. Berger Montague settled the case for less than the cost of the trial that was avoided. (June Term, 1997, No. 2144 (Pa. Ct. Com. Pl., Phila. Cty.))

▪ ***Creative Dimensions and Management, Inc. v. Thomas Group, Inc.:*** Berger Montague defended this case against a claim for $30 million for breach of contract. The jury rendered a verdict in favor of Berger Montague's client on the claim (i.e., $0), and a verdict for the full amount of Berger Montague's client on the counterclaim against the plaintiff. (No. 96-6318 (E.D. Pa.)).

▪ ***Robert S. Spencer, et al. v. The Arden Group, Inc., et al.***: Berger Montague represented an owner of limited partnership interests in several commercial real estate partnerships in a lawsuit against the partnerships' general partner. The terms of the settlement are subject to a confidentiality agreement. (Aug. Term, 2007, No. 02066 (Pa. Ct. Com. Pl., Phila. Cty. - Commerce Program)).

▪ ***Forbes v. GMH:*** Berger Montague represented a private real estate developer/investor who sold a valuable apartment complex to GMH for cash and publicly-held securities. The case which claimed securities fraud in connection with the transaction settled for a confidential sum which represented a significant portion of the losses experienced. (No. 07-cv-00979 (E.D. Pa.)).

**Commodities & Financial Instruments**

Berger Montague ranks among the country's preeminent firms for managing and trying complex Commodities & Financial Instruments related cases on behalf of individuals and as class actions. The Firm's commodities clients include individual hedge and speculation traders, hedge funds, energy firms, investment funds, and precious metals clients.

• **In re Peregrine Financial Group Customer Litigation:** Berger Montague served as co-lead counsel in a class action which helped deliver settlements worth more than $75 million on behalf of former customers of Peregrine Financial Group, Inc., in litigation against U.S. Bank, N.A., and JPMorgan Chase Bank, N.A., arising from Peregrine's collapse in July 2012. The lawsuit alleges that both banks breached legal duties by allowing Peregrine's owner to withdraw and put millions of dollars in customer funds to non-customer use. (No. 1:12-cv-5546)

▪ ***In re MF Global Holdings Ltd. Investment Litigation***: Berger Montague is one of two co-lead counsel that represented thousands of commodities account holders who fell victim to the alleged massive theft and misappropriation of client funds at the former major global commodities brokerage firm MF Global. Berger Montague reached a variety of settlements, including with JPMorgan Chase Bank, the MF Global SIPA Trustee, and the CME Group, that collectively helped to return approximately $1.6 billion to the

class. Ultimately, class members received more than 100% of the funds allegedly misappropriated by MF Global even after all fees and expenses. (No. 11-cv-07866 (S.D.N.Y.).

- ▪ ***In re Commodity Exchange, Inc., Gold Futures and Options Trading Litigation***: Berger Montague is one of two co-lead counsel representing traders of traders of gold-based derivative contracts, physical gold, and gold-based securities against The Bank of Nova Scotia, Barclays Bank plc, Deutsche Bank AG, HSBC Bank plc, Société Générale and the London Gold Market Fixing Limited.  Plaintiffs allege that the defendants, members of the London Gold Market Fixing Limited, which sets an important benchmark price for gold, conspired to manipulate this benchmark for their collective benefit.  (1:14-md-02548 (S.D.N.Y.)).

- ▪ ***In re Libor-Based Financial Instruments Antitrust Litigation***:  Berger Montague represents investors who transacted in Eurodollar futures contracts and options on futures contracts on the Chicago Mercantile Exchange ("CME") between August 2007 and May 2010.  The lawsuit alleges that the defendant banks knowingly and intentionally understated their true borrowing costs.  By doing so, the defendant banks caused Libor to be calculated or suppressed at artificially low rates.  The defendants' alleged manipulation of Libor allowed their banks to pay artificially low interest rates to purchasers of Libor-based financial instruments thereby harming investors in futures, swaps, and other Libor-based derivative products.  On February 28, 2018, the Court denied Plaintiff's motion for class certification. That decision is on appeal which is pending.    (No. 1:11-md-02262-NRB (S.D.N.Y.)).

- ▪ ***Brown, et al. v. Kinross Gold, U.S.A., et al.***: Berger Montague was one of two co-lead counsel in this action alleging that a leading gold mining company illegally forced out preferred shareholders. The action resulted in a settlement of $29.25 million in cash and $6.5 million in other consideration (approximately 100% of damages and accrued dividends after fees and costs). (No. 02-cv-00605 (D.N.V.)).

## Consumer Protection

Berger Montague's Consumer Protection Group protects consumers when they are injured by false or misleading advertising, defective products, data privacy breaches, and various other unfair trade practices.  Consumers too often suffer the brunt of corporate wrongdoing, particularly in the area of false or misleading advertising, defective products, and data or privacy breaches.

- • ***In re Public Records Fair Credit Reporting Act Litigation***:  Berger Montague is class counsel in three class action settlements involving how the big three credit bureaus, Experian, TransUnion, and Equifax, report public records, including tax liens and civil judgments.  The settlements provide groundbreaking injunctive relief valued at over $100 billion and provide streamlined a streamlined process for consumers to receive uncapped monetary payments for claims related to inaccurate reporting of public records.

- ▪ *In re: CertainTeed Fiber Cement Siding Litigation*, MDL No. 2270 (E.D. Pa.).  The firm, as one of two Co-Lead Counsel firms obtained a settlement of more than $103 million in this multidistrict products liability litigation concerning CertainTeed Corporation's fiber cement siding, on behalf of a nationwide class.

- ▪ *Countrywide Predatory Lending Enforcement Action:*  Berger Montague advised the Ohio Attorney General (and several other state attorneys general) regarding predatory lending in a landmark law enforcement proceeding against *Countrywide* (and its parent, Bank of America) culminating in 2008 in mortgage-related modifications and other relief for borrowers across the country valued at some $8.6 billion.

- ● *In re Experian Data Breach Litigation:* Berger Montague served on the Executive Committee of this class action lawsuit that arose from a 2015 data breach at Experian in which computer hackers stole personal information including Social Security numbers and other sensitive personal information for approximately 15 million consumers. The settlement is valued at over $170 million. It consisted of $22 million for a non-reversionary cash Settlement Fund; $11.7 million for Experian's remedial measures implemented in connection with the lawsuit; and two years of free credit monitoring and identity theft insurance. The aggregate value of credit monitoring claimed by class members during the claims submission process exceeded $138 million, based on a $19.99 per month retail value of the service.

- ▪ *In re Pet Foods Product Liability Litigation*:  The firm served as one of plaintiffs' co-lead counsel in this multidistrict class action suit seeking to redress the harm resulting from the manufacture and sale of contaminated dog and cat food.  The case settled for $24 million.  Many terms of the settlement are unique and highly beneficial to the class, including allowing class members to recover up to 100% of their economic damages without any limitation on the types of economic damages they may recover.  (1:07-cv-02867 (D.N.J.), MDL Docket No. 1850 (D.N.J.)).

- ▪ *In re TJX Companies Retail Security Breach Litigation*:  The firm served as co-lead counsel in this multidistrict litigation brought on behalf of individuals whose personal and financial data was compromised in the then-largest theft of personal data in history.  The breach involved more than 45 million credit and debit card numbers and 450,000 customers' driver's license numbers.  The case was settled for benefits valued at over $200 million. Class members whose driver's license numbers were at risk were entitled to 3 years of credit monitoring and identity theft insurance (a value of $390 per person based on the retail cost for this service), reimbursement of actual identity theft losses, and reimbursement of driver's license replacement costs.  Class members whose credit and debit card numbers were at risk were entitled to cash of $15-$30 or store vouchers of $30-$60.  (No. 1:07-cv-10162-WGY, (D. Mass.)).

- ▪ *In Re: Heartland Payment Systems, Inc. Customer Data Security Breach Litigation:*  The firm served on the Executive Committee of this multidistrict litigation and obtained a

settlement of cash and injunctive relief for a class of 130 million credit card holders whose credit card information was stolen by computer hackers.  The breach was the largest known theft of credit card information in history.  (No. 4:09-MD-2046 (S.D. Tex. 2009)).

▪ ***In re: Countrywide Financial Corp. Customer Data Security Breach Litigation***:  The firm served on the Executive Committee of this multidistrict litigation and obtained a settlement for a class of 17 million individuals whose personal information was at risk when a rogue employee sold their information to unauthorized third parties. Settlement benefits included:  (i) reimbursement of several categories of out-of-pocket costs; (ii) credit monitoring and identity theft insurance for 2 years for consumers who did not accept Countrywide's prior offer of credit monitoring; and (iii) injunctive relief.  The settlement was approved by the court in 2010.  (3:08-md-01998-TBR (W.D. Ky. 2008)).

▪ ***In re Educational Testing Service Praxis Principles of Learning and Teaching: Grades 7-12 Litigation***:  The firm served on the plaintiffs' steering committee and obtained an $11.1 million settlement in 2006 on behalf of persons who were incorrectly scored on a teacher's licensing exam.  (MDL No. 1643 (E.D. La.)).

▪ ***Vadino, et al. v. American Home Products Corporation, et al.:***  The firm filed a class complaint different from that filed by any other of the filing firms in the New Jersey State Court "Fen Phen" class action, and the class sought in the firm's complaint was ultimately certified.  It was the only case anywhere in the country to include a claim for medical monitoring.  In the midst of trial, the New Jersey case was folded into a national settlement which occurred as the trial was ongoing, and which was structured to include a medical monitoring component worth in excess of $1 billion.  (Case Code No. 240 (N.J. Super. Ct.)).

▪ ***Parker v. American Isuzu Motors, Inc.***:  The firm served as sole lead counsel and obtained a settlement whereby class members recovered up to $500 each for economic damages resulting from accidents caused by faulty brakes.  (Sept. Term 2003, No. 3476 (Pa. Ct. Com. Pl., Phila. Cty.)).

▪ ***Salvucci v. Volkswagen of America, Inc. d/b/a Audi of America, Inc.***:  The firm served as co-lead counsel in litigation brought on behalf of a nationwide class alleging that defendants failed to disclose that its vehicles contained defectively designed timing belt tensioners and associated parts and that defendants misrepresented the appropriate service interval for replacement of the timing belt tensioner system.  After extensive discovery, a settlement was reached.  (Docket No. ATL-1461-03 (N.J. Sup. Ct. 2007)).

▪ ***Burgo v. Volkswagen of America, Inc. d/b/a Audi of America, Inc.***:  The firm served as co-lead counsel in litigation brought on behalf of a nationwide class against premised on defendants' defective tires that were prone to bubbles and bulges.  Counsel completed extensive discovery and class certification briefing.  A settlement was reached while the decision on class certification was pending.  The settlement consisted of remedies

13

including total or partial reimbursement for snow tires, free inspection/replacement of tires for those who experienced sidewall bubbles, blisters, or bulges, and remedies for those class members who incurred other costs related to the tires' defects.  (Docket No. HUD-L-2392-01 (N.J. Sup. Ct. 2001)).

▪ **_Crawford v. Philadelphia Hotel Operating Co._:**  The firm served as co-lead counsel and obtained a settlement whereby persons who contracted food poisoning at a business convention recovered $1,500 each.  (March Term, 2004, No. 000070 (Pa. Ct. Com. Pl., Phila. Cty.)).

▪ **_Block v. McDonald's Corporation_:**  The firm served as co-lead counsel and obtained a settlement of $12.5 million with McDonald's stemming from its failure to disclose the use of beef fat in its french fries.  (No. 01-CH-9137 (Ill. Cir. Ct., Cook Cty.)).

## Corporate Governance and Shareholder Rights

Berger Montague protects the interests of individual and institutional investors in shareholder derivative actions in state and federal courts across the United States.  Our attorneys help individual and institutional investors reform poor corporate governance, as well as represent them in litigation against directors of a company for violating their fiduciary duty or provide guidance on shareholder rights.

● **_Emil Rossdeutscher and Dennis Kelly v. Viacom:_**  The firm, as lead counsel, obtained a settlement resulting in a fund of $14.25 million for the class.  (C.A. No. 98C-03-091 (JEB) (Del. Super. Ct.)).

● **Fox v. Riverview Realty Partners, f/k/a Prime Group Realty Trust, et al.:**  The firm, as lead counsel, obtained a settlement resulting in a fund of $8.25 million for the class.

## Employee Benefits & ERISA

Berger Montague represents employees who have claims under the federal Employee Retirement Income Security Act. We litigate cases on behalf of employees whose 401(k) and pension investments have suffered losses as a result of the breach of fiduciary duties by plan administrators and the companies they represent. Berger Montague has recovered hundreds of millions of dollars in lost retirement benefits for American workers and retirees, and also gained favorable changes to their retirement plans.

▪ **_In re Unisys Corp. Retiree Medical Benefits:_**  The firm, as co-lead counsel, handled the presentation of over 70 witnesses, 30 depositions, and over 700 trial exhibits in this action that has resulted in partial settlements in 1990 of over $110 million for retirees whose health benefits were terminated.  (MDL No. 969 (E.D. Pa.)).

▪ **_Local 56 U.F.C.W. v. Campbell Soup Co._:**  The firm represented a class of retired Campbell Soup employees in an ERISA class action to preserve and restore retiree

medical benefits.  A settlement yielded benefits to the class valued at $114.5 million.  (No. 93-MC-276 (SSB) (D.N.J.)).

- ▪ ***Rose v. Cooney***: No. 5:92-CV-208 (D. Conn.) The firm, acting as lead counsel, obtained more than $29 million in cash and payment guarantees from Xerox Corporation to resolve claims of breach of fiduciary duty for plan investments in interest contracts issued by Executive Life Insurance Company.

- ▪ ***In re Masters, Mates & Pilots Pension Plan and IRAP Litig.:*** No. 85 Civ. 9545 (VLB) (S.D.N.Y) The firm, as co-lead counsel, participated in lengthy litigation with the U.S. Department of Labor to recover losses to retirement plans resulting from imprudent and prohibited investments; settlements in excess of $20 million, which fully recovered lost principal, were obtained to resolve claims of fiduciary breaches in selecting and monitoring investment managers and investments.

- ▪ ***In re Lucent Technologies, Inc. ERISA Litigation***: No. 01-CV-3491 (D.N.J.) The firm served as co-lead counsel in this class action on behalf of participants and beneficiaries of the Lucent defined contribution plans who invested in Lucent stock, and secured a settlement providing injunctive relief and for the payment of $69 million.

- ▪ ***Diebold v. Northern Trust Investments, N.A.:*** 1:09-cv-01934 (N.D. Ill.) As co-lead counsel in this ERISA breach of fiduciary duty case, the firm secured a $36 million settlement on behalf of participants in retirement plans who participated in Northern Trust's securities lending program. Plaintiffs alleged that defendants breached their ERISA fiduciary duties by failing to manage properly two collateral pools that held cash collateral received from the securities lending program. The settlement represented a recovery of more than 25% of alleged class member losses.

- ▪ ***In re SPX Corporation ERISA Litigation***: No. 3:04-cv-192 (W.D.N.C.) The firm recovered 90% of the estimated losses 401(k) plan participants who invested in the SPX stock fund claimed they suffered as a result of defendants' breaches of their ERISA fiduciary duties caused them.

- ▪ ***In re Nortel Networks ERISA Litigation***: Civil Action No. 01-cv-1855 (MD Tenn.) The firm represented a class of former workers of the bankrupt telecommunications company of mismanaging their employee stock fund in violation of their fiduciary duties. The case settled for $21.5 million.

- ▪ ***Glass Dimensions, Inc. v. State Street Bank & Trust Co.***: 1:10-cv-10588-DPW (D. Mass). The firm served as co-lead counsel in this ERISA case that alleged that defendants breached their fiduciary duties to the retirement plans it managed by taking unreasonable compensation for managing the securities lending program in which the plans participated. After the court certified a class of the plans that participated in the securities lending

program at issue, the case settled for $10 million on behalf of 1,500 retirement plans that invested in defendants' collective investment funds.

▪ ***In re Eastman Kodak ERISA Litigation***:  Master File No. 6:12-cv-06051-DGL (W.D.N.Y.) The firm served as class counsel in this ERISA breach of fiduciary duty class action which alleged that defendants breached their fiduciary duties to Kodak retirement plan participants by allowing plan investments in Kodak common stock. The case settled for $9.7 million.

▪ ***Lequita Dennard v. Transamerica Corp. et al.***:  Civil Action No. 1:15-cv-00030-EJM (N.D. Iowa). The firm served as counsel to plan participants who alleged that they suffered losses when plan fiduciaries failed to act solely in participants' interests, as ERISA requires, when they selected, removed and monitored plan investment options. The case settled for structural changes to the plan and $3.8 million monetary payment to the class.

## Employment & Unpaid Wages

The Berger Montague Employment & Unpaid Wages group works tirelessly to safeguard the rights of employees, and devote all of their energies to helping our firm's clients achieve their goals.  Our attorneys' understanding of federal and state wage and hour laws, federal and state civil rights and discrimination laws, ERISA, the WARN Act, laws protecting whistleblowers, such as federal and state False Claims Acts, and other employment laws, allows us to develop creative strategies to vindicate our clients' rights and help them secure the compensation to which they are entitled.

- ▪ ***Jantz v. Social Security Administration:***  The firm served as co-lead counsel and obtained a settlement on behalf of employees with targeted disabilities ("TDEs") alleged that SSA discriminated against TDEs by denying them promotional and other career advancement opportunities.  The settlement was reached after more than ten years of litigation, and the Class withstood challenges to class certification on four separate occasions.  The settlement includes a monetary fund of $9.98 million and an unprecedented package of extensive programmatic changes valued at approximately $20 million.  EEOC No. 531-2006-00276X (2015).

- ▪ ***Ciamillo v. Baker Hughes, Incorporated:*** The firm served as lead counsel and obtained a settlement of $5 million on behalf of a class of oil and gas workers who did not receive any overtime compensation for working hours in excess of 40 per week. (Civil Action No. 14-cv-81 (D. Alaska)).

- ▪ ***Employees Committed for Justice v. Eastman Kodak Company:***  The firm served as co-lead counsel and obtained a settlement of $21.4 million on behalf of a nationwide class of African American employees of Kodak alleging a pattern and practice of racial discrimination (pending final approval).  A significant opinion issued in the case is *Employees Committed For Justice v. Eastman Kodak Co.*, 407 F. Supp. 2d 423 (W.D.N.Y. 2005) (denying Kodak's motion to dismiss).  No. 6:04-cv-06098 (W.D.N.Y.)).

- ▪ ***Salcido v. Cargill Meat Solutions Corp.:***  The firm served as co-lead counsel and obtained a settlement of $7.5 million on behalf of a class of thousands of employees of Cargill Meat Solutions Corp. alleging that they were forced to work off-the-clock and during their breaks.  This is one of the largest settlements of this type of case involving a single plant in U.S. history.  (Civil Action Nos. 1:07-cv-01347-LJO-GSA and 1:08-cv-00605-LJO-GSA (E.D. Cal.)).

- ▪ ***Miller v. Hygrade Food Products, Inc.:***  The firm served as lead counsel and obtained a settlement of $3.5 million on behalf of a group of African American employees of Sara Lee Foods Corp. to resolve charges of racial discrimination and retaliation at its Ball Park Franks plant.  (No. 99-1087 (E.D. Pa.)).

- ▪ ***Chabrier v. Wilmington Finance, Inc.:***  The firm served as co-lead counsel and obtained a settlement of $2,925,000 on behalf of loan officers who worked in four offices to resolve claims for unpaid overtime wages.  A significant opinion issued in the case is *Chabrier v. Wilmington Finance, Inc.*, 2008 WL 938872 (E.D. Pa. April 04, 2008) (denying the defendant's motion to decertify the class).   (No. 06-4176 (E.D. Pa.)).

- ▪ ***Bonnette v. Rochester Gas & Electric Co.:***  The firm served as co-lead counsel and obtained a settlement of $2 million on behalf of a class of African American employees of Rochester Gas & Electric Co. to resolve charges of racial discrimination in hiring, job assignments, compensation, promotions, discipline, terminations, retaliation, and a hostile

work          environment.          (No.          07-6635          (W.D.N.Y.)).

▪ ***Confidential.*** The firm served as lead counsel and obtained a settlement of $6 million on behalf of a group of African American employees of a Fortune 100 company to resolve claims of racial discrimination, as well as injunctive relief which included significant changes to the Company's employment practices (settled out of court while charges of discrimination were pending with the U.S. Equal Employment Opportunity Commission).

## Environment & Public Health

Berger Montague lawyers are trailblazers in the fields of environmental class action litigation and mass torts. Our attorneys have earned their reputation in the fields of environmental litigation and mass torts by successfully prosecuting some of the largest, most well-known cases of our time. Our Environment & Public Health Group also prosecutes significant claims for personal injury, commercial losses, property damage, and environmental response costs. In 2016 Berger Montague was named an Elite Trial Lawyer Finalist in special litigation (environmental) by The National Law Journal.

▪ ***Cook v. Rockwell International Corporation:*** In February 2006, the firm won a $554 million jury verdict on behalf of thousands of property owners whose homes were exposed to plutonium or other toxins from the former Rocky Flats nuclear weapons site northwest of Denver, Colorado. Judgment in the case was entered by the court in June 2008 which, with interest, totaled $926 million. Recognizing this tremendous achievement, the Public Justice Foundation bestowed its prestigious Trial Lawyer of the Year Award for 2009 on Merrill G. Davidoff, David F. Sorensen, and the entire trial team for their "long and hard-fought" victory against "formidable corporate and government defendants." (No. 90-cv-00181-JLK (D. Colo.)). The jury verdict in that case was vacated on appeal in 2010, but on a second trip to the Tenth Circuit, Plaintiffs secured a victory in 2015, with the case then being sent back to the district court. A $375 million settlement was reached in May 2016, and final approval by the district court was obtained in April 2017.

▪ ***In re Exxon Valdez Oil Spill Litigation:*** On September 16, 1994, a jury trial of several months duration resulted in a record punitive damages award of $5 billion against the Exxon defendants as a consequence of one of the largest oil spills in U.S. history. The award was reduced to $507.5 million pursuant to a Supreme Court decision. David Berger was co-chair of the plaintiffs' discovery committee (appointed by both the federal and state courts). Harold Berger served as a member of the organizing case management committee. H. Laddie Montague was specifically appointed by the federal court as one of the four designated trial counsel. Both Mr. Montague and Peter Kahana shared (with the entire trial team) the 1995 "Trial Lawyer of the Year Award" given by the Trial Lawyers for Public Justice. (No. A89-0095-CVCHRH (D. Alaska)).

▪ ***In re Ashland Oil Spill Litigation:*** The firm led by Harold Berger served as co-lead counsel and obtained a $30 million settlement for damages resulting from a very large oil spill. (Master File No. M-14670 (W.D. Pa.)).

18

- ▪ ***State of Connecticut Tobacco Litigation:*** Berger Montague was one of three firms to represent the State of Connecticut in a separate action in state court against the tobacco companies. The case was litigated separate from the coordinated nationwide actions. Although eventually Connecticut joined the national settlement, its counsel's contributions were recognized by being awarded the fifth largest award among the states from the fifty states' Strategic Contribution Fund.

- ▪ ***In re School Asbestos Litigation***: As co-lead counsel, the firm successfully litigated a case in which a nationwide class of elementary and secondary schools and school districts suffering property damage as a result of asbestos in their buildings were provided relief. Pursuant to an approved settlement, the class received in excess of $70 million in cash and $145 million in discounts toward replacement building materials. (No. 83-0268 (E.D. Pa.)).

- ▪ ***Drayton v. Pilgrim's Pride Corp.:*** The firm served as counsel in a consolidation of wrongful death and other catastrophic injury cases brought against two manufacturers of turkey products, arising out of a 2002 outbreak of Listeria Monocytogenes in the Northeastern United States, which resulted in the recall of over 32 million pounds of turkey – the second largest meat recall in U.S. history at that time. A significant opinion issued in the case is *Drayton v. Pilgrim's Pride Corp.*, 472 F. Supp. 2d 638 (E.D. Pa. 2006) (denying the defendants' motions for summary judgment and applying the alternative liability doctrine). All of the cases settled on confidential terms in 2006. (No. 03-2334 (E.D. Pa.)).

- ▪ ***In re SEPTA 30th Street Subway/Elevated Crash Class Action:*** Berger Montague represented a class of 220 persons asserting injury in a subway crash. Despite a statutory cap of $1 million on damages recovery from the public carrier, and despite a finding of sole fault of the public carrier in the investigation by the National Highway Transit Safety Administration, Berger Montague was able to recover an aggregate of $3.03 million for the class. (1990 Master File No. 0001 (Pa. Ct. Com. Pls., Phila. Cty.)).

- ▪ ***In re Three Mile Island Litigation:*** As lead/liaison counsel, the firm successfully litigated the case and reached a settlement in 1981 of $25 million in favor of individuals, corporations and other entities suffering property damage as a result of the nuclear incident involved. (C.A. No. 79-0432 (M.D. Pa.)).

- ▪ ***In Re Louisville Explosions Litigation:*** This case was one of the earliest examples of a class action trial of an environmental class action. It redressed damage to private property owners and employees resulting from a February 13, 1981 sewer explosion which was one of the largest explosion mishaps in U.S. history. In February, 1984 the matter went to trial, and after the plaintiffs' case and the denial of motions for direct verdict the litigation settled for net payments to the class members of 100% to 300% or more of direct monetary damages, depending on their zone's distance from the streets that

exploded.  Claimants lined up near the claims office for blocks to file claims.  Mr. Davidoff was lead counsel and lead trial counsel.  (No. CV 81-0080, W.D. Ky.).

## Insurance Fraud

When insurance companies and affiliated financial services entities engage in fraudulent, deceptive or unfair practices, Berger Montague helps injured parties recover their losses.  We focus on fraudulent, deceptive and unfair business practices across all lines of insurance and financial products and services sold by insurers and their affiliates, which include annuities, securities and other investment vehicles.

- ▪ ***Spencer v. Hartford Financial Services Group, Inc.:***  The firm, together with co-counsel, prosecuted this national class action against The Hartford Financial Services Group, Inc. and its affiliates in the United States District Court for the District of Connecticut (*Spencer v. Hartford Financial Services Group, Inc.*, Case No. 05-cv-1681) on behalf of approximately 22,000 claimants, each of whom entered into structured settlements with Hartford property and casualty insurers to settle personal injury and workers' compensation claims.  To fund these structured settlements, the Hartford property and casualty insurers purchased annuities from their affiliate, Hartford Life.  By purchasing the annuity from Hartford Life, The Hartford companies allegedly were able to retain up to 15% of the structured amount of the settlement in the form of undisclosed costs, commissions and profit - all of which was concealed from the settling claimants.  On March 10, 2009, the U.S. District Court certified for trial claims on behalf of two national subclasses for civil RICO and fraud (256 F.R.D. 284 (D. Conn. 2009)).  On October 14, 2009, the Second Circuit Court of Appeals denied The Hartford's petition for interlocutory appeal under Federal Rule of Civil Procedure 23(f).On September 21, 2010, the U.S. District Court entered judgment granting final approval of a $72.5 million cash settlement.

- ▪ ***Nationwide Mutual Insurance Company v. O'Dell:***  The firm, together with co-counsel, prosecuted this class action against Nationwide Mutual Insurance Company in West Virginia Circuit Court, Roane County (*Nationwide Mutual Insurance Company v. O'Dell*, Case No. 00-C-37), on behalf of current and former West Virginia automobile insurance policyholders, which arose out of Nationwide's failure, dating back to 1993, to offer policyholders the ability to purchase statutorily-required optional levels of underinsured ("UIM") and uninsured ("UM") motorist coverage in accordance with West Virginia Code 33-6-31.  The court certified a trial class seeking monetary damages, alleging that the failure to offer these optional levels of coverage, and the failure to provide increased first party benefits to personal injury claimants, breached Nationwide's insurance policies and its duty of good faith and fair dealing, and violated the West Virginia Unfair Trade Practices Act.  On June 25, 2009, the court issued final approval of a settlement that provided a minimum estimated value of $75 million to Nationwide auto policyholders and their passengers who were injured in an accident or who suffered property damage.

## Predatory Lending and Borrowers' Rights

Berger Montague's attorneys fight vigorously to protect the rights of borrowers when they are injured by the practices of banks and other financial institutions that lend money or service borrowers' loans. Berger Montague has successfully obtained multi-million dollar class action settlements for nationwide classes of borrowers against banks and financial institutions and works tirelessly to protect the rights of borrowers suffering from these and other deceptive and unfair lending practices.

- ▪ ***Coonan v. Citibank, N.A.***: The firm, as Co-Lead Counsel, prosecuted this national class action against Citibank and its affiliates in the United States District Court for the Northern District of New York concerning alleged kickbacks Citibank received in connection with its force-placed insurance programs. The firm obtained a settlement of $122 million on behalf of a class of hundreds of thousands of borrowers.

- ▪ ***Arnett v. Bank of America, N.A.***: The firm, as Co-Lead Counsel, prosecuted this national class action against Bank of America and its affiliates in the United States District Court for the District of Oregon concerning alleged kickbacks received in connection with its force-placed flood insurance program. The firm obtained a settlement of $31 million on behalf of a class of hundreds of thousands of borrowers.

- ▪ ***Clements v. JPMorgan Chase Bank, N.A.***: The firm, as Co-Lead Counsel, prosecuted this national class action against JPMorgan Chase and its affiliates in the United States District Court for the Northern District of California concerning alleged kickbacks received in connection with its force-placed flood insurance program. The firm obtained a settlement of $22,125,000 on behalf of a class of thousands of borrowers.

- ▪ ***Holmes v. Bank of America, N.A.***: The firm, as Co-Lead Counsel, prosecuted this national class action against Bank of America and its affiliates in the United States District Court for the Western District of North Carolina concerning alleged kickbacks received in connection with its force-placed wind insurance program. The firm obtained a settlement of $5.05 million on behalf of a class of thousands of borrowers.

**Securities & Investor Protection**

In the area of securities litigation, the firm has represented public institutional investors – such as the retirement funds for the States of Pennsylvania, Connecticut, New Hampshire, New Jersey, Louisiana and Ohio, as well as the City of Philadelphia and numerous individual investors and private institutional investors. The firm was co-lead counsel in the *Melridge Securities Litigation* in the Federal District Court in Oregon, in which jury verdicts of $88.2 million and a RICO judgment of $239 million were obtained. Berger Montague has served as lead or co-lead counsel in numerous other major securities class action cases where substantial settlements were achieved on behalf of investors.

- ▪ ***In re Merrill Lynch Securities Litigation:*** Berger Montague, as co-lead counsel, obtained a recovery of $475 million for the benefit of the class in one of the largest recoveries among the recent financial crisis cases. (No. 07-cv-09633 (S.D.N.Y.)).

21

- ▪ ***In re Sotheby's Holding, Inc. Securities Litigation***: The firm, as lead counsel, obtained a $70 million settlement, of which $30 million was contributed, personally, by an individual defendant. (No. 00-cv-1041 (DLC) (S.D.N.Y.)).

- ▪ ***In re: Oppenheimer Rochester Funds Group Securities Litigation:*** The firm, as co-lead counsel, obtained a $89.5 million settlement on behalf of investors in six tax-exempt bond mutual funds managed by OppenheimerFunds, Inc. (No. 09-md-02063-JLK (D. Col.)).

- ▪ ***In re KLA Tencor Securities Litigation:*** The firm, as a member of Plaintiffs' Counsel's Executive Committee, obtained a cash settlement of $65 million in an action on behalf of investors against KLA-Tencor and certain of its officers and directors. (No. 06-cv-04065 (N.D. Cal.)).

- ▪ ***Ginsburg v. Philadelphia Stock Exchange, Inc., et al.:*** The firm represented certain shareholders of the Philadelphia Stock Exchange in the Delaware Court of Chancery and obtained a settlement valued in excess of $99 million settlement. (C.A. No. 2202-CC (Del. Ch.)).

- ▪ ***In re Sepracor Inc. Securities Litigation:*** The firm, as co-lead counsel, obtained a settlement of $52.5 million for the benefit of bond and stock purchaser classes. (No. 02-cv-12235-MEL (D. Mass.)).

- ▪ ***In re CIGNA Corp. Securities Litigation:*** The firm, as co-lead counsel, obtained a settlement of $93 million for the benefit of the class. (Master File No. 2:02-cv-8088 (E.D. Pa.)).

- ▪ ***In re Fleming Companies, Inc. Securities Litigation:*** The firm, as lead counsel, obtained a class settlement of $94 million for the benefit of the class. (No. 5-03-MD-1530 (TJW) (E.D. Tex.)).

- ▪ ***In re Xcel Energy Inc. Securities, Derivative & "ERISA" Litigation:*** The firm, as co-lead counsel in the ***securities*** actions, obtained a cash settlement of $80 million on behalf of investors against Xcel Energy and certain of its officers and directors. (No. 02-cv-2677 (DSD/FLN) (D. Minn.)).

- ▪ ***In re NetBank, Inc. Securities Litigation:*** The firm served as lead counsel in this certified class action on behalf of the former common shareholders of NetBank, Inc. The $12.5 million settlement, which occurred after class certification proceedings and substantial discovery, is particularly noteworthy because it is one of the few successful securities fraud class actions litigated against a subprime lender and bank in the wake of the financial crisis. (No. 07-cv-2298-TCB (N.D. Ga.)).

- ***Brown v. Kinross Gold U.S.A. Inc.:*** The firm represented lead plaintiffs as co-lead counsel and obtained $29.25 million cash settlement and an additional $6,528,371 in dividends for a gross settlement value of $35,778,371. (No. 02-cv-0605 (D. Nev.)) All class members recovered 100% of their damages <u>after</u> fees and expenses.

- ***In re Campbell Soup Co. Securities Litigation:*** The firm, as co-lead counsel, obtained a settlement of $35 million for the benefit of the class. (No. 00-cv-152 (JEI) (D.N.J.)).

- ***In re Premiere Technologies, Inc. Securities Litigation:*** The firm, as co-lead counsel, obtained a class settlement of over $20 million in combination of cash and common stock. (No.1:98-cv-1804-JOF (N.D. Ga.)).

- ***In re PSINet, Inc., Securities Litigation:*** The firm, as co-lead counsel, obtained a settlement of $17.83 million on behalf of investors. (No. 00-cv-1850-A (E.D. Va.)).

- ***In re Safety-Kleen Corp. Securities Litigation:*** The firm, as co-lead counsel, obtained a class settlement in the amount of $45 million against Safety-Kleen's outside accounting firm and certain of the Company's officers and directors. The final settlement was obtained 2 business days before the trial was to commence. (No. 3:00-cv-736-17 (D.S.C.)).

- ***The City Of Hialeah Employees' Retirement System v. Toll Brothers, Inc.:*** The firm, as co-lead counsel, obtained a class settlement of $25 million against Home Builder Toll Brothers, Inc. (No. 07-cv-1513 (E.D. Pa.)).

- ***In re Rite Aid Corp. Securities Litigation:*** The firm, as co-lead counsel, obtained settlements totaling $334 million against Rite Aid's outside accounting firm and certain of the company's former officers. (No. 99-cv-1349 (E.D. Pa.)).

- ***In re Sunbeam Inc. Securities Litigation:*** As co-lead counsel and designated lead trial counsel (by Mr. Davidoff), the firm obtained a settlement on behalf of investors of $142 million in the action against Sunbeam's outside accounting firm and Sunbeam's officers. (No. 98-cv-8258 (S.D. Fla.)).

- ***In re Waste Management, Inc. Securities Litigation:*** In 1999, the firm, as co-lead counsel, obtained a class settlement for investors of $220 million cash which included a settlement against Waste Management's outside accountants. (No. 97-cv-7709 (N.D. Ill.)).

- ***In re IKON Office Solutions Inc. Securities Litigation:*** The firm, serving as both co-lead and liaison counsel, obtained a cash settlement of $111 million in an action on behalf of investors against IKON and certain of its officers. (MDL Dkt. No. 1318 (E.D. Pa.)).

- ***In re Melridge Securities Litigation:*** The firm served as lead counsel and co-lead trial counsel for a class of purchasers of Melridge common stock and convertible debentures.

A four-month jury trial yielded a verdict in plaintiffs' favor for $88.2 million, and judgment was entered on RICO claims against certain defendants for $239 million. The court approved settlements totaling $57.5 million. (No. 87-cv-1426 FR (D. Ore.)).

▪ ***Aldridge v. A.T. Cross Corp.*:** The firm represented a class of investors in a securities fraud class action against A.T. Cross, and won a significant victory in the U.S. Court of Appeals for the First Circuit when that Court reversed the dismissal of the complaint and lessened the pleading standard for such cases in the First Circuit, holding that it would not require plaintiffs in a shareholder suit to submit proof of financial restatement in order to prove revenue inflation. *See Aldridge v. A.T. Cross Corp.*, 284 F.3d 72 (1st Cir. 2002). The case ultimately settled for $1.5 million. (C.A. No. 00-203 ML (D.R.I.)).

▪ ***Silver v. UICI:*** The firm, as co-lead counsel, obtained a settlement resulting in a fund of $16 million for the class. (No. 3:99-cv-2860-L (N.D. Tex.)).

▪ ***In re Alcatel Alsthom Securities Litigation:*** The firm, as co-lead counsel, obtained a class settlement for investors of $75 million cash. (MDL Docket No. 1263 (PNB) (E.D. Tex.)).

▪ ***Walco Investments, Inc. et al. v. Kenneth Thenen, et al. (Premium Sales):*** The firm, as a member of the plaintiffs' steering committee, obtained settlements of $141 million for investors victimized by a Ponzi scheme. Reported at: 881 F. Supp. 1576 (S.D. Fla. 1995); 168 F.R.D. 315 (S.D. Fla. 1996); 947 F. Supp. 491 (S.D. Fla. 1996)).

▪ ***In re The Drexel Burnham Lambert Group, Inc.:*** The firm was appointed co-counsel for a mandatory non-opt-out class consisting of all claimants who had filed billions of dollars in securities litigation-related proofs of claim against The Drexel Burnham Lambert Group, Inc. and/or its subsidiaries. Settlements in excess of $2.0 billion were approved in August 1991 and became effective upon consummation of Drexel's Plan of Reorganization on April 30, 1992. (No. 90-cv-6954 (MP), Chapter 11, Case No. 90 B 10421 (FGC), Jointly Administered, reported at, *inter alia*, 960 F.2d 285 (2d Cir. 1992), *cert. dismissed*, 506 U.S. 1088 (1993) ("Drexel I") and 995 F.2d 1138 (2d Cir. 1993) ("Drexel II")).

▪ ***In re Michael Milken and Associates Securities Litigation:*** As court-appointed liaison counsel, the firm was one of four lead counsel who structured the $1.3 billion "global" settlement of all claims pending against Michael R. Milken, over 200 present and former officers and directors of Drexel Burnham Lambert, and more than 350 Drexel/Milken-related entities. (MDL Dkt. No. 924, M21-62-MP (S.D.N.Y.)).

▪ ***RJR Nabisco Securities Litigation:*** The firm represented individuals who sold RJR Nabisco securities prior to the announcement of a corporate change of control. This securities case settled for $72 million. (No. 88-cv-7905 MBM (S.D.N.Y.)).

24

- ▪ ***Qwest Securities Action:*** The firm represented New Jersey in an opt-out case against Qwest and certain officers, which was settled for $45 million. (C.A. No. L-3838-02 (Superior Court New Jersey, Law Division)).

**Whistleblower, *Qui Tam*, and False Claims Act**

Berger Montague has represented whistleblowers in matters involving healthcare fraud, defense contracting fraud, IRS fraud, securities fraud, and commodities fraud, helping to return more than $1.1 billion to federal and state governments. In return, whistleblower clients retaining Berger Montague to represent them in state and federal courts have received more than $100 million in rewards. Berger Montague's time-tested approach in Whistleblower/Qui Tam representation involves cultivating close, productive attorney-client relationships with the maximum degree of confidentiality for our clients.

**Judicial Praise for Berger Montague Attorneys**

Berger Montague's record of successful prosecution of class actions and other complex litigation has been recognized and commended by judges and arbitrators across the country. Some remarks on the skill, efficiency, and expertise of the firm's attorneys are excerpted below.

**Antitrust**

From **Judge Michael M. Baylson**, of the U.S. District Court of the Eastern District of Pennsylvania:

> "[C]ounsel…for direct action plaintiffs have done an outstanding job here with representing the class, and I thought your briefing was always very on point. I thought the presentation of the very contentious issues on the class action motion was very well done, it was very well briefed, it was well argued."

Transcript of the June 28, 2018 Hearing in *In re Domestic Drywall Antitrust Litigation*, No. MD-13-2437 at 11:6-11.

From **Judge Madeline Cox Arleo,** of the U.S. District Court for the District of New Jersey praising the efforts of all counsel:

> "I just want to thank you for an outstanding presentation. I don't say that lightly . . . it's not lost on me at all when lawyers come very, very prepared. And really, your clients should be very proud to have such fine lawyering. I don't see lawyering like this every day in the federal courts, and I am very grateful. And I appreciate the time and the effort you put in, not only to the merits, but the respect you've shown for each other, the respect you've shown for the Court, the staff, and the time constraints. And as I tell my law clerks all the time, good lawyers don't fight, good lawyers advocate. And I really appreciate that more than I can express."

Transcript of the September 9 to 11, 2015 Daubert Hearing in *Castro v. Sanofi Pasteur*, No. 11-cv-07178 (D.N.J.) at 658:14-659:4.

From **Judge William H. Pauley, III**, of the U.S. District Court of the Southern District of New York:

> "Class Counsel did their work on their own with enormous attention to detail and unflagging devotion to the cause. Many of the issues in this litigation . . . were unique and issues of first impression."

*   *   *

"Class Counsel provided extraordinarily high-quality representation.  This case raised a number of unique and complex legal issues ….  The law firms of Berger Montague and Coughlin Stoia were indefatigable.  They represented the Class with a high degree of professionalism, and vigorously litigated every issue against some of the ablest lawyers in the antitrust defense bar."

*In re Currency Conversion Fee Antitrust Litigation*, 263 F.R.D. 110, 129 (2009).

From **Judge Faith S. Hochberg,** of the United States District court for the District of New Jersey:

"[W]e sitting here don't always get to see such fine lawyering, and it's really wonderful for me both to have tough issues and smart lawyers … I want to congratulate all of you for the really hard work you put into this, the way you presented the issues, … On behalf of the entire federal judiciary I want to thank you for the kind of lawyering we wish everybody would do."

*In re Remeron Antitrust Litig.*, Civ. No. 02-2007 (Nov. 2, 2005).

From U.S. District **Judge Jan DuBois**, of the U.S. District Court of the Eastern District of Pennsylvania:

"[T]he size of the settlements in absolute terms and expressed as a percentage of total damages evidence a high level of skill by petitioners … The Court has repeatedly stated that the lawyering in the case at every stage was superb, and does so again."

*In Re Linerboard Antitrust Litig.*, 2004 WL 1221350, at *5-*6 (E.D. Pa. 2004).

From **Judge Nancy G. Edmunds**, of the U.S. District Court of the Eastern District of Michigan:

"[T]his represents an excellent settlement for the Class and reflects the outstanding effort on the part of highly experienced, skilled, and hard working Class Counsel….[T]heir efforts were not only successful, but were highly organized and efficient in addressing numerous complex issues raised in this litigation[.]"

*In re Cardizem CD Antitrust Litig.*, MDL No. 1278 (E.D. Mich., Nov. 26, 2002).

From **Judge Charles P. Kocoras,** of the U.S. District Court for the Northern District of Illinois:

> "The stakes were high here, with the result that most matters of consequence were contested. There were numerous trips to the courthouse, and the path to the trial court and the Court of Appeals frequently traveled. The efforts of counsel for the class has [sic] produced a substantial recovery, and it is represented that the cash settlement alone is the second largest in the history of class action litigation. . . . There is no question that the results achieved by class counsel were extraordinary [.]"

Regarding the work of Berger Montague in achieving more than $700 million in settlements with some of the defendants in *In Re Brand Name Prescription Drugs Antitrust Litigation*, 2000 U.S. Dist. LEXIS 1734, at *3-*6 (N.D. Ill. Feb. 9, 2000).

From **Judge Peter J. Messitte,** of the U.S. District Court for the District of Maryland:

> "The experience and ability of the attorneys I have mentioned earlier, in my view in reviewing the documents, which I have no reason to doubt, the plaintiffs' counsel are at the top of the profession in this regard and certainly have used their expertise to craft an extremely favorable settlement for their clients, and to that extent they deserve to be rewarded."

Settlement Approval Hearing, Oct. 28, 1994, in *Spawd, Inc. and General Generics v. Bolar Pharmaceutical Co., Inc.*, CA No. PJM-92-3624 (D. Md.).

From **Judge Donald W. Van Artsdalen,** of the U.S. District Court for the Eastern District of Pennsylvania:

> "As to the quality of the work performed, although that would normally be reflected in the not immodest hourly rates of all attorneys, for which one would expect to obtain excellent quality work at all times, the results of the settlements speak for themselves. Despite the extreme uncertainties of trial, plaintiffs' counsel were able to negotiate a cash settlement of a not insubstantial sum, and in addition, by way of equitable relief, substantial concessions by the defendants which, subject to various condition, will afford the right, at least, to lessee-dealers to obtain gasoline supply product from major oil companies and suppliers other than from their respective lessors. The additional benefits obtained for the classes by way of equitable relief would, in and of itself, justify some upward adjustment of the lodestar figure."

*Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 31 (E.D. Pa. 1985).

From **Judge Krupansky**, who had been elevated to the Sixth Circuit Court of Appeals:

> Finally, the court unhesitatingly concludes that the quality of the representation rendered by counsel was uniformly high. The attorneys involved in this litigation are extremely experienced and skilled in their prosecution of antitrust litigation and other complex actions. Their services have been rendered in an efficient and expeditious manner, but have nevertheless been productive of highly favorable result.

*In re Art Materials Antitrust Litigation*, 1984 CCH Trade Cases ¶65,815 (N.D. Ohio 1983).


From **Judge Joseph Blumenfeld,** of the U.S. District Court for the District of Connecticut:

> "The work of the Berger firm showed a high degree of efficiency and imagination, particularly in the maintenance and management of the national class actions."

*In re Master Key Antitrust Litigation*, 1977 U.S. Dist. LEXIS 12948, at *35 (Nov. 4, 1977).

**Securities & Investor Protection**

From **Judge Jed Rakoff** of the U.S. District Court for the Southern District of New York:

> Court stated that lead counsel had made "very full and well-crafted" and "excellent submissions"; that there was a "very fine job done by plaintiffs' counsel in this case"; and that this was "surely a very good result under all the facts and circumstances."

*In re Merrill Lynch & Co., Inc. Securities, Derivative & ERISA Litigation*, Master File No. 07-cv-9633(JSR)(DFE) (S.D.N.Y., July 27, 2009).


From **Judge Michael M. Baylson** of the U.S. District Court for the Eastern District of Pennsylvania:

> "The Court is aware of and attests to the skill and efficiency of class counsel: they have been diligent in every respect, and their briefs and arguments before the Court were of the highest quality. The firm of Berger Montague took the lead in the Court proceedings; its attorneys were well prepared, articulate and persuasive."

*In re CIGNA Corp. Sec. Litig.*, 2007 U.S. Dist. LEXIS 51089, at *17-*18 (E.D. Pa. July 13, 2007).


From **Judge Stewart Dalzell** of the U.S. District Court for the Eastern District of Pennsylvania:

"The quality of lawyering on both sides, but I am going to stress now on the plaintiffs' side, simply  has not been exceeded in any case, and we have had some marvelous counsel appear before us and make superb arguments, but they really don't come any better than Mrs. Savett… [A]nd the arguments we had on the motion to dismiss [Mrs. Savett argued the motion], both sides were fabulous, but plaintiffs' counsel were as good as they come."

*In re U.S. Bioscience Secs. Litig.*, No. 92-0678 (E.D. Pa. April 4, 1994).

From **Judge Wayne Andersen** of the U.S. District Court for the Northern District of Illinois:

"[Y]ou have acted the way lawyers at their best ought to act. And I have had a lot of cases…in 15 years now as a judge and I cannot recall a significant case where I felt people were better represented than they are here…I would say this has been the best representation that I have seen."

*In re: Waste Management, Inc. Secs. Litig.*, No. 97-C 7709 (N.D. Ill. 1999).

From **Chancellor William Chandler, III** of the Delaware Chancery Court:

"All I can tell you, from someone who has only been doing this for roughly 22 years, is that I have yet to see a more fiercely and intensely litigated case than this case.  Never in 22 years have I seen counsel going at it, hammer and tong, like they have gone at it in this case.  And I think that's a testimony – Mr. Valihura correctly says that's what they are supposed to do.  I recognize that; that is their job, and they were doing it professionally."

*Ginsburg v. Philadelphia Stock Exchange, Inc.*, No. 2202 (Del. Ch., Oct. 22, 2007).

From **Judge Stewart Dalzell** of the U.S. District Court for the Eastern District of Pennsylvania:

"Thanks to the nimble class counsel, this sum, which once included securities worth $149.5 million is now all cash.  Seizing on an opportunity Rite Aid presented, class counsel first renegotiated what had been stock consideration into Rite Aid Notes and then this year monetized those Notes.  Thus, on February 11, 2003, Rite Aid redeemed those Notes from the class, which then received $145,754,922.00.   The class also received $14,435,104 in interest on the Notes."

"Co-lead counsel ... here were extraordinarily deft and efficient in handling this most complex matter... they were at least eighteen months ahead of the United States Department of Justice in ferreting out the conduct that ultimately resulted in the write down of over $1.6 billion in previously reported Rite Aid earnings.  In short, it would be hard to equal the skill class counsel demonstrated here."

30

*In re Rite Aid Corp. Securities Litigation*, 269 F. Supp. 2d 603, 605, n.1, 611 (E.D. Pa. 2003).

From **Judge Helen J. Frye**, United States District Judge for the U.S. District Court for the District of Oregon:

> "In order to bring about this result [partial settlements then totaling $54.25 million], Class Counsel were required to devote an unusual amount of time and effort over more than eight years of intense legal litigation which included a four-month long jury trial and full briefing and argument of an appeal before the Ninth Circuit Court of Appeals, and which produced one of the most voluminous case files in the history of this District."

> \* \* \*

> "Throughout the course of their representation, the attorneys at Berger Montague and Stoll, Stoll, Berne, Lokting & Shlachter who have worked on this case have exhibited an unusual degree of skill and diligence, and have had to contend with opposing counsel who also displayed unusual skill and diligence."

*In Re Melridge, Inc. Securities Litigation*, No. CV 87-1426-FR (D. Ore. April 15, 1996).

From **Judge Marvin Katz** of the U.S. District Court for the Eastern District of Pennsylvania:

> "[T]he co-lead attorneys have extensive experience in large class actions, experience that has enabled this case to proceed efficiently and professionally even under short deadlines and the pressure of handling thousands of documents in a large multi-district action... These counsel have also acted vigorously in their clients' interests...."

> \* \* \*

> "The management of the case was also of extremely high quality....  [C]lass counsel is of high caliber and has extensive experience in similar class action litigation....  The submissions were of consistently high quality, and class counsel has been notably diligent in preparing filings in a timely manner even when under tight deadlines."

Commenting on class counsel, where the firm served as both co-lead and liaison counsel in *In re Ikon Office Solutions, Inc. Securities Litigation*, 194 F.R.D. 166, 177, 195 (E.D. Pa. 2000).

From **Judge William K. Thomas,** Senior District Judge for the United States District Court for the Northern District of Ohio:

"In the proceedings it has presided over, this court has become directly familiar with the specialized, highly competent, and effective quality of the legal services performed by Merrill G. Davidoff, Esq. and Martin I. Twersky, Esq. of Berger Montague...."

\* \* \*

"Examination of the experience-studded biographies of the attorneys primarily involved in this litigation and review of their pioneering prosecution of many class actions in antitrust, securities, toxic tort matters and some defense representation in antitrust and other litigation, this court has no difficulty in approving and adopting the hourly rates fixed by Judge Aldrich."

Commenting in *In re Revco Securities Litigation*, Case No. 1:89CV0593, Order (N.D. Oh. September 14, 1993).

## Civil/Human Rights Cases

From **Deputy Treasury Secretary Stuart E. Eizenstat**:

"We must be frank. It was the American lawyers, through the lawsuits they brought in U.S. courts, who placed the long-forgotten wrongs by German companies during the Nazi era on the international agenda. It was their research and their work which highlighted these old injustices and forced us to confront them. Without question, we would not be here without them.... For this dedication and commitment to the victims, we should always be grateful to these lawyers."

In his remarks at the July 17, 2000, signing ceremony for the international agreements which established the German Foundation to act as a funding vehicle for the payment of claims to Holocaust survivors.

## Insurance Litigation

From **Judge Janet C. Hall**, of the U.S. District Court of the District of Connecticut:

Noting the "very significant risk in pursuing this action" given its uniqueness in that "there was no prior investigation to rely on in establishing the facts or a legal basis for the case....[and] no other prior or even now similar case involving parties like these plaintiffs and a party like these defendants." Further, "the quality of the representation provided to the plaintiffs ... in this case has been consistently excellent.... [T]he defendant[s] ... mounted throughout the course of the five years the case pended, an extremely vigorous defense.... [B]ut for counsel's outstanding work in this case and substantial effort over five years, no member of the class would have recovered a penny.... [I]t was an extremely complex and substantial class ... case ... [with an] outstanding result."

Regarding the work of Berger Montague attorneys Peter R. Kahana and Steven L. Bloch, among other co-class counsel, in *Spencer, et al. v. The Hartford Financial Services Group, Inc., et al.,* in the Order approving the $72.5 million final settlement of this action, dated September 21, 2010 (No. 3:05-cv-1681, D. Conn.).

**Customer/Broker Arbitrations**

From **Robert E. Conner**, Public Arbitrator with the National Association of Securities Dealers, Inc.:

> "[H]aving participated over the last 17 years in 400 arbitrations and trials in various settings, ... the professionalism and the detail and generally the civility of everyone involved has been not just a cause for commentary at the end of these proceedings but between ourselves [the arbitration panel] during the course of them, and ... the detail and the intellectual rigor that went into the documents was fully reflective of the effort that was made in general. I wanted to make that known to everyone and to express my particular respect and admiration."

About the efforts of Berger Montague shareholders Merrill G. Davidoff and Eric L. Cramer, who achieved a $1.1 million award for their client, in ***Steinman v. LMP Hedge Fund, et al.***, NASD Case No. 98-04152, at Closing Argument, June 13, 2000.

**Other**

From **Stephen M. Feiler, Ph.D.,** Director of Judicial Education, Supreme Court of Pennsylvania, Administrative Office of Pennsylvania Courts, Mechanicsburg, PA *on behalf of the Common Pleas Court Judges (trial judges) of Pennsylvania*:

> "On behalf of the Supreme Court of Pennsylvania and AOPC's Judicial Education Department, thank you for your extraordinary commitment to the *Dealing with Complexities in Civil Litigation* symposia. We appreciate the considerable time you spent preparing and delivering this important course across the state. It is no surprise to me that the judges rated this among the best programs they have attended in recent years."

About the efforts of Berger Montague attorneys Merrill G. Davidoff, Peter Nordberg and David F. Sorensen in planning and presenting a CLE Program to trial judges in the Commonwealth of Pennsylvania.

**Founding Partner**

**David Berger -** *1912-2007*
David Berger was the founder and the Chairman of Berger Montague.  He received his A.B. *cum laude* in 1932 and his LL.B. *cum laude* in 1936, both from the University of Pennsylvania.  He was a member of The Order of the Coif and was an editor of the *University of Pennsylvania Law Review*.  He had a distinguished scholastic career including being Assistant to Professor Francis H. Bohlen and Dr. William Draper Lewis, Director of the American Law Institute, participating in the drafting of the first Restatement of Torts.  He also served as a Special Assistant Dean of the University of Pennsylvania Law School.  He was a member of the Board of Overseers of the Law School and Associate Trustee of the University of Pennsylvania.   In honor of his many contributions, the Law School established the David Berger Chair of Law for the Improvement of the Administration of Justice.

David Berger was a law clerk for the Pennsylvania Supreme Court.  He served as a deputy assistant to Director of Enemy Alien Identification Program of the United States Justice Department during World War II.

Thereafter he was appointed Lt.j.g. in the U.S. Naval Reserve and he served in the South Pacific aboard three aircraft carriers during World War II.  He was a survivor of the sinking of the U.S.S. Hornet in the Battle of Santa Cruz, October 26, 1942.  After the sinking of the Hornet, Admiral Halsey appointed him a member of his personal staff when the Admiral became Commander of the South Pacific. Mr. Berger was ultimately promoted to Commander.  He was awarded the Silver Star and Presidential Unit Citation.

After World War II, he was a law clerk in the United States Court of Appeals.  The United States Supreme Court appointed David Berger a member of the committee to draft the Federal Rules of Evidence, the basic evidentiary rules employed in federal courts throughout the United States. David Berger was a fellow of the American College of Trial Lawyers, the International Society of Barristers, and the International Academy of Trial Lawyers, of which he was a former Dean.  He was a Life Member of the Judicial Conference of the Third Circuit and the American Law Institute.

A former Chancellor (President) of the Philadelphia Bar Association, he served on numerous committees of the American Bar Association and was a lecturer and author on various legal subjects, particularly in the areas of antitrust, securities litigation, and evidence.

David Berger served as a member of President John F. Kennedy's committee which designed high speed rail lines between Washington and Boston.  He drafted and activated legislation in the Congress of the United States which resulted in the use of federal funds to assure the continuance of freight and passenger lines throughout the United States.   When the merger of the Pennsylvania Railroad and the New York Central Railroad, which created the Penn Central Transportation Company, crashed into Chapter 11, David Berger was counsel for Penn Central and a proponent of its reorganization.  Through this work, Mr. Berger ensured the survival of the

34

major railroads in the Northeastern section of the United States including Penn Central, New Jersey Central, and others.

Mr. Berger's private practice included clients in London, Paris, Dusseldorf, as well as in Philadelphia, Washington, New York City, Florida, and other parts of the United States. David Berger instituted the first class action in the antitrust field, and for over 30 years he and the Berger firm were lead counsel and/or co-lead counsel in countless class actions brought to successful conclusions, including antitrust, securities, toxic tort and other cases. He served as one of the chief counsel in the litigation surrounding the demise of Drexel Burnham Lambert, in which over $2.6 billion was recovered for various violations of the securities laws during the 1980s. The recoveries benefitted such federal entities as the FDIC and RTC, as well as thousands of victimized investors.

In addition, Mr. Berger was principal counsel in a case regarding the Three Mile Island accident near Harrisburg, Pennsylvania, achieving the first legal recovery of millions of dollars for economic harm caused by the nation's most serious nuclear accident. As part of the award in the case, David Berger established a committee of internationally renowned scientists to determine the effects on human beings of emissions of low level radiation.

In addition, as lead counsel in *In re Asbestos School Litigation*, he brought about settlement of this long and vigorously fought action spanning over 13 years for an amount in excess of $200 million.

David Berger was active in Democratic politics. President Clinton appointed David Berger a member of the United States Holocaust Memorial Council, in which capacity he served from 1994-2004. In addition to his having served for seven years as the chief legal officer of Philadelphia, he was a candidate for District Attorney of Philadelphia, and was a Carter delegate in the Convention which nominated President Carter.

Over his lengthy career David Berger was prominent in a great many philanthropic and charitable enterprises some of which are as follows: He was the Chairman of the David Berger Foundation and a long time honorary member of the National Commission of the Anti-Defamation League. He was on the Board of the Jewish Federation of Philadelphia and, at his last place of residence, Palm Beach, as Honorary Chairman of the American Heart Association, Trustee of the American Cancer Society, a member of the Board of Directors of the American Red Cross, and active in the Jewish Federation of Palm Beach County.

David Berger's principal hobby was tennis, a sport in which he competed for over 60 years. He was a member of the Board of Directors of the International Tennis Hall of Fame and other related organizations for assisting young people in tennis on a world-wide basis.

**Firm Chair**

**Eric L. Cramer – Chairman**
Mr. Cramer is Firm Chairman and Co-Chair of the Firm's antitrust department. He has a national practice in the field of complex litigation, primarily in the area of antitrust class actions. He is currently co-lead counsel in multiple significant antitrust class actions across the country in a variety of industries and is responsible for winning numerous significant settlements for his clients totaling well over $2 billion. Most recently, he has focused on representing workers claiming that anticompetitive practices have suppressed their pay, including cases on behalf of mixed-martial-arts fighters and chicken growers.

In 2018, he was named Philadelphia antitrust "Lawyer of the Year" by *Best Lawyers*, and in 2017, he won the American Antitrust Institute's Antitrust Enforcement Award for Outstanding Antitrust Litigation Achievement in Private Law Practice for his work in *Castro v. Sanofi Pasteur Inc.*, No. 11-cv-07178 (D.N.J.). He has also identified as a top tier antitrust lawyer by *Chambers & Partners* in Pennsylvania and nationally. *Chambers* observed that Mr. Cramer is "really a tremendous advocate in the courtroom, with a very good mind and presence." He has been highlighted annually since 2011 by *The Legal 500* as one of the country's top lawyers in the field of complex antitrust litigation, and repeatedly deemed one of the "Best Lawyers in America," including in 2018. In 2014 and 2018, Mr. Cramer was selected by *Philadelphia Magazine* as one of the top 100 lawyers in Philadelphia.

Mr. Cramer is also a frequent speaker at antitrust and litigation related conferences. He was the only Plaintiffs' lawyer selected to serve on the American Bar Association's Antitrust Section Transition Report Task Force delivered to the incoming Obama Administration in 2012. He is a Senior Fellow and Vice President of the Board of Directors of the American Antitrust Institute; a past President of COSAL (Committee to Support the Antitrust Laws), a leading industry group; a member of the Advisory Board of the Institute of Consumer Antitrust Studies of the Loyola University Chicago School of Law; and a member of the Board of Directors of Public Justice, a national public interest law firm.

He has written widely in the fields of class certification and antitrust law. Among other writings, Mr. Cramer has co-authored *Antitrust, Class Certification, and the Politics of Procedure*, 17 George Mason Law Review 4 (2010), which was cited by both the First Circuit in *In re Nexium Antitrust Litig.*, 777 F.3d 9, 27 (1st Cir. 2015), *quoting* Davis & Cramer, 17 Geo. Mason L. Rev. 969, 984-85 (2010), and the Third Circuit in *Behrend v. Comcast Corp.*, 655 F.3d 182, 200, n.10 (3d Cir. 2011), *rev'd on other grounds*, 133 S. Ct. 1426 (2013). He has also co-written a number of other pieces, including: *Of Vulnerable Monopolists?: Questionable Innovation in the Standard for Class Certification in Antitrust Cases*, 41 Rutgers Law Journal 355 (2009-2010); *A Questionable New Standard for Class Certification in Antitrust Cases*, published in the ABA's Antitrust Magazine, Vol. 26, No. 1 (Fall 2011); a Chapter of American Antitrust Institute's Private International Enforcement Handbook (2010), entitled "*Who May Pursue a Private Claim*?"; and, a chapter of the American Bar Association's Pharmaceutical Industry Handbook (July 2009), entitled "Assessing Market Power in the Prescription Pharmaceutical Industry."

Mr. Cramer is a *summa cum laude* graduate of Princeton University (1989), where he was elected to *Phi Beta Kappa*. He graduated *cum laude* from Harvard Law School with a J.D. in 1993.

## Managing Shareholders

### Sherrie R. Savett – Chair *Emeritus* & Managing Shareholder
Sherrie R. Savett, Chair *Emeritus* of the Firm, Chair of the Securities Litigation Department and *Qui Tam*/False Claims Act Department, and member of the Firm's Management Committee, has practiced in the areas of securities litigation and class actions since 1975.

Ms. Savett serves or has served as lead or co-lead counsel or as a member of the executive committee in a large number of important securities and consumer class actions in federal and state courts across the country, including:

- *In re Alcatel Alsthom Securities Litigation*: The Firm, as co-lead counsel, obtained a class settlement for investors of $75 million cash. (MDL Docket No. 1263 (PNB) (E.D. Tex.));
- *In re CIGNA Corp. Securities Litigation*: The Firm, as co-lead counsel, obtained a settlement of $93 million for the benefit of the class. (Master File No. 2:02-cv-8088 (E.D. Pa.));
- *In re Fleming Companies, Inc. Securities Litigation*: The Firm, as lead counsel, obtained a class settlement of $94 million for the benefit of the class. (No. 5-03-MD-1530 (TJW) (E.D. Tex.));
- *In re KLA Tencor Securities Litigation*: The Firm, as a member of Plaintiffs' Counsel's Executive Committee, obtained a cash settlement of $65 million in an action on behalf of investors against KLA-Tencor and certain of its officers and directors. (No. 06-cv-04065 (N.D. Cal.));
- *Medaphis/Deloitte & Touche* (class settlement of $96.5 million) (No. 1:96-CV-2088-FMH (N.D. GA));
- *In re Rite Aid Corp. Securities Litigation*: The Firm, as co-lead counsel, obtained settlements totaling $334 million against Rite Aid's outside accounting firm and certain of the company's former officers. (No. 99-cv-1349) (E.D. Pa.));
- *In re Sotheby's Holding, Inc. Securities Litigation:* The Firm, as lead counsel, obtained a $70 million settlement, of which $30 million was contributed, personally, by an individual defendant (No. 00-cv-1041 (DLC) (S.D.N.Y.));
- *In re Waste Management, Inc. Securities Litigation:* In 1999, the Firm, as co-lead counsel, obtained a class settlement for investors of $220 million cash, which included a settlement against Waste Management's outside accountants. (No. 97-cv-7709 (N.D. Ill.)); and
- *In re Xcel Inc. Securities, Derivative & "ERISA" Litigation*: The Firm, as co-lead counsel in the securities actions, obtained a cash settlement of $80 million on behalf of investors against Xcel Energy and certain of its officers and directors. (No. 02-cv-2677 (DSD/FLN) (D. Minn.)).

Ms. Savett has helped establish several significant precedents. Among them is the holding (the first ever in a federal appellate court) that municipalities are subject to the anti-fraud provisions of SEC Rule 10b-5 under § 10(b) of the Securities Exchange Act of 1934, and that municipalities that issue bonds are not acting as an arm of the state and therefore are not entitled to immunity from suit in the federal courts under the Eleventh Amendment. *Sonnenfeld v. City and County of Denver*, 100 F.3d 744 (10th Cir. 1996).

In the *U.S. Bioscience* securities class action, a biotechnology case where critical discovery was needed from the federal Food and Drug Administration, the court ruled that the FDA may not automatically assert its administrative privilege to block a subpoena and may be subject to discovery depending on the facts of the case. *In re U.S. Bioscience Secur. Litig.*, 150 F.R.D. 80 (E.D. Pa. 1993).

In the *CIGNA Corp. Securities Litigation*, the Court denied defendants' motion for summary judgment, holding that a plaintiff has a right to recover for losses on shares held at the time of a corrective disclosure and his gains on a stock should not offset his losses in determining legally recoverable damages. *In re CIGNA Corp. Securities Litigation*, 459 F. Supp. 2d 338 (E.D. Pa. 2006).

Additionally, Ms. Savett has become increasingly well-known in the area of consumer litigation, achieving a groundbreaking $24 million settlement in 2008 in the *Menu Foods* case brought by pet owners against manufacturers of allegedly contaminated pet food. *(In re Pet Food Products Liability Litigation*, MDL Docket No. 1850 (D.N.J. 2007). In the data breach area, she was co-lead counsel in *In re TJX Retail Securities Breach Litigation*, MDL Docket No. 1838 (D.Mass), the first very large data breach case where hackers stole personal information from 45 million consumers. The settlement, which became the template for future data breach cases, consisted of providing identity theft insurance to those whose social security or driver's license numbers were stolen, a cash fund for actual damages and time spent mitigating the situation, and injunctive relief.

In the past decade, she has also actively worked in the False Claims Act arena. She was part of the team that litigated over more than a decade and settled the Average Wholesale Price *qui tam* cases, which collectively settled for more than $1 billion.

Ms. Savett speaks and writes frequently on securities litigation, consumer class actions and False Claims Act litigation. She has lectured at the University of Pennsylvania Law School, the Wharton School of the University of Pennsylvania and at the Stanford Law School on prosecuting shareholder class actions and on False Claims Act Litigation. She is frequently invited to present and serve as a panelist in American Bar Association, American Law Institute/American Bar Association and Practicing Law Institute (PLI) conferences on securities class action litigation and the use of class actions in consumer litigation. She has been a presenter and panelist at PLI's Securities Litigation and Enforcement Institute annually from 1995 to 2010. She has also spoken at major institutional investor and insurance industry conferences, and DRI – the Voice of the Defense Bar. In February 2009, she was a member of a six-person panel who presented an analysis of the current state of securities litigation before more than 1,000 underwriters and

insurance executives at the PLUS (Professional Liability Underwriting Society) Conference in New York City. She has presented at the Cyber-Risk Conference in 2009, as well as the PLUS Conference in Chicago on November 16, 2009 on the subject of litigation involving security breaches and theft of personal information.

Most recently, in April 2019, she spoke as a panelist at PLI's Securities Litigation 2019: From Investigation to Trial program. Her panel was titled "Commencement of a Civil Action: Filing the Complaint, Preparing the Motion to Dismiss, Coordinating Multiple Securities Litigation Actions." Ms. Savett also co-authored an article for the program that was published in PLI's *Corporate Law and Practice Court Handbook Series*. The article is titled "After the Fall—A Plaintiff's Perspective."

In 2015 and 2016, she served as a panelist in American Law Institute programs held in New York City called "Securities and Shareholder Litigation: Cutting-Edge Developments, Planning and Strategy." Ms. Savett also spoke at the 2013 ABA Litigation Section Annual Conference in Chicago on two panels. One program on securities litigation was entitled "The Good, The Bad, and The Ugly: Ethical Issues in Class Action Settlements and Opt Outs." The other program focused on consumer class actions in the real estate area and was entitled "The Foreclosure Crisis Puzzle: Navigating the Changing Landscape of Foreclosure."

In May 2007, Ms. Savett spoke in Rome, Italy at the conference presented by the Litigation Committee of the Dispute Resolution Section of the International Bar Association and the Section of International Law of the American Bar Association on class certification. Ms. Savett participated in a mock hearing before a United States Court on whether to certify a worldwide class action that includes large numbers of European class members.

Ms. Savett has written numerous articles on securities and complex litigation issues in professional publications, including:

- "After the Fall – A Plaintiff's Perspective," with Phyllis M. Parker, *PLI Corporate Law and Practice Course Handbook Series No. B-2475*, pg. 73-105, April 2019
- "Plaintiffs' Vision of Securities Litigation: Current Trends and Strategies," 1762 *PLL* October 2009
- "Primary Liability of 'Secondary' Actors Under the PSLRA," I *Securities Litigation Report*, (Glasser) November 2004
- "Securities Class Actions Since the 1995 Reform Act: A Plaintiffs Perspective," 1442 *PLI! Corp.13*, September – October 2004
- "Securities Class Actions Since the 1995 Reform Act: A Plaintiffs Perspective," SJ084 ALI-ABA 399, May 13-14, 2004
- "The 'Indispensable Tool' of Shareholder Suits," *Directors & Boards*, Vol. 28, February 18, 2004
- "Plaintiffs Perspective on How to Obtain Class Certification in Federal Court in a Non-Federal Question Case," 679 *PLI*, August 2002

- "Hurdles in Securities Class Actions: The Impact of Sarbanes-Oxley From a Plaintiffs Perspective," 9 *Securities Litigation and Regulation Reporter* (Andrews), December 23, 2003
- "Securities Class Actions Since the 1995 Reform Act: A Plaintiffs Perspective," SG091 ALI-ABA, May 2-3, 2002
- "Securities Class Actions Since the 1995 Reform Act: A Plaintiffs Perspective," SF86 ALI-ABA 1023, May 10, 2001
- "Greetings From the Plaintiffs' Class Action Bar: We'll be Watching," SE082 ALI-ABA739, May 11, 2000
- "Preventing Financial Fraud," B0-00E3 *PLJB0-00E3* April – May 1999
- "Shareholders Class Actions in the Post Reform Act Era," SD79 ALI-ABA 893, April 30, 1999
- "What to Plead and How to Plead the Defendant's State of Mind in a Federal Securities Class Action," with Arthur Stock, *PLI*, ALI/ABA 7239, November 1998
- "The Merits Matter Most: Observations on a Changing Landscape Under the Private Securities Litigation Reform Act of 1995," 39 *Arizona Law Review* 525, 1997
- "Everything David Needs to Know to Battle Goliath," ABA Tort & Insurance Practice Section, The Brief, Vol. 20, No.3, Spring 1991
- "The Derivative Action: An Important Shareholder Vehicle for Insuring Corporate Accountability in Jeopardy," *PLIH4-0528*, September 1, 1987
- "Prosecution of Derivative Actions: A Plaintiffs Perspective," *PLIH4-5003*, September 1, 1986

Ms. Savett is widely recognized as a leading litigator and a top female leader in the profession by local and national legal rating organizations.

In 2019, *The Legal Intelligencer* named Ms. Savett a "Distinguished Leader," and in 2018 she was named to the *Philadelphia Business Journal*'s 2018 Best of the Bar: Philadelphia's Top Lawyers.

*The Legal Intelligencer* and *Pennsylvania Law Weekly* named her one of the "56 Women Leaders in the Profession" in 2004.

In 2003-2005, 2007-2013, and 2015-2016, Berger Montague was named to the *National Law Journal's* "Hot List" of 12-20 law firms nationally "who specialize in plaintiffs' side litigation and have excelled in their achievements." The Firm is on the *National Law Journal's* "Hall of Fame," and Ms. Savett's achievements were mentioned in many of these awards.

Ms. Savett was named a "Pennsylvania Top 50 Female Super Lawyer" and/or a "Pennsylvania Super Lawyer" from 2004 through 2018 by *Philadelphia Magazine* after an extensive nomination and polling process among Pennsylvania lawyers.

In 2006 and 2007, she was named one of the "500 Leading Litigators" and "500 Leading Plaintiffs' Litigators" in the United States by *Lawdragon*. In 2008, Ms. Savett was named as one of the "500

Leading Lawyers in America." Also in 2008, she was named one of 25 "Women of the Year" in Pennsylvania by *The Legal Intelligencer* and *Pennsylvania Law Weekly,* which stated on May 19, 2008 in the *Women in the Profession* in *The Legal Intelligencer* that she "has been a prominent figure nationally in securities class actions for years, and some of her recent cases have only raised her stature." In June 2008, Ms. Savett was named by *Lawdragon* as one of the "100 Lawyers You Need to Know in Securities Litigation."

Unquestionably, it is because of Ms. Savett, who for decades has been in the top leadership of the Firm, that the Firm has a remarkably high proportion of women lawyers and shareholders. At this time, 23 of the Firm's 66 lawyers (34.8%) are women, and 11 of the Firm's 33 shareholders (33.3%) are women. This percentage of women shareholders far exceeds the 23.4% of representation of women among partners in 45 American cities, and far exceeds the 19.8% of women among partners in Philadelphia law firms, according to the National Association of Law Placement.

Ms. Savett has aggressively sought to hire women, without regard to age or whether they are "right out of law school." Several of the women who have children are able to continue working at the Firm because Ms. Savett has instituted a policy of flexible work time and fosters an atmosphere of cooperation, teamwork and mutual respect. As a result, the women attorneys stay on and have long and productive careers while still maintaining a balanced life. Ms. Savett has a personal understanding of the challenges and satisfactions that women experience in practicing law while raising a family. Ms. Savett has three children and five grandchildren. One of her daughters and her daughter-in-law are lawyers.

Ms. Savett has taught those around her more than good lawyering. She places great emphasis in her own life on devotion to family, community service and involvement in charitable organizations. She teaches others by her example and her obvious interest in their efforts and achievements.

Ms. Savett is a well-known leader of the Philadelphia legal, business, cultural and Jewish community. She is an exemplary citizen who spends endless hours of her after-work time helping others in the community.

From 2011 – 2014, Ms. Savett served as President and Board Chair of the Jewish Federation of Greater Philadelphia (JFGP), a community of over 215,000 Jewish people. She is only the third woman to serve as the President, the top lay leader of the Federation, in the 117 years of its existence.

Ms. Savett also serves on the Board of the National Liberty Museum, The National Museum of American Jewish History, and the local and national boards of American Associates of Ben Gurion University of the Negev. She had as Chairperson of the Southeastern Pennsylvania State of Israel Bonds Campaign and has served as a member of the National Cabinet of State of Israel Bonds. In 2005, Ms. Savett received The Spirit of Jerusalem Medallion, the State of Israel Bonds' highest honor.

Ms. Savett has used her positions of leadership in the community to identify and help promote women as volunteer leaders. Ms. Savett has selected a few worthy causes to which she tirelessly dedicates herself. According to leaders of The Jewish Federation of Greater Philadelphia, Ms. Savett is viewed by many woman in the philanthropic world as a role model.

Ms. Savett earned her J.D. from the University of Pennsylvania Law School and a B.A. *summa cum laude* from the University of Pennsylvania. She is a member of Phi Beta Kappa.

Ms. Savett has three married children, three grandsons, and two granddaughters. She enjoys tennis, biking, physical training, travel, and collecting art, especially glass and sculpture.

**Merrill G. Davidoff – Chair *Emeritus* & Managing Shareholder**
Merrill G. Davidoff is Chairman *Emeritus* and a Managing Shareholder, in addition to his continuing work as Co-Chairman of the Antitrust Department with Mr. Montague and Chairman of the Environmental Group. Mr. Davidoff has litigated and tried a wide range of antitrust, commodities, securities and environmental class actions.

In *In re Currency Conversion Fee Antitrust Litigation*, MDL No. 1409, Mr. Davidoff was co-lead counsel in class actions that resulted in settlements of $386 million.

In a long-running environmental class action on behalf of property owners whose land was contaminated by plutonium from a neighboring nuclear weapons facility (Rocky Flats near Denver, Colorado), Mr. Davidoff served as lead counsel and lead trial counsel in a 2005-2006 trial that resulted in a $554 million jury verdict, third largest of 2006. In 2009 the Rocky Flats trial team, led by Mr. Davidoff, received the prestigious Public Justice Award for "Trial Lawyer of the Year." A 2010 decision by the 10th Circuit Court of Appeals reversed the judgment that had been won in the district court, but Berger Montague persevered and sought entry of judgment under alternative state law grounds. After losing this battle in the district court, plaintiffs appealed to the 10th Circuit again, and, after an appeal argued by Mr. Davidoff, the Court of Appeals (by then-judge, now Justice, Neil Gorsuch) reversed and held that plaintiffs could proceed on state law nuisance grounds. Just before competing petitions for certiorari were to be decided by the Supreme Court, a settlement of $375 million was announced in May 2016. The settlement received final approval on April 28, 2017.

Mr. Davidoff also concentrates his practice in representation for commodities futures and options traders as well as derivatives matters.  He was co-lead counsel for the customer class in *In re MF Global Holdings Limited Investment Litigation*, which settled for well over a billion dollars and resulted in the recovery and return of 100% of lost customer funds after MF Global's October 31, 2011 collapse.

Mr. Davidoff has represented diverse clients, including many companies, sports organizations, trading firms and governmental entities. In the *Qwest* securities litigation, Mr. Davidoff represented New Jersey, securing a $45 million "opt-out" settlement, and also represented New Jersey in "opt-out" litigation against the former public accounting firm for Lehman Brothers Inc.

Mr. Davidoff served as co-lead and trial counsel for a plaintiff class in the first mass tort class action trial in a federal court which resulted in a precedent-setting settlement for class members, *In re Louisville Explosions Litigation*. In the Canadian Radio-Television and Telecommunications Commission ("CRTC") Decisions (Challenge Communications, Ltd. v. Bell Canada), Mr. Davidoff was lead counsel for Applicant (plaintiff) in three evidentiary hearings before the CRTC. The hearings resulted in the first precedent-breaking Bell Canada's monopoly over the telecommunications equipment which was connected to its telephone network. He was lead counsel in the *Revco Securities Litigation*, an innovative "junk bond" class action, which settled for $36 million. Mr. Davidoff was lead plaintiffs' counsel and lead trial counsel in *In re Melridge Securities Litigation* tried to jury verdicts for $88 million (securities fraud) and $240 million (RICO). He was co-lead counsel for the class in *In re Graphite Electrodes Antitrust Litigation*, an international price-fixing case which yielded settlements ranging from 18% to 32% of the plaintiffs' and class' purchases from the defendants (aggregate settlements totaled $134 million). He was one of co-lead counsel in the *Ikon Securities Litigation*, in which a settlement of $111 million was obtained. He was co-lead counsel and designated lead trial counsel in the *In Re Sunbeam Securities Litigation*, where settlements of $142 million were reached. One of his areas of concentration is representation in commodities futures and options matters, and expertise in derivatives. He has represented market-makers on the Philadelphia Stock Exchange, where he owned a member firm in the 1990s, as well as broker-dealers and market-makers on other exchanges.

**H. Laddie Montague Jr. - Chair *Emeritus* & Managing Shareholder**
H. Laddie Montague Jr. is a member of the Firm's Executive Committee, having joined the Firm's predecessor David Berger, P.A., at its inception in 1970.  Mr. Montague was Chairman of the Firm from 2003 to 2016. Mr. Montague is now Chairman *Emeritus* and a Managing Shareholder, in addition to his continuing work as Co-Chairman of the Firm's Antitrust Department.

In addition to being one of the courtroom trial counsel for plaintiffs in the mandatory punitive damage class action in the *Exxon Valdez Oil Spill Litigation*, Mr. Montague has served as lead or co-lead counsel in many class actions, including, among others, *High Fructose Corn Syrup Antitrust Litigation* (2006), *In re Infant Formula Antitrust Litigation* (1993) and *Bogosian v. Gulf Oil Corp.* (1984), a nationwide class action against thirteen major oil companies.  Mr. Montague was co-lead counsel for the State of Connecticut in its litigation against the tobacco industry. He is currently co-lead counsel in several pending class actions. In addition to the *Exxon Valdez Oil Spill Litigation*, he has tried several complex and protracted cases to the jury, including three class actions:  *In re Master Key Antitrust Litigation* (1977), *In re Corrugated Container Antitrust Litigation* (1980) and *In re Brand Name Prescription Drugs Antitrust Litigation*, M.D.L. (1997-1998).  For his work as trial counsel in the *Exxon Valdez Oil Spill Litigation*, Mr. Montague shared the Trial Lawyers for Public Justice 1995 Trial Lawyer of the Year Award.

Mr. Montague has been repeatedly singled out by *Chambers USA: America's Leading Lawyers for Business* as one of the top antitrust attorneys in the Commonwealth of Pennsylvania.  He is lauded for his stewardship of the Firm's antitrust department, referred to as "the dean of the Bar," stating that his peers in the legal profession hold him in the "highest regard," and explicitly praised

for, among other things, his "fair minded[ness]." He also is or has been listed in *Lawdragon, An International Who's Who of Competition Lawyers*, and *The Legal 500: United States (Litigation)*. He has repeatedly been selected by *Philadelphia Magazine* as one of the top 100 lawyers in Pennsylvania. Mr. Montague has also been one of the only two inductees in the American Antitrust Institute's inaugural Private Antitrust Enforcement Hall of Fame.

He has been invited and made a presentation at the Organization for Economic Cooperation and Development (Paris, 2006); the European Commission and International Bar Association Seminar (Brussels, 2007); the Canadian Bar Association, Competition Section (Ottawa, 2008); and the 2010 Competition Law & Policy Forum (Ontario).

Mr. Montague is a graduate of the University of Pennsylvania (B.A. 1960) and the Dickinson School of Law (L.L.B. 1963), where he was a member of the Board of Editors of the Dickinson Law Review. He is the former Chairman of the Board of Trustees of the Dickinson School of Law of Penn State University and current Chairman of the Dickinson Law Association.

**Daniel Berger – Managing Shareholder**

Daniel Berger graduated with honors from Princeton University and Columbia Law School, where he was a Harlan Fiske Stone academic scholar. He is a senior member and Managing Shareholder. Over the last two decades, he has been involved in complicated commercial litigation including class action securities, antitrust, consumer protection and bankruptcy cases. In addition, he has prosecuted important environmental, mass tort and civil rights cases during this period. He has led the Firm's practice involving improprieties in the marketing of prescription drugs and the abuse of marketing exclusivities in the pharmaceutical industry, including handling landmark cases involving the suppression of generic competition in the pharmaceutical industry. For this work, he has been recognized by the *Law 360* publication as a "titan" of the plaintiffs' Bar ("Titan of the Plaintiffs Bar: Daniel Berger" *Law 360*, September 23, 2014).

In the civil rights area, he has been counsel in informed consent cases involving biomedical research and human experimentation by federal and state governmental entities. He also leads the firm's representation of states and other public bodies and agencies.

Mr. Berger has frequently represented public institutional investors in securities litigation, including representing the state pension funds of Pennsylvania, Ohio and New Jersey in both individual and class action litigation. He also represents Pennsylvania and New Jersey on important environmental litigation involving contamination of groundwater by gasoline manufacturers and marketers.

Mr. Berger has a background in the study of economics, having done graduate level work in applied microeconomics and macroeconomic theory, the business cycle, and economic history. He has published law review articles in the *Yale Law Journal*, the *Duke University Journal of Law and Contemporary Problems*, the *University of San Francisco Law Review* and the *New York Law School Law Review*. Mr. Berger is also an author and journalist who has been published in *The Nation* magazine, reviewed books for *The Philadelphia Inquirer* and authored a number of political

blogs, including in *The Huffington Post* and the Roosevelt Institute's *New Deal 2.0.* He has also appeared on MSNBC as a political commentator.

Mr. Berger has been active in city government in Philadelphia and was a member of the Mayor's Cultural Advisory Council, advising the Mayor of Philadelphia on arts policy, and the Philadelphia Cultural Fund, which was responsible for all City grants to arts organizations. Mr. Berger was also a member of the Pennsylvania Humanities Council, one of the State organizations through which the NEA makes grants. Mr. Berger also serves on the board of the Wilma Theater, Philadelphia's pre-eminent theater for new plays and playwrights.

### Shanon J. Carson – Managing Shareholder

Shanon J. Carson is a Managing Shareholder of the Firm. He Co-Chairs the Employment & Unpaid Wages, Consumer Protection, Defective Products, and Defective Drugs and Medical Devices Departments and is a member of the Firm's Commercial Litigation, Employee Benefits & ERISA, Environment & Public Health, Insurance Fraud, Predatory Lending and Borrowers' Rights, and Technology, Privacy & Data Breach Departments.

Mr. Carson has achieved the highest peer-review rating, "AV," in Martindale-Hubbell, and has received honors and awards from numerous publications. In 2009, Mr. Carson was selected as one of 30 "Lawyers on the Fast Track" in Pennsylvania under the age of 40. In both 2015 and 2016, Mr. Carson was selected as one of the top 100 lawyers in Pennsylvania, as reported by Thomson Reuters. In 2018, Mr. Carson was named to the *Philadelphia Business Journal*'s "2018 Best of the Bar: Philadelphia's Top Lawyers."

Mr. Carson is often retained to represent plaintiffs in employment cases, wage and hour cases for minimum wage violations and unpaid overtime, ERISA cases, consumer cases, insurance cases, construction cases, automobile defect cases, defective drug and medical device cases, product liability cases, breach of contract cases, invasion of privacy cases, false advertising cases, excessive fee cases, and cases involving the violation of state and federal statutes. Mr. Carson represents plaintiffs in all types of litigation including class actions, collective actions, multiple plaintiff litigations, and single plaintiff litigation. Mr. Carson is regularly appointed by federal courts to serve as lead counsel and on executive committees in class actions and mass torts.

Mr. Carson is frequently asked to speak at continuing legal education seminars and other engagements and is active in nonprofit and professional organizations. Mr. Carson currently serves on the Board of Directors of the Philadelphia Trial Lawyers Association (PTLA) and as a Co-Chair of the PTLA Class Action/Mass Tort Committee. Mr. Carson is also a member of the American Association for Justice, the American Bar Foundation, Litigation Counsel of America, the National Trial Lawyers - Top 100, and the Pennsylvania Association for Justice.

While attending the Dickinson School of Law of the Pennsylvania State University, Mr. Carson was senior editor of the Dickinson Law Review and clerked for a U.S. District Court Judge. Mr.

Carson currently serves on the Board of Trustees of the Dickinson School of Law of the Pennsylvania State University.

**Todd S. Collins – Managing Shareholder**

Todd S. Collins is a graduate of the University of Pennsylvania (B.A. 1973) and the University of Pennsylvania Law School (J.D. 1978), where he won the 1978 Henry C. Laughlin Prize for Legal Ethics. He is a member of the Pennsylvania and Delaware Bars. Since joining the Firm in 1982, following litigation and corporate experience in Wilmington, Delaware, and Philadelphia, he has concentrated on complex class litigation, including cases on behalf of securities purchasers, shareholders, trust beneficiaries, and retirement plan participants and beneficiaries.

Mr. Collins has served as lead counsel or co-lead counsel in numerous cases that have achieved significant benefits on behalf of the Class. These cases include: *In re AMF Bowling Securities Litigation* (S.D.N.Y.) ($20 million recovery, principally against investment banks, where defendants asserted that Class suffered no damages); *In re Aero Systems, Inc. Securities Litigation* (S.D. Fla.) (settlement equal to 90 percent or more of Class members' estimated damages); *Price v. Wilmington Trust Co.* (Del. Ch.) (in litigation against bank trustee for breach of fiduciary duty, settlement equal to 70% of the losses of the Class of trust beneficiaries); *In re Telematics International, Inc. Securities Litigation* (S.D. Fla.) (settlements achieved, after extensive litigation, following 11th Circuit reversal of dismissal below); *In re Ex-Cell-O Securities Litigation* (E.D. Mich.); *In re Sequoia Systems, Inc.* (D. Mass.); *In re Sapiens International, Inc. Securities Litigation* (S.D.N.Y.); *In re Datastream Securities Litigation* (D.S.C.); *Copland v. Tolson* (Pa. Common Pleas) (on eve of trial, in case against corporate principals for breach of fiduciary duty, settlement reached that represented 65% or more of claimants' losses, with settlement funded entirely from individual defendants' personal funds); and *In re IKON Office Solutions, Inc. Securities Litigation* (E.D. Pa.). In *IKON*, where Mr. Collins was co-lead counsel as well as the chief spokesman for plaintiffs and the Class before the Court, plaintiffs' counsel created a fund of $111 million for the benefit of the Class.

In addition, Mr. Collins has served as lead or co-lead counsel in several of the leading cases asserting the ERISA rights of 401(k) plan participants. Mr. Collins has served as co-lead counsel in *In re Lucent Technologies, Inc. ERISA Litigation* (D.N.J.); *In re Nortel Networks Corp. ERISA Litigation* (M.D. Tenn.); *In re SPX Corporation ERISA Litigation* (W.D. N.C.); and *King v. Wal-Mart Stores, Inc.* (D. Nev.). In *Lucent*, Mr. Collins and his team achieved a settlement consisting of $69 million for the benefit of plan participants, as well as substantial injunctive relief with respect to the operation of the 401(k) plans.

Mr. Collins is at the forefront of litigation designed to achieve meaningful corporate governance reform. Recently, he brought to a successful conclusion two landmark cases in which corporate therapeutics are at the core of the relief obtained. In *Oorbeek v. FPL Group, Inc.* (S.D. Fla.), a corporate derivative action brought on behalf of the shareholders of FPL Group, plaintiffs challenged excessive "change of control" payments made to top executives. In the settlement, plaintiffs recovered not only a substantial cash amount but also a range of improvements in FPL's corporate governance structure intended to promote the independence of the outside directors.

Similarly, in *Ashworth Securities Litigation* (S.D. Cal.), a Section 10(b) fraud case, in which Mr. Collins was co-lead counsel, plaintiffs again have been successful in recovering millions of dollars and also securing important governance changes. In this case, the changes focused on strengthening the accounting function and improving revenue recognition practices.

In corporate acquisition cases, Mr. Collins has served as co-lead counsel in cases such as *In re Portec Rail Products, Inc. Shareholders Litig.* (C.P. Allegheny County, Pennsylvania) (tender offer enjoined), *Silberman v. USANA Health Sciences, Inc. et, al.* (D. Utah) (offer enjoined on plaintiffs' motion).

**Michael C. Dell'Angelo – Managing Shareholder**
Michael Dell'Angelo is a Managing Shareholder in the Antitrust, Commercial Litigation, Commodities & Financial Instruments, and Securities & Investor Protection practice groups. He serves as co-lead counsel in a variety of complex antitrust cases, including *Le, et al. v. Zuffa, LLC*, No. 15-1045 (D. Nev.) (alleging the Ultimate Fighting Championship ("UFC") obtained illegal monopoly power of the market for Mixed Martial Arts promotions and suppressed the compensation of MMA fighters).

Mr. Dell'Angelo is responsible for winning numerous significant settlements for his clients and class members. Most recently, as co-lead counsel, Mr. Dell'Angelo recently helped to reach settlements totaling more than $190 million in the multidistrict litigation *In re Domestic Drywall Antitrust Litig.*, No. 13-md-2437 (E.D. Pa.). There, in granting final approval to the last settlement, the court observed about Mr. Dell'Angelo and his colleagues that "Plaintiffs' counsel are experienced antitrust lawyers who have been working in this field of law for many years and have brought with them a sophisticated and highly professional approach to gathering persuasive evidence on the topic of price-fixing." *In re Domestic Drywall Antitrust Litig.*, No. 13-md-2437, 2018 WL 3439454, at *18 (E.D. Pa. July 17, 2018). "[I]t bears repeating," the court emphasized, "that the result attained is directly attributable to having highly skilled and experienced lawyers represent the class in these cases." Id.

Mr. Dell'Angelo also serves as co-lead counsel or class counsel in numerous cases alleging price-fixing or other wrongdoing affecting a variety of financial instruments, including *In re Commodity Exchange, Inc., Gold Futures and Options Trading Litig.*, 1:14-MD-2548-VEC (S.D.N.Y.); *In re Platinum and Palladium Antitrust Litig.*, No. 14-cv-09391-GHW (S.D.N.Y.); *Contant, et al. v. Bank of America Corp., et al.*, 1:17-cv-03139-LGS (S.D.N.Y.); *In re Libor-Based Financial Instruments Antitrust Litig.*, No. 11-md-2262 (S.D.N.Y.); *Alaska Elec. Pension Fund, et al. v. Bank of Am. Corp., et al.*, No. 14 Civ. 7126-JMF (S.D.N.Y.); *In re Crude Oil Commodity Futures Litig.*, No. 11-cv-3600 (S.D.N.Y.); and *In re London Silver Fixing, Ltd. Antitrust Litig.*, No. 14-md-2573 (S.D.N.Y.).

*The National Law Journal* recently featured Mr. Dell'Angelo in its profile of Berger Montague for a special annual report entitled "Plaintiffs' Hot List." *The National Law Journal*'s Hot List identifies the top plaintiff practices in the country. The Hot List profile focused on Mr. Dell'Angelo's role in the MF Global litigation (*In re MF Global Holding Ltd. Inv. Litig.*, No. 12-MD-2338-VM (S.D.N.Y.)).

In *MF Global*, Mr. Dell'Angelo represented former commodity account holders seeking to recover approximately $1.6 billion of secured customer funds after the highly publicized collapse of MF Global, a major commodities brokerage. At the outset of this high-risk litigation, the odds appeared grim: MF Global had declared bankruptcy, leaving the corporate officers, a bank, and a commodity exchange as the only prospect for the recovery of class's misappropriated funds. Nonetheless, four years later, a result few would have believed possible was achieved. Through a series of settlements, the former commodity account holders recovered more than 100 percent of their missing funds, totaling over $1.6 billion.

Mr. Dell'Angelo has been recognized consistently as a Pennsylvania Super Lawyer, a distinction conferred upon him annually since 2007.  He is regularly invited to speak at Continuing Legal Education (CLE) and other seminars and conferences, both locally and abroad. In response to his recent CLE, "How to Deal with the Rambo Litigator," Mr. Dell'Angelo was singled out as "One of the best CLE speakers [attendees] have had the pleasure to see."

### David F. Sorensen – Managing Shareholder

David Sorensen is a Managing Shareholder and Co-Chair of the Firm's antitrust department. He graduated from Duke University (A.B. 1983) and Yale Law School (J.D. 1989), and clerked for the Hon. Norma L. Shapiro (E.D. Pa.). He concentrates his practice on antitrust and environmental class actions.

Mr. Sorensen co-tried *Cook v. Rockwell Int'l Corp.*, No. 90-181 (D. Colo.) and received, along with the entire trial team, the "Trial Lawyer of the Year" award in 2009 from the Public Justice Foundation for their work on the case, which resulted in a jury verdict of $554 million in February 2006, after a four-month trial, on behalf of thousands of property owners near the former Rocky Flats nuclear weapons plant located outside Denver, Colorado. The jury verdict was then the largest in Colorado history, and was the first time a jury has awarded damages to property owners living near one of the nation's nuclear weapons sites. In 2008, after extensive post-trial motions, the District Court entered a $926 million judgment for the plaintiffs. The jury verdict in the case was vacated on appeal in 2010. In 2015, on a second trip to the Tenth Circuit Court of Appeals, Plaintiffs secured a victory with the case being sent back to the district court. In 2016, the parties reached a $375 million settlement, which received final approval in 2017.

Mr. Sorensen played a major role in the Firm's representation of the State of Connecticut in *State of Connecticut v. Philip Morris, Inc., et al.*, in which Connecticut recovered approximately $3.6 billion (excluding interest) from certain manufacturers of tobacco products. And he served as co-lead class counsel in *Johnson v. AzHHA, et al.*, No. 07-1292 (D. Ariz.), representing a class of temporary nursing personnel who had been underpaid because of an alleged conspiracy among Arizona hospitals. The case settled for $24 million.

Mr. Sorensen also has played a leading role in numerous antitrust cases representing direct purchasers of prescription drugs. Many of these cases have alleged that pharmaceutical manufacturers have wrongfully kept less expensive generic drugs off the market, in violation of the antitrust laws. Many of these cases have resulted in substantial cash settlements, including

*King Drug Co. v. Cephalon, Inc.*, (E.D. Pa.) ($512 million partial settlement - largest ever for a case alleging delayed generic competition); *In re: Aggrenox Antitrust Litigation* ($146 million settlement); *In re: K-Dur Antitrust Litigation* ($60.2 million); *In re: Prandin Direct Purchaser Antitrust Litigation* ($19 million); *In re: Doryx Antitrust Litigation* ($15 million); *In re: Skelaxin Antitrust Litigation* ($73 million); *In re: Wellbutrin XL Antitrust Litigation* ($37.50 million); *In re: Oxycontin Antitrust Litigation* ($16 million); *In re: DDAVP Direct Purchaser Antitrust Litigation* ($20.25 million settlement following precedent-setting victory in the Second Circuit, which Mr. Sorensen argued, see 585 F.3d 677 (2d Cir. 2009)); *In re: Nifedipine Antitrust Litigation* ($35 million); *In re: Terazosin Hydrochloride Antitrust Litigation*, MDL 1317 (S.D. Fla.) ($74.5 million); and *In re: Remeron Antitrust Litigation* ($75 million). Mr. Sorensen is serving as co-lead counsel or on the executive committee of numerous similar, pending cases.

In 2017, the American Antitrust Institute presented its Antitrust Enforcement Award to Mr. Sorensen and others for their work on the *K-Dur* case.

### Shareholders

### Glen L. Abramson – Shareholder

Glen L. Abramson is a Shareholder in the Philadelphia office. He concentrates his practice on complex consumer protection, product defects, and financial services litigation, and representing public and private institutional investors in securities fraud class actions and commercial litigation.

Mr. Abramson has served as co-lead counsel in numerous successful consumer protection and securities fraud class actions, including:

*Casey v. Citibank, N.A.*, No. 5:12-cv-00820 (N.D.N.Y.). As Co-Lead Counsel, Mr. Abramson obtained a settlement valued at $110 million in this consolidated class action on behalf of nationwide classes of borrowers whose mortgage loans were serviced by Citibank or CitiMortgage and who were force-placed with hazard, flood or wind insurance.

*In re Oppenheimer Rochester Funds Group Securities Litigation,* No. 09-md-02063-JLK-KMT (D. Colo.). As Co-Lead Counsel, Mr. Abramson represented shareholders in Oppenheimer municipal bond funds in connection with losses suffered during the financial crisis of 2008. The case settled in 2014 for $89.5 million.

*In re Tremont, Securities Law, State Law, and Insurance Litig.*, No. 1:08-cv-11117-TPG. Mr. Abramson represented insurance policyholders who lost money in connection with the Madoff Ponzi scheme. The combined cases were settled for more than $100 million.

*In re Mutual Fund Investment Litig.*, No. 04-md-15861-CCB. As Co-Lead Counsel, Mr. Abramson represented shareholders of various mutual fund families who lost money as the result of market timing in mutual funds. Mr. Abramson was lead counsel for Scudder/Deutsche Bank mutual fund shareholders and helped orchestrate combined settlements of more than $14 million.

*In re Fleming Companies, Inc. Sec. Litig.*, No. 03-md-1530 (E.D. Tex.). As Co-Lead Counsel, Mr. Abramson represented shareholders of Fleming Companies, Inc. in connection with losses suffered as a result of securities fraud by Fleming and its auditors and underwriters. The case resulted in a $93.5 million settlement.

Prior to joining Berger Montague, Mr. Abramson practiced at Dechert LLP in Philadelphia, where he handled complex commercial litigation, product liability, intellectual property, and civil rights disputes. While at Dechert, Mr. Abramson co-chaired a civil rights trial in federal court that led to a six-figure verdict. Mr. Abramson also spent three years as a professional equities trader.

Mr. Abramson is a graduate of Cornell University (B.A. *with distinction* 1993) and Harvard Law School (*cum laude* 1996). He is a past member of the Harvard Legal Aid Bureau and is a member of Cornell University's Phi Beta Kappa honors society.

**Gary E. Cantor – Shareholder**
Gary E. Cantor is a Shareholder in the Philadelphia office. He concentrates his practice on securities and commercial litigation and derivatives valuations.

Mr. Cantor served as co-lead counsel in *Steiner v. Phillips, et al. (Southmark Securities)*, Consolidated C.A. No. 3-89-1387-X (N.D. Tex.), (class settlement of $82.5 million), and *In re Kenbee Limited Partnerships Litigation*, Civil Action No. 91-2174 (GEB), (class settlement involving 119 separate limited partnerships resulting in cash settlement, oversight of partnership governance and debt restructuring (with as much as $100 million in wrap mortgage reductions)). Mr. Cantor also represented plaintiffs in numerous commodity cases.

In recent years, Mr. Cantor played a leadership role in *In re Oppenheimer Rochester Funds Group Securities Litigation* ($89.5 million settlement on behalf of investors in six tax-exempt bond mutual funds managed by OppenheimerFunds, Inc.), No. 09-md-02063-JLK (D. Col.); *In re KLA-Tencor Corp. Securities Litigation*, Master File No. C-06-04065-CRB (N.D. Cal.) ($65 million class settlement); *In re Sepracor Inc. Securities Litigation*, Civil Action no. 02-12235-MEL (D. Mass.) ($52.5 million settlement.); *In re Sotheby's Holding, Inc. Securities Litigation*, No. 00 Civ. 1041 (DLC) (S.D.N.Y.) ($70 million class settlement). He was also actively involved in the *Merrill Lynch Securities Litigation* (class settlement of $475 million) and *Waste Management Securities Litigation* (class settlement of $220 million).

For over 20 years, Mr. Cantor also has concentrated on securities valuations and the preparation of event or damage studies or the supervision of outside damage experts for many of the firm's cases involving stocks, bonds, derivatives, and commodities. Mr. Cantor's work in this regard has focused on statistical analysis of securities trading patterns and pricing for determining materiality, loss causation and damages as well as aggregate trading models to determine class-wide damages.

Mr. Cantor was a member of the Moot Court Board at University of Pennsylvania Law School where he authored a comment on computer-generated evidence in the University of Pennsylvania

Law Review. He graduated from Rutgers College with the highest distinction in economics and was a member of Phi Beta Kappa.

**Joy P. Clairmont – Shareholder**

Joy Clairmont is a Shareholder in the Whistleblower, *Qui Tam* & False Claims Act Group, which has recovered more than $3 billion for federal and state governments, as well as over $500 million for the firm's whistleblower clients. Ms. Clairmont also has experience practicing in the area of securities fraud litigation.

Ms. Clairmont has been investigating and litigating whistleblower cases for over fifteen years and has successfully represented whistleblower clients in federal and state courts throughout the United States. On behalf of her whistleblower clients, Ms. Clairmont has pursued fraud cases involving a diverse array of companies: behavioral health facilities, a national retail pharmacy chain, a research institution, pharmaceutical manufacturers, skilled nursing facilities, a national dental chain, mortgage lenders, hospitals and medical device manufacturers.

Most notably, Ms. Clairmont has participated in several significant and groundbreaking cases involving fraudulent drug pricing:

> ***United States ex rel. Streck v. AstraZeneca, LP, et al.*, C.A. No. 08-5135 (E.D. Pa.):** a Medicaid rebate fraud case which settled in 2015 for a total of $55.5 million against three pharmaceutical manufacturers, AstraZeneca, Cephalon, and Biogen. The case alleged that the defendants did not properly account for millions of dollars of payments to wholesalers for drug distribution and other services. As a result, the defendants underpaid the government in rebates owed under the Medicaid Drug Rebate Program.

> ***United States ex rel. Kieff and LaCorte v. Wyeth and Pfizer, Inc.*, Nos. 03-12366 and 06-11724-DPW (D. Mass.):** a Medicaid rebate fraud case involving Wyeth's acid-reflux drug, Protonix, which settled for $784.6 million in April 2016.

> ***"AWP"* Cases:** a series of cases in federal and state courts against many of the largest pharmaceutical manufacturers, including Bristol-Myers Squibb, Boehringer Ingelheim, and GlaxoSmithKline, for defrauding the government through false and inflated price reports for their drugs, which resulted in more than $2 billion in recoveries for the government.

Earlier in her career, Ms. Clairmont gained experience litigating securities fraud class actions including, most notably, *In Re Sunbeam Securities Litigation*, a class action which led to the recovery of over $142 million for the class of plaintiffs in 2002.

Ms. Clairmont graduated in 1995 with a B.A. *cum laude* from George Washington University and in 1998 with a J.D. from George Washington University Law School.

**Caitlin Goldwater Coslett – Shareholder**

Caitlin Coslett concentrates her practice on complex litigation, including antitrust, environmental, and mass tort litigation. Since joining the Firm, she has worked on a variety of matters, including *Cook v. Rockwell International Corp.* (mass tort), and antitrust class actions such as *CRT Antitrust Litigation*, *In re Domestic Drywall Antitrust Litigation*, *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, *Steel Antitrust Litigation*, and *In re Urethane [Polyether Polyols] Antitrust Litigation*.

Ms. Coslett also represents classes of direct purchasers of pharmaceutical drugs who allege that pharmaceutical manufacturers have violated the federal antitrust laws by wrongfully keeping less expensive generic drugs off the market, including in *In re Lidoderm Antitrust Litigation*, *In re Skelaxin (Metaxalone) Antitrust Litigation*, and *In re Solodyn (Minocycline Hydrochloride) Antitrust Litigation*.

Ms. Coslett graduated *magna cum laude* from Haverford College with a B.S. in mathematics and economics and graduated cum laude from the New York University School of Law. At NYU School of Law, Ms. Coslett was a Lederman/Milbank Fellow in Law and Economics and an articles selection editor for the NYU Review of Law and Social Change. Ms. Coslett was formerly one of the top 75 rated female chess players in the U.S.

**Andrew C. Curley – Shareholder**

Andrew C. Curley is a Shareholder in the Antitrust practice group. He concentrates his practice in the area of complex antitrust litigation.

Mr. Curley served as Co-Lead Class Counsel on behalf of a class of independent truck stops and other retail merchants in *Marchbanks Truck Service, Inc. v. Comdata Network, Inc.*, Case No. 07-1078 (E.D. Pa.). The *Marchbanks* litigation settled in January 2014 for $130 million and significant prospective relief in the form of, among other things, meaningful and enforceable commitments by the largest over-the-road trucker fleet card issuer in the United States to modify or not to enforce those portions of its merchant services agreements that plaintiffs challenged as anticompetitive, and that an expert economist has determined to be worth an additional $260 million to $491 million (bringing the total value of the settlement to between $390 and $621 million).

Mr. Curley is also involved in a number of antitrust cases representing direct purchasers of prescription drugs. These cases have alleged that pharmaceutical manufacturers have wrongfully kept less expensive generic drugs off the market, in violation of the antitrust laws. Those cases include: *In re Solodyn Antitrust Litig.*, 14 MD 2503 (D. Mass.) ($76 million settlements); and *In re Aggrenox Antitrust Litig.*, No. 3:14-md-02516 (D. Conn.) ($146 million settlement); *In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 12-MD-2343 (E.D. Tenn.) ($73 million settlement); *In re Wellbutrin XL Antitrust Litig.*, No. 08-2431 (E.D. Pa.) ($37.5 million settlement with one of two defendants); *In re Opana ER Antitrust Litig.*, No. 14-cv-10150 (N.D. Ill.) and *In re Niaspan Antitrust Litig.*, No. 12-MD-2460 (E.D. Pa.).

Prior to joining the Firm, Mr. Curley practiced in the litigation department of a large Philadelphia law firm where he represented clients in a variety of industries in complex commercial litigation in both state and federal court.

**Lawrence Deutsch – Shareholder**

Mr. Deutsch has been involved in numerous major shareholder class action cases. He served as lead counsel in the Delaware Chancery Court on behalf of shareholders in a corporate governance litigation concerning the rights and valuation of their shareholdings. Defendants in the case were the Philadelphia Stock Exchange, the Exchange's Board of Trustees, and six major Wall Street investment firms. The case settled for $99 million and also included significant corporate governance provisions. Chancellor Chandler, when approving the settlement allocation and fee awards on July 2, 2008, complimented counsel's effort and results, stating, "Counsel, again, I want to thank you for your extraordinary efforts in obtaining this result for the class." The Chancellor had previously described the intensity of the litigation when he had approved the settlement, "All I can tell you, from someone who has only been doing this for roughly 22 years, is that I have yet to see a more fiercely and intensely litigated case than this case. Never in 22 years have I seen counsel going at it, hammer and tong like they have gone at it in this case."

Mr. Deutsch was one of principal trial counsel for plaintiffs in *Fred Potok v. Floorgraphics, Inc., et al.* (Phila Co. CCP 080200944 and Phila Co. CCP 090303768) resulting in an $8 million judgment against the directors and officers of the company for breach of fiduciary duty.

Over his 25 years working in securities litigation, Mr. Deutsch has been a lead attorney on many substantial matters. Mr. Deutsch served as one of lead counsel in the *In Re Sunbeam Securities Litigation* class action concerning "Chainsaw" Al Dunlap (recovery of over $142 million for the class in 2002). As counsel on behalf of the City of Philadelphia he served on the Executive Committee for the securities litigation regarding *Frank A. Dusek, et al. v. Mattel Inc., et al.* (recovery of $122 million for the class in 2006).

Mr. Deutsch served as lead counsel for a class of investors in Scudder/Deutsche Bank mutual funds in the nationwide *Mutual Funds Market Timing* cases. Mr. Deutsch served on the Plaintiffs' Omnibus Steering Committee for the consortium of all cases. These cases recovered over $300 million in 2010 for mutual fund purchasers and holders against various participants in widespread schemes to "market time" and late trade mutual funds, including $14 million recovered for Scudder/Deutsche Bank mutual fund shareholders.

Mr. Deutsch has been court-appointed Lead or a primary attorney in numerous complex litigation cases: *NECA-IBEW Pension Trust Fund, et al. v. Precision Castparts Corp., et al.* (Civil Case No. 3:16-cv-01756-YY); *Fox et al. v. Prime Group Realty Trust, et al.* United States District Court Northern District of Illinois (Civil Case No. 1:12-cv-09350) ($8.25 million settlement pending); served as court-appointed lead counsel in *In Re Inergy LP Unitholder Litigation* (Del. Ch. No. 5816-VCP ) ($8 million settlement).

Mr. Deutsch served on a team of lead counsel in *In Re: CertainTeed Fiber Cement Siding Litigation*, E.D.Pa. MDL NO. 11-2270 ($103.9 million settlement); *Tim George v. Uponor, Inc., et al.*, United States District Court, District of Minnesota, Case No. 12-CV-249 (ADM/JJK) ($21 million settlement); *Batista, et al. v. Nissan North America, Inc.*, United States District Court, Southern District of Florida, Miami Division, Case No 1;14-cv-24728 (settlement valued at $65,335,970.00).

In addition to his litigation work, Mr. Deutsch has been a member of the Firm's Executive Committee and also manages the Firm's paralegals. He has also regularly represented indigent parties through the Bar Association's VIP Program, including the Bar's highly acclaimed representation of homeowners facing mortgage foreclosure.

Prior to joining the Firm, Mr. Deutsch served in the Peace Corps from 1973-1976, serving in Costa Rica, the Dominican Republic, and Belize. He then worked for ten years at the United States General Services Administration.

Mr. Deutsch is a graduate of Boston University (B.A. 1973), George Washington University's School of Government and Business Administration (M.S.A. 1979), and Temple University's School of Law (J.D. 1985). He became a member of the Pennsylvania Bar in 1986 and the New Jersey Bar in 1987. He has also been admitted to practice in Eastern District of Pennsylvania, the First Circuit Court of Appeals, the Second Circuit Court of Appeals, the Third Circuit Court of Appeals, the Fourth Circuit Court of Appeals, Eleventh Circuit Court of Appeals and the U.S. Court of Federal Claims as well as various jurisdictions across the country for specific cases.

**E. Michelle Drake – Shareholder**
E. Michelle Drake is a Shareholder in the Firm's Minneapolis office. With career settlements and verdicts valued at more than $150 million, Michelle has had great success at a young age and in a wide variety of cases.

Michelle focuses her practice primarily on consumer protection, improper credit reporting, and financial services class actions. Michelle is empathetic towards her clients and unyielding in her desire to win. Possessing a rare combination of an elite academic pedigree and real-world trial skills, Michelle has successfully gone toe-to-toe with some of the world's most powerful companies.

Michelle helped achieve one of the largest class action settlements in a case involving improper mortgage servicing practices associated with force-placed insurance, resulting in a settlement valued at $110 million for a nationwide class of borrowers who were improperly force-placed with overpriced insurance. Michelle also served as liaison counsel and part of the Plaintiffs' Steering Committee on behalf of consumers harmed in the Target data breach, a case she helped successfully resolve on behalf of over ninety million consumers whose data was affected by the breach. In 2015, Michelle resolved a federal class action on behalf of a group of adult entertainers in New York for $15 million. Most recently, Michelle has been successful in litigating numerous cases protecting consumers' federal privacy rights under the Fair Credit Reporting Act, securing

settlements valued at over $10 million on behalf of tens of thousands of consumers harmed by improper background checks and inaccurate credit reports in the last two years alone.

Michelle was admitted to the bar in 2001 and has since served as lead class counsel in over fifty class and collective actions alleging violations of the Fair Credit Reporting Act, the Fair Debt Collection Practices Act, the Fair Labor Standards Act, various states' unfair and deceptive trade practices acts, breach of contract and numerous other pro-consumer and pro-employee causes of action.

Michelle serves on the Board of the National Association of Consumer Advocates, is a member of the Partner's Council of the National Consumer Law Center, and is an At-Large Council Member for the Consumer Litigation Section for the Minnesota State Bar Association. She was named as a Super Lawyer in 2013-2018 and was named as a Rising Star prior to that. Michelle was also appointed to the Federal Practice Committee in 2010 by the United States District Court for the District of Minnesota. She has been quoted in the New York Times and the National Law Journal, and her cases were named as "Lawsuits of the Year" by Minnesota Law & Politics in both 2008 and 2009.

Michelle began her practice of law by defending high stakes criminal cases as a public defender in Atlanta. Michelle has never lost her desire to litigate on the side of the "little guy."

**Candice J. Enders – Shareholder**
Candice J. Enders is a Shareholder in the Antitrust practice group.  She concentrates her practice in complex antitrust litigation.

Her significant involvements include *In re Microcrystalline Cellulose Antitrust Litigation* (E.D. Pa.) ($50 million settlement achieved shortly before trial); *In re Methyl Methacrylate (MMA) Antitrust Litigation* (E.D. Pa.) ($15.1 million settlement); *In re Chocolate Confectionary Antitrust Litigation*; *In re TFT LCD (Flat Panel) Antitrust Litigation* (N.D. Cal.); and *In re Cathode Ray Tube (CRT) Antitrust Litigation* (N.D. Cal.).

While in law school, Ms. Enders served as a senior editor on the Journal of Labor and Employment Law, volunteered as a legal advocate at the Custody and Support Assistance Clinic, and interned at Philadelphia City Council.

**Michael T. Fantini – Shareholder**
Michael T. Fantini is a Shareholder in the Consumer Protection and Commercial Litigation practice groups. Mr. Fantini concentrates his practice on consumer class action litigation.

Mr. Fantini has considerable experience in notable consumer cases such as: *In re TJX Companies Retail Security Breach Litigation*, Master Docket No. 07-10162 (D. Mass) (class action brought on behalf of persons whose personal and financial data were compromised in the largest computer theft of personal data in history - settled for various benefits valued at over $200 million); *In re Educational Testing Service Praxis Principles of Learning and Teaching: Grade 7-*

*12 Litigation*, MDL No. 1643 (E.D. La. 2006) (settlement of $11.1 million on behalf of persons who were incorrectly scored on a teachers' licensing exam); *Block v. McDonald's Corporation*, No: 01CH9137 (Cir. Ct. Of Cook County, Ill.) (settlement of $12.5 million where McDonald's failed to disclose beef fat in french fries); *Fitz, Inc. v. Ralph Wilson Plastics Co.*, No. 1-94-CV-06017 (D. N.J.) (claims-made settlement whereby fabricators fully recovered their losses resulting from defective contact adhesives); *Parker v. American Isuzu Motors, Inc.*; No: 3476 (CCP, Philadelphia County) (claims-made settlement whereby class members recovered $500 each for their economic damages caused by faulty brakes); *Crawford v. Philadelphia Hotel Operating Co.*, No: 04030070 (CCP Phila. Cty. 2005) (claims-made settlement whereby persons with food poisoning recovered $1,500 each); *Melfi v. The Coca-Cola Company* (settlement reached in case involving alleged misleading advertising of Enviga drink); *Vaughn v. L.A. Fitness International LLC*, No. 10-cv-2326 (E.D. Pa.) (claims made settlement in class action relating to failure to cancel gym memberships and improper billing); *In re Chickie's & Pete's Wage and Hour Litigation*, Master File No. 12-cv-6820 (E.D. Pa.) (settled class action relating to failure to pay proper wage and overtime under FLSA).

Notable security fraud cases in which Mr. Fantini was principally involved include: *In re PSINet Securities Litigation*, No: 00-1850-A (E.D. Va.) (settlement in excess of $17 million); *Ahearn v. Credit Suisse First Boston, LLC*, No: 03-10956 (D. Mass.) (settlement of $8 million); and *In re Nesco Securities Litigation*, 4:0l-CV-0827 (N.D. Okla.).

Mr. Fantini has represented the City of Chicago in an action against certain online travel companies, such as Expedia, Hotels.com, and others, for their alleged failure to pay hotel taxes. He also represented the City of Philadelphia in a similar matter.

Prior to joining the Firm, Mr. Fantini was a litigation associate with Dechert LLP. At George Washington University Law School, he was a member of the Moot Court Board. In 2017 and 2018, Mr. Fantini was named a Pennsylvania Super Lawyer by Thomson Reuters.

### Ruthanne Gordon – Chief Administrative Officer & Shareholder

Ms. Gordon is a Shareholder in the Antitrust practice group and serves as the Firm's Chief Administrative Officer. In the last few years alone, Ms. Gordon has served as one of the lead lawyers in antitrust class actions resulting in recoveries of hundreds of millions of dollars for the class members she has represented.

Ms. Gordon has played a lead role in litigation involving a wide range of industries, including the credit card industry, chemical products industries, the real estate industry, the computer industry, the public utility industry, the environmental services industry, the tobacco industry, the biotechnology industry and the healthcare industry, among others.

In addition, she represented a class of Pennsylvania inmates in a federal civil rights class action, resulting in the establishment of a statewide treatment program for Pennsylvania inmates suffering from post-traumatic stress disorder as a result of their service in the Vietnam war.

Ms. Gordon has argued issues of the first impression before the Second Circuit Court of Appeals, in *Ross v. American Express Company* (concerning standing to invoke the interlocutory appeal provision of Section 16 of the Federal Arbitration Act, in a case alleging a horizontal price-fixing conspiracy) and before the New Jersey Supreme Court, in *In re PSE&G Derivative Litigation* (concerning the standard for excusal of demand in a duty of care case).

As a member of the Antitrust Law Section of the American Bar Association, Ms. Gordon has served as a panelist at the American Bar Association's Antitrust Law Spring Meeting, where she addressed the key issues that arise in the prosecution and defense of an antitrust class action lawsuit.

**Shauna Itri – Shareholder**

Shauna Itri concentrates her practice on complex litigation, specifically representing whistleblowers in *qui tam* or False Claims Act lawsuits in state and federal courts throughout the United States and tax and securities whistleblowers with claims under the IRS and SEC whistleblower programs.

Ms. Itri has worked on a series of False Claims Act cases against large drug companies for fraudulent Medicare and Medicaid drug pricing. This litigation has returned well over $3 billion to state and federal governments pursuant to the Federal and State False Claims Acts, including a $150 million settlement with GlaxoSmithKline PLC, a $190 million settlement with Aventis Pharmaceuticals, Inc., and a $280 million settlement in *United States of America ex rel Ven-A-Care of the Florida Keys, Inc. v. Boehringer Ingelheim Corp., et al.* (Civil Action No. 07-10248, D. Mass.). In addition to representing whistleblowers in False Claims Act cases, Ms. Itri has experience representing whistleblowers both in cases involving claims brought under whistleblower reward programs with the Internal Revenue Service, and the U.S. Securities and Exchange Commission, including Foreign Corrupt Practices Act violations.

Ms. Itri also represents shareholders in securities class action cases, assisting in litigation that recovered millions of dollars in settlements including *In re Adams Golf Securities Litigation*, Civ. Action No. 99-371 (D. Del. 1999) (settled for approximately $17 million); *In re American Business Financial Services, Inc. Noteholders Litigation*, No. 05-232 (E.D. Pa.)(settled for approximately $17 million); and *Mazur v. Concord Camera et al.*, Case No. 04-61159 (S.D. Fla. 2004) (settled for approximately $2 million).

Ms. Itri received a B.A. and an M.A. from Stanford University. While attending Stanford University, Ms. Itri captained the Stanford University Women's Soccer Team, was on the Scholar-Athlete and Honor Roll and served on the Women's Soccer Pacific Ten Conference All-Academic Team. Ms. Itri earned her Juris Doctor from the Villanova University School of Law where she was Editor-in-Chief of the Villanova Law School Sports & Entertainment Law Journal.

Ms. Itri is presently an adjunct professor at Villanova University, teaching a white-collar crime and corporate deviance course and at Widener University School of Law teaching a corporate

deviance course. Shauna speaks on various topics regarding whistleblower laws, including the following national conferences:

- American Bar Association Section of Litigation Annual Conference in Chicago (April 2013)
- Association of Clinical Research Professionals (ACRP) Global Conference, Fraud Enforcement in Clinical Research under the False Claims Act, April 26, 2014, in San Antonio, Texas
- Moderator for Panel entitled "Basics of Litigating Under The False Claims Act," at the National Employment Lawyer Association's 2013 Fall Seminar entitled Shining The Light On Whistleblower & Retaliation Claims, in Washington, DC on October 18, 2013
- SOCRA, Society of Clinical Research Associates 24th Annual Conference in Denver, Co., September 2015)

Ms. Itri was named a "2013 Lawyer on the Fast Track" by *The Legal Intelligencer* and a "Pennsylvania Super Lawyer Rising Star" in 2010 through 2016 by *Philadelphia Magazine* after an extensive nomination and polling process among Pennsylvania lawyers. She was placed on Philadelphia's First Judicial District's 2010 and 2011 Roll of Honor for Pro Bono Service for her service in the community, including acting as a volunteer attorney for the Education Law Center, Veterans Pro Bono Consortium, Philadelphia VIP Mortgage Foreclosure Program, the Homeless Advocacy Project, and HIAS.

Ms. Itri is currently the President-Elect and a Board Member of the Junior League of Philadelphia, an organization consisting of approximately 900 women committed to promoting voluntarism, developing the potential of women, and improving the community through effective action and leadership of trained volunteers.

Ms. Itri is licensed to practice in Pennsylvania and New Jersey and admitted to practice before the U.S. District Court for the Eastern District of Pennsylvania and U.S. District Court for the District of New Jersey.

**Peter R. Kahana – Shareholder**

Peter R. Kahana is a Shareholder in the Insurance and Antitrust practice groups. He concentrates his practice in complex civil and class action litigation involving relief for insurance policyholders and consumers of other types of products or services who have been victimized by fraudulent conduct and unfair business practices.

Significant class cases vindicating the rights of insurance policyholders or consumers in which Mr. Kahana was appointed as co-class counsel have included: settlement in 2012 for $90 million of breach of fiduciary duty and negligence claims (certified for trial in 2009) on behalf of a class of former policyholder-members of Anthem Insurance Companies, Inc. ("Anthem") alleging the class was paid insufficient cash compensation in connection with Anthem's conversion from a mutual insurance company to a publicly-owned stock insurance company (a process known as "demutualization") (*Ormond v. Anthem, Inc., et al.*, USDC, S.D. Ind., Case No. 1:05-cv-01908 (S.D. Ind. 2012)); settlement in 2010 for $72.5 million of a nationwide civil RICO and fraud class

action (certified for trial in 2009) against The Hartford and its affiliates on behalf of a class of personal injury and workers compensation claimants for the Hartford's alleged deceptive business practices in settling these injury claims for Hartford insureds with the use of structured settlements (*Spencer, et al. v. The Hartford Financial Services Group, Inc., et al.*, 256 F.R.D. 284 (D. Conn. 2009)); settlement in 2009 for $75 million of breach of contract, Unfair Trade Practices Act and insurance bad faith tort claims on behalf of a class of West Virginia automobile policyholders (certified for trial in 2007) alleging that Nationwide Mutual Insurance Company failed to properly offer and provide them with state-required optional levels of uninsured and underinsured motorist coverage (*Nationwide Mutual Insurance Company v. O'Dell, et al.*, Circuit Court of Roane County, W. Va., Civ. Action No. 00-C-37); and, settlement in 2004 for $20 million on behalf of a class of cancer victims alleging that their insurer refused to pay for health insurance benefits for chemotherapy and radiation treatment (*Bergonzi v. CSO, USDC, D.S.D.*, Case No. C2-4096). For his efforts in regard to the Bergonzi matter, Mr. Kahana was named as the recipient of the American Association for Justice's Steven J. Sharp Public Service Award, which is presented annually to those attorneys whose cases tell the story of American civil justice and help educate state and national policymakers and the public about the importance of consumers' rights.

Mr. Kahana has also played a leading role in major antitrust and environmental litigation, including cases such as *In re Brand Name Prescription Drugs Antitrust Litigation* ($723 million settlement), *In re Ashland Oil Spill Litigation* ($30 million settlement), and *In re Exxon Valdez* ($287 million compensatory damage award and $507.5 million punitive damage award). In connection with his work as a member of the trial team that prosecuted *In re The Exxon Valdez*, Mr. Kahana was selected in 1995 to share the Trial Lawyer of the Year Award by the Public Justice Foundation.

**Michael J. Kane – Shareholder**
Michael J. Kane, a Shareholder of the Firm, is a graduate of Rutgers University and Ohio Northern University School of Law, with distinction, where he was a member of the Law Review. Mr. Kane is admitted to practice in Pennsylvania and various federal courts.

Mr. Kane joined the antitrust practice in 2005. Prior to joining the Firm, Mr. Kane was affiliated with Mager, White & Goldstein, LLP where he represented clients in complex commercial litigation involving alleged unlawful business practices including: violations of federal and state antitrust and securities laws, breach of contract and other unfair and deceptive trade practices. Mr. Kane has extensive experience working with experts on economic issues in antitrust cases, including impact and damages. Mr. Kane has served in prominent roles in high profile antitrust, securities, and unfair trade practice cases filed in courts around the country.

Currently, Mr. Kane is one the lead attorneys actively litigating and participating in all aspects of the *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, MDL No. 1720 (E.D.N.Y.) alleging, *inter alia*, that certain of Visa and MasterCard rules, including anti-steering restraints and default interchange fees, working in tandem have caused artificially inflated interchange fees paid by Merchants on credit and debit card transactions. After over a decade of litigation, a settlement of as much as $6.24 billion and no less than $5.54 billion was preliminary

approved in January 2019. He is also one of the lead counsel in *Contant, et al. v. Bank of America Corp., et al.*, 1:17-cv-03139-LGS (S.D.N.Y.) alleging a conspiracy among horizontal competitors to fix the prices of foreign currencies and certain foreign currency instruments to recover damages caused by defendants on behalf of plaintiffs and members of a proposed class of indirect purchasers of FX instruments from defendants.

Mr. Kane was also one of the lead lawyers in *Castro v. Sanofi Pasteur, Inc.*, No. 2:11-cv-07178-JMV-MAH (D.N.J.), a certified class action of over 26,000 physician practices, other healthcare providers, and vaccine distributors direct purchasers, alleging that defendant Sanofi engaged in anticompetitive conduct to maintain its monopoly in the market for MCV4 vaccines resulting in artificially inflated prices for Sanofi's MCV4 vaccine Menactra and the MCV4 vaccine Menveo. In October 2017 the court granted final approval the $61.5 million settlement.

Mr. Kane also had a leading role in *Ross v. American Express Company* (S.D.N.Y.) ($49.5 million settlement achieved after more than 7 years of litigation and after summary judgment was denied). In the related matter *Ross v. Bank of America* (S.D.N.Y.) involving claims that the defendant banks and American Express unlawfully acted in concert to require cardholders to arbitrate disputes, including debt collections, and to preclude cardholders from participating in any class actions, Mr. Kane was one of the primary trial counsel in the five week bench trial. Mr. Kane also has had a prominent role in several antitrust cases against pharmaceutical companies challenging so-called pay for delay agreements wherein the brand drug company allegedly seeks to delay competition from generic equivalents to the brand drug through payments by the brand drug company to the generic drug company. Mr. Kane served as co-lead counsel in *In re Microsoft Corporation Massachusetts Consumer Protection Litigation* (Mass. Super. Ct., Middlesex Cty.), in which plaintiffs alleged that as a result of Microsoft Corporation's anticompetitive practices, Massachusetts consumers paid more than they should have for Microsoft's operating systems and software. The case was settled for $34 million. Other cases in which Mr. Kane has had a prominent role include: *In re Currency Conversion Fee Antitrust Litig.* (S.D.N.Y.) (settlement for $336 million and injunctive relief); *In re Nasdaq Market Makers Antitrust Litig.* (S.D.N.Y); *In re Compact Disc Antitrust Litig.* (C.D. Cal.); *In re WorldCom, Inc. Securities Litig.* (S.D.N.Y); *In re Lucent Technologies, Inc. Securities Litig.* (D.N.J.); *City Closets LLC v. Self Storage Assoc., Inc.* (S.D.N.Y.); *Rolite, Inc. v. Wheelabrator Environmental Sys. Inc.*, (E.D. Pa.); and *Amin v. Warren Hospital* (N.J. Super.).

### Jon J. Lambiras – Shareholder

Jon J. Lambiras, Esq., CPA, CFE is a Shareholder in the Securities and Consumer Protection practice groups. Since joining the Firm in 2003, he has practiced primarily in the areas of securities fraud, consumer fraud, and data breach class actions.

In the Securities group, he concentrates on class action and opt-out litigation involving accounting fraud and financial misrepresentations made to investors. In the Consumer Protection group, he concentrates on unfair business practices and data breach litigation involving the theft of personal information by computer hackers. He has also litigated Antitrust pay-for-delay matters involving drug manufacturers wrongly keeping generic drugs off the market.

Jon's clients are plaintiffs such as individual investors, institutional investors, and consumers. He strives to provide a smooth, comfortable litigation experience for his clients. He welcomes inquiries from potential clients and referring counsel regarding new matters. Fees in his cases are generally earned on a contingent basis, meaning clients do not pay out-of-pocket attorneys' fees.

Jon is an attorney, Certified Public Accountant, and Certified Fraud Examiner. Prior to law school, he practiced accounting for four years as a financial statement auditor, including with a Big-Four accounting firm.

Jon has obtained the highest peer review rating, "AV Preeminent," in Martindale-Hubbell for his legal abilities and ethical standards. Also, for several years from 2012 to the present, he was selected for inclusion in "Pennsylvania Super Lawyers" or "Rising Stars," an honor conferred on less than 5% of attorneys in Pennsylvania.

Jon has published numerous articles and lectured on various class action topics, as summarized below. He has also commented on class action issues for publications such as The Washington Post and The Legal Intelligencer, among others. The cases on which he worked have collectively settled for hundreds of millions of dollars.

While in law school, Jon was a Lead Articles Editor for the Pepperdine Law Review.

Jon's speaking engagements include the following:

- "Securities Fraud Class Actions: A Primer for Certified Fraud Examiners," 2018, presented to the Association of Certified Fraud Examiners
- "Securities Fraud Class Actions: A Bird's Eye View," 2017, presented to the Delaware County Bar Association
- "Securities Fraud Class Actions: A Bird's Eye View for Attorney-CPAs," 2017, presented to the Philadelphia Chapter of the American Association of Attorney-CPAs
- "How the CFO Landed in Prison: The Nuts & Bolts of His Fraud," 2012, presented to the Phila. Chap. of the Am. Assoc. of Attorney-CPAs
- "State of the Cyber Nation Address," 2011, presented at HB Litigation/NetDiligence Cyber Risk & Privacy Forum
- "Data Breach Class Actions Involving Theft of Personal Information," 2009, presented to the Phila. Chap. of the Am. Assoc. of Attorney-CPAs
- "Class Actions Involving Estate Planning, Financial Planning, Trusts, and Income Tax," 2009, presented to the Phila. Chap. of the Am. Assoc. of Attorney-CPAs
- "Securities Fraud Class Actions: Comparing and Contrasting the Plaintiffs' and Defendants' View," 2007, presented to the Phila. Chap. of the Am. Assoc. of Attorney-CPAs
- "Securities Fraud Class Actions: A Primer for the Attorney-CPA," 2006-08, presented to the Phila. Chap. of the Am. Assoc. of Attorney-CPAs

**Eric Lechtzin – Shareholder**
Eric Lechtzin is a Shareholder in the Firm's Securities, Consumer Protection, ERISA and Employment & Unpaid Wages Litigation practice groups.

Mr. Lechtzin has been instrumental in helping the Firm secure leadership positions and obtain settlements in national securities fraud class actions, including *In re: Oppenheimer Rochester Funds Group Securities Litigation*, No. 09-md-02063-JLK (D. Col.) ($89.5 million settlement); *In re Hemispherx Biopharma, Inc. Litigation*, 09-cv-5262-PD (E.D. Pa. 2010) ($3.6 million settlement); *Beckman Coulter, Inc. Securities Litigation*, No. 8:10-cv-1327 (C.D. Cal. 2011) ($5.5 million settlement).

Among his successful representations in the area of consumer fraud is *Silver v. Fitness Intern., LLC*, No. 10-cv-2326-MMB, 2013 WL 5429293 (E.D. Pa.), a class action against a national health club chain that resulted in substantial changes of its cancellation policies and practices.

Mr. Lechtzin is the Pennsylvania State Chair for the National Association of Consumer Advocates. He has been named a "Super Lawyer" in Pennsylvania for Class and Mass Tort Litigation, and is AV Preeminent rated by Martindale Hubble.

**Lawrence J. Lederer – Shareholder**
Lawrence J. Lederer is a Shareholder in the Firm's Securities and Commercial Litigation practice groups. He has extensive experience representing and advising institutional investors in securities litigation. He has led the prosecution of many securities class action cases that have resulted in substantial recoveries for investors.

For example, he was co-lead counsel for the State Teachers Retirement System of Ohio which, in August 2009, obtained $475 million in *In re Merrill Lynch & Co., Inc. Securities, Derivative and ERISA Litigation*, Master File No. 07-cv-9633 (JSR) (DFE) (S.D.N.Y.). This securities class action involved Merrill Lynch's financial exposures to collateralized debt obligations and other financial instruments linked to subprime mortgages. It represents one of the largest recoveries ever under the Private Securities Litigation Reform Act. During a hearing on July 27, 2009, Judge Jed S. Rakoff stated that the lead plaintiff had made "very full and well-crafted" and "excellent submissions"; that there was a "very fine job done by plaintiffs' counsel in this case"; and that the attorney fees requested were "eminently reasonable" and "appropriately modest."

Mr. Lederer presently is, or recently was, also involved in many individual "opt-out" securities cases such as *Commonwealth of Pennsylvania Public School Employees' Ret. Sys. v. Citigroup, Inc.*, No. 11-2583, 2011 U.S. Dist. LEXIS 55829 (E.D. Pa. May 20, 2011); *State of New Jersey, Department of Treasury, Division of Investment v. Fuld*, 604 F.3d 816 (3d Cir. 2010); *Commonwealth of Pennsylvania Public School Employees' Ret. Sys. v. Time Warner Inc.*, Case No. 002103, July Term 2003 (Pa. Common Pleas Ct., Phila. Cty.); *In re Waste Management, Inc. Securities Litigation*, 194 F. Supp. 2d 590 (S.D. Tex. 2002); and *Kelly v. McKesson HBOC, Inc.*, C.A. No. 99C-09-265 WCC, 2002 Del. Super. LEXIS 39 (Del. Super. Jan.

17, 2002).  The investor plaintiffs in each of these cases obtained recoveries significantly larger than what they would have obtained from the related class actions.

Mr. Lederer also advises and represents government entities in commercial and other matters.  For example, he was part of a team of outside counsel for one state Attorney General's office in multi-state civil enforcement proceedings that resulted in landmark mortgage modifications and related relief for hundreds of thousands of borrowers nationwide against Countrywide Financial Corp. (and its parent, Bank of America Corp.) in December 2008 valued at approximately $8.6 billion; has advised public pension funds on a wide array of corporate governance and shareholder rights issues; and has advised state government entities concerning financial practices in the structured finance sector, among other areas.

Earlier in his career, Mr. Lederer played a major role in the historic Drexel/Milken/Boesky complex of cases.  See, e.g., *In re Michael R. Milken and Associates Securities Litigation*, MDL Dkt. No. 924, Master File No. M21-62 (MP), 1993 U.S. Dist. LEXIS 14242, 1993 WL 413673 (S.D.N.Y. Oct. 7, 1993) (approving approximately $1.3 billion overall settlement with Michael R. Milken and some 500 other persons and entities); *In re Drexel Burnham Lambert Group Inc.*, 995 F.2d 1138 (2d Cir. 1993) (affirming $1.3 billion settlement); Presidential Life Insurance Co. v. Milken, et al., 946 F. Supp. 267 (S.D.N.Y. 1996) (approving $50 million settlement against some 500 defendants); In re Ivan F. Boesky Securities Litigation, 948 F.2d 1358 (2d Cir. 1991) (affirming approval of settlements totaling approximately $29 million; subsequent class, derivative, and other settlements approved totaling in excess of $200 million).

Also experienced on the defense side, Mr. Lederer helped obtain a pre-trial dismissal of a securities class action against DRDGold, a gold mining company based in South Africa.  See In re DRDGold Ltd. Securities Litigation, 05-cv-5542 (VM), 2007 U.S. Dist. LEXIS 7180 (S.D.N.Y. Jan. 31, 2007).  He also helped defend an individual charged with "insider trading" in a criminal jury trial in federal court, and in parallel civil enforcement proceedings brought by the SEC.  United States v. Pileggi, No. 97-cr-612-2, 1998 U.S. Dist. LEXIS 8068 (E.D. Pa. June 3, 1998), aff'd, No. 98-1811, 1999 U.S. App. LEXIS 18592 (3d Cir. July 22, 1999).

In bankruptcy litigation, Mr. Lederer helped obtain hundreds of millions of dollars for investors in the complex Chapter 11 proceedings involving Drexel Burnham Lambert, including through appeals before the United States Court of Appeals for the Second Circuit and the United States Supreme Court.  See, e.g., *In re The Drexel Burnham Lambert Group, Inc.*, 130 B.R. 910 (Bankr. & S.D.N.Y. Aug. 20, 1991), aff'd, 960 F.2d 285 (2d Cir. 1992), cert. denied, 506 U.S. 1088 (1993).  See also *Sapir, et al. v. Delphi Ventures, et al.*, No. 99-cv-8086-JORDAN (S.D. Fla.) (recovery of $3.8 million following extensive bankruptcy and related proceedings).

Mr. Lederer has achieved the highest peer-review rating, "AV," in Martindale-Hubbell for legal abilities and ethical standards; has repeatedly been selected as one of Pennsylvania's "Super Lawyers" in the category of securities litigation, and has served on the editorial advisory board of Securities *Law360*.  Mr. Lederer is admitted to practice law in Pennsylvania, the District of Columbia, and several federal courts.  Mr. Lederer graduated from Georgetown University Law

Center (LL.M. 1988), Western New England College School of Law (J.D. 1987), where he was a member of Western New England Law Review, and the University of Pittsburgh (B.A. 1984), where he was managing editor of The Pitt News, and co-captain (1983) and captain (1984) of the men's varsity tennis team.

**Daniel R. Miller – Shareholder**

Daniel R. Miller's practice is exclusively devoted to representing whistleblowers in state and federal False Claim Act cases, and in actions filed with the IRS, SEC, and CFTC. Mr. Miller has extensive experience litigating *qui tam* cases across the country.

Prior to joining the Firm, Mr. Miller was a Deputy Attorney General for the Delaware Department of Justice for more than 16 years. He is battle-tested, having tried more than 125 cases to jury verdict.

Over the past fifteen years, Mr. Miller has served on dozens of litigation and negotiation teams in nationwide *qui tam* cases. Collectively, those cases have returned more than $3.5 billion to state and federal treasuries.

Whistleblower ("*Qui Tam*") cases are complex matters which often require extensive communication and coordination with the United States Department of Justice, local United States Attorneys' Offices, all 50 state Attorneys General Offices, the Federal Bureau of Investigation, the Food and Drug Administration, the Securities and Exchange Commission, the Office of Inspector General, the Internal Revenue Service, and numerous other federal and state agencies. Now in private practice, Mr. Miller is able to provide his clients with extensive trial experience, deep insight into the personnel, structure, and function of these government entities, and a thorough understanding of the investigative sequences utilized by the prosecutors who lead these cases.

Mr. Miller is a former President of the National Association of Medicaid Fraud Control Units ("NAMFCU"), an organization whose members were responsible for securing more than 1,300 criminal convictions and returning more than $1.3 billion to the Medicaid Program during Mr. Miller's term. As a member of NAMFCU's Global Case Committee, Mr. Miller routinely worked on large-scale fraud cases. Prior to serving as NAMFCU's President, Mr. Miller was the co-chair of NAMFCU's *Qui Tam* Subcommittee where he coordinated communications and litigation positions for all states which have enacted False Claims Acts.

From 2003 through early 2010, Mr. Miller also served as the Director of the Medicaid Fraud Control Unit in the Delaware Department of Justice. In that capacity, he coordinated the investigation and prosecution of health care provider fraud – including cases involving physician groups, pharmaceutical companies, nursing homes, and hospitals – with local, state, and federal authorities. These multi-disciplinary teams of government lawyers, investigators, and data analysts returned hundreds of millions of dollars to state and federal governments.

Prior to serving as Director of the Medicaid Fraud Unit, Mr. Miller was a Deputy Attorney General in the Criminal Division of the Delaware Department of Justice. During that time he managed a large caseload and prosecuted hundreds of violent offenders.

Before becoming a prosecutor, Mr. Miller served as a judicial clerk for Delaware Superior Court Judge Susan C. Del Pesco.

Mr. Miller graduated with honors from Temple University Law School in 1992.

### Ellen T. Noteware – Shareholder

Since joining the Firm, Ms. Noteware has successfully represented investors, retirement plan participants, employees, consumers and direct purchasers of prescription drug products in a variety of class action cases.  Ms. Noteware currently concentrates her practice on prosecuting antitrust class actions on behalf of direct purchasers of brand name drugs who are harmed when brand companies block cheaper generic competitors from entering the market.  To date, five of her cases have resulted in substantial settlements: *In re Ovcon Antitrust Litigation*, (D.D.C.) $22 million; *In re Tricor Direct Purchaser Antitrust Litigation*, (D. Del.) $250 million; *In re Oxycontin Antitrust Litig.*, (S.D.N.Y.) $16 million; *Meijer, Inc. v. Abbott Laboratories*, (N.D. Cal.) (Norvir) $52 million; and *In re Metoprolol Succinate Direct Purchaser Antitrust Litigation*, (D. Del.) $20 million.

Ms. Noteware is also extensively involved in litigation Employee Retirement Income Securities Act ("ERISA") breach of fiduciary duty class action cases.  Her ERISA settlements include: *In re Nortel Networks Corp. ERISA Litigation* (M.D. Tenn.) $21 million; *In re Lucent Technologies, Inc. ERISA Litigation* (D.N.J.) $69 million; *In re SPX Corporation ERISA Litigation* (W.D. N.C.) $3.6 million.  Ms. Noteware is currently actively litigating two ERISA cases against financial institutions who operated improper securities lending programs.

As a key member of the trial team that litigated *Cook v. Rockwell Corp.* (D. Colo.), Ms. Noteware helped secure the largest jury verdict in Colorado history and the third largest jury trial verdict nationwide in 2006 -- $554 million on behalf of thousands of individuals who owned property near the contaminated former Rocky Flats nuclear weapons facility outside Denver, Colorado.  Ms. Noteware and the rest of the trial team received the Trial Lawyer of the Year Award from the Public Justice Foundation in recognition of the efforts.

Ms. Noteware is a graduate of Cornell University (B.S. 1989) and the University of Wisconsin-Madison Law School (J.D. *cum laude* 1993) where she won the Daniel H. Grady Prize for the highest grade point average in her class, served as Managing Editor of the Law Review, and earned Order of the Coif honors.  She is currently a member of the Pennsylvania and New York bars.

### Phyllis Maza Parker – Shareholder

Phyllis Maza Parker, a Shareholder, concentrates her practice primarily on complex securities class action litigation, representing both individual and institutional investors.  Her practice also includes commercial litigation.

Ms. Parker served on the team as co-lead counsel for the Class in *In re Xcel Energy, Inc. Securities Litigation* (D. Minn.). The case, which settled for $80 million, was listed among the 100 largest securities class action settlements in the United States since the enactment of the 1933-1934 Securities Acts. Among other cases, she has also served as co-lead counsel in *In re Reliance Group Holdings, Inc. Securities Litigation* ($15 million settlement); *In re The Loewen Group, Inc. Securities Litigation* ($6 million settlement); as lead counsel in *In re Veeco Instruments Inc. Securities Litigation* ($5.5 million settlement on the eve of trial); as co-lead counsel in *In re Nuvelo, Inc. Securities Litigation* ($8.9 million settlement); and, most recently, as co-lead counsel in *Coady v. Perry, et al.* (IndyMac Bancorp, Inc.) ($6.5 million settlement).

While studying for her J.D. at Temple, Ms. Parker was a member of the Temple Law Review. She published a Note on the subject of the Federal Sentencing Guidelines in the Temple Law Review, Vol. 67, No. 4, 1994, which has been cited by a court and in a law review article. After her first year of law school, Ms. Parker interned with the Honorable Dolores K. Sloviter of the United States Court of Appeals for the Third Circuit.

Ms. Parker is fluent in Hebrew and French.

### Russell D. Paul – Shareholder

Russell Paul is a Shareholder in the Securities, Consumer Protection, *Qui Tam*/Whistleblower, Corporate Governance/Shareholder Rights and Commercial Litigation practice groups. He concentrates his practice on securities class actions and derivative suits, complex securities, and commercial litigation matters, False Claims Act suits and consumer class actions.

Mr. Paul has litigated securities class actions against Tyco International Ltd., Baxter Healthcare Corp., ALSTOM S.A., Able Laboratories, Inc., Refco Inc., Toll Brothers and the Federal National Mortgage Association (Fannie Mae). He has also litigated derivative actions in various state courts around the country, including in the Delaware Court of Chancery. He has litigated consumer protection and product defect actions in the automotive, pet food, soft drink, and home products industries. Mr. Paul has also briefed and argued several federal appeals.

In addition to securities litigation, Mr. Paul has broad corporate law experience, including mergers and acquisitions, venture capital financing, proxy contests, and general corporate matters. He began his legal career in the New York office of Skadden, Arps, Slate, Meagher & Flom.

Mr. Paul has been designated a "Pennsylvania Super Lawyer" and a "Top Attorney in Pennsylvania."

Mr. Paul graduated from the Columbia University School of Law (J.D. 1989) where he was a Harlan Fiske Stone Scholar, served on the Moot Court Review Board, was an editor of Pegasus (the law school's catalog) and interned at the United States Attorneys' Office for the Southern District of New York. He completed his undergraduate studies at the University of Pennsylvania, earning a B.S. in Economics from the Wharton School (1986) and a B.A. in History from the College of Arts and Sciences (1986). He was elected to the Beta Gamma Sigma Honors Society.

**Barbara A. Podell – Shareholder**

Barbara A. Podell is a Shareholder in the Securities practice group. She concentrates her practice on securities class action litigation.

Ms. Podell was one of the Firm's senior attorneys representing the Pennsylvania State Employees' Retirement System ("SERS") as the lead plaintiff in the *In re CIGNA Corp. Sec. Litig.*, No. 02-CV-8088 (E.D. Pa.), a federal securities fraud class action in which SERS moved for, and was appointed, lead plaintiff. CIGNA allegedly concealed crucial operational problems, which, once revealed, caused the company's stock price to fall precipitously. The Firm obtained a $93 million settlement. This was a remarkable recovery because there were no accounting restatements, government investigations, typical indicators of financial fraud, or insider trading. Moreover, the case was settled on the eve of trial (22.7% of losses recovered).

Before joining the Firm, Ms. Podell was a founding member of Savett Frutkin Podell & Ryan, P.C., and before that, a shareholder at Kohn, Savett, Klein & Graf and an associate at Dechert LLP, all in Philadelphia.

**Sarah R. Schalman-Bergen – Shareholder**

Sarah R. Schalman-Bergen is a Shareholder at the Firm. She Co-Chairs the Firm's Employment Law Department and is a member of the Firm's Antitrust, Insurance Products & Financial Services, and Lending Practices & Borrowers' Rights Departments. She is also a member of the Firm's Hiring Committee, Associate Development Committee and Pro Bono Committee.

Ms. Schalman-Bergen represents employees who are not being paid properly in class and collective action wage and hour employment cases as well as in class action discrimination cases across the country. Specifically, Ms. Schalman-Bergen has served as lead counsel in dozens of wage theft lawsuits, representing employees in a variety of industries, including at meat and poultry plants, at fast food restaurants, in the oil and gas industry, in white collar jobs and in the government.

Ms. Schalman-Bergen also serves as counsel to employees, consumers and businesses in antitrust cases, including representing the employees of several high tech companies who alleged that the companies entered into "do not poach" agreements that illegally suppressed employees' wages. Ms. Schalman-Bergen has represented homeowners whose mortgage loan servicers have force-placed extraordinarily high-priced insurance on them. She currently represents several cities in lawsuits against major banks for allegedly discriminatory practices in violation of the Fair Housing Act.

Ms. Schalman-Bergen maintains an active pro bono practice. She serves as volunteer of counsel to the AIDS Law Project of Pennsylvania. Through her role there, Ms. Schalman-Bergen litigates HIV discrimination and confidentiality cases, as well as other cases impacting the rights of people living with HIV/AIDS.

Prior to joining the Firm, Ms. Schalman-Bergen practiced in the litigation department at a large Philadelphia firm where she represented clients in a variety of industries in complex commercial litigation. During law school, Ms. Schalman-Bergen served as an executive editor for the Harvard Civil Rights-Civil Liberties Law Review.

**Martin I. Twersky – Shareholder**

Martin I. Twersky is a Shareholder in the Antitrust Department.  He has considerable experience in litigation involving a wide range of industries including oil and gas, banking, airline, waste hauling, agricultural chemicals and other regulated industries.  For more than 30 years, Mr. Twersky has successfully represented numerous plaintiffs and defendants in both individual and class actions pending in state and federal courts.

Mr. Twersky has played a leading role in the following class action cases among others: *In re Linerboard Antitrust Litigation* (E.D. Pa.) (as a member of the Executive Committee, he helped obtain settlements of more than $200 million dollars and he received specific praise from the court for co-managing the major discovery effort; see 2004 WL 1221350 at *10); *In re Graphite Antitrust Litigation* (E.D. Pa.) (settlements of more than $120 million dollars); *In re Catfish Antitrust Litigation* (N.D. Miss.) (as a member of the trial team he helped obtained settlements of more than $27 million dollars); *In re Revco Securities Litigation* (N.D. Ohio) ("Junk Bond" class action where settlements of $36 million were reached and where he received judicial praise from Senior District Court Judge William K. Thomas for the "specialized, highly competent and effective quality of the legal services."  See 1993 CCH Fed Sec. L. Rep. at Para. 97,809); *Bogosian v. Gulf Oil* (E.D. Pa.) (landmark litigation with settlements and injunctive relief on behalf of a nationwide class of gasoline dealers); and *Lease Oil Antitrust* (S.D. Tex.), where in a significant class action decision, the Fifth Circuit affirmed the granting of an injunction prohibiting settlements in related state court actions  (see 200 F.3d 317 (5th Cir. 2000), cert. denied, 530 U.S. 1263). Mr. Twersky was appointed one of the co-lead counsel in *In re Abrasive Grains Antitrust Litig.* (95-cv-7574) (W.D.N.Y.).

Mr. Twersky has also played a key role in various non-class action cases, such as *Kutner Buick v. America Motors*, 848 F.2d 614 (3rd Circuit 1989) (breach of contract) (cited in the Advisory Committee Notes to the 1991 Amendment to Rule 50, Fed. R. Civ. P.), Florham Park v. Chevron (D.N.J. 1988) (Petroleum Marketing Act case), and *Frigitemp v. IDT Corp.*, 638 F. Supp. 916 (S.D. N.Y. 1986) and 76 B.R. 275, 1987 LEXIS 6547 (S.D. N.Y. 1987) (RICO case brought by the Trustee of Frigitemp Corp. against General Dynamics and others involving extortion of kickbacks from Frigitemp officers).  Mr. Twersky also served prominently in savings-and-loan related securities and fraud litigation in federal and state courts in Florida, where the Firm represented the Resolution Trust Corporation and officers of a failed bank in complex litigation involving securities, RICO and breach of fiduciary duty claims.  E.g., *Royal Palm v. Rapaport*, Civ. No. 88-8510 (S.D. Fla.) and *Rapaport v. Burgoon*, CL-89-3748 (Palm Beach County).

# EXHIBIT B

# UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT ILLINOIS
# EASTERN DIVISION

|  |  |  |
|---|---|---|
| WINIFRED J. DAUGHERTY et al., | ) | Case No.  1:17-cv-03736 |
|  | ) |  |
| Plaintiffs, | ) |  |
|  | ) | Hon. Judge Ruben Castillo |
| v. | ) |  |
|  | ) |  |
| THE UNIVERSITY OF CHICAGO, | ) |  |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |

## FINAL APPROVAL ORDER

WHEREAS, on __9/12/18__ this Court conducted a hearing (1) to determine whether to finally certify the Monetary Relief Class[1] pursuant to Fed. R. Civ. P. 23(b)(1) and the Structural Changes Class pursuant to Fed. R. Civ. P. 23(b)(1); (2) to determine whether the terms of the Settlement Agreement and the proposed Settlement provided for therein are fair, reasonable, adequate and in the best interests of the Settlement Classes and should be approved by the Court; (3) to determine whether the proposed Plan of Allocation for distributing the Settlement proceeds among Monetary Relief Class Members should be approved by the Court; (4) to consider the applications for Attorneys' Fees and Expenses, and Case Contribution Fees; and (5) to hear and rule upon such other matters as the Court may deem appropriate (both hearings are collectively referred to as the "Final Approval Hearing");

---

[1] All capitalized terms used herein shall have the meaning ascribed to them in the Class Action Settlement Agreement and Release dated May 22, 2018 ("Settlement Agreement") entered between Plaintiffs and Defendant, the University of Chicago.  The Settlement Agreement with all exhibits thereto is being filed as an exhibit to Plaintiff's accompanying motion for preliminary approval.

1

WHEREAS, the Court was advised at the Final Approval Hearing that the Class Notice in the form approved by the Court was sent to the Settlement Classes pursuant to the terms of the Settlement Agreement and posted on the Settlement Website; and

WHEREAS, the Court, having considered all matters submitted to it at the Final Approval Hearing, including all written submissions and the arguments of counsel for the Parties and counsel for any objectors;

**NOW THEREFORE, IT IS HEREBY ORDERED:**

1.      The Settlement Agreement, including the definitions contained therein, is incorporated by reference in this Final Approval Order and Judgment.

2.      The Court has jurisdiction over Plaintiffs, all the Members of the Settlement Classes, Defendant, and the subject matter of this Action.

3.      Pursuant to Fed. R. Civ. P. 23(b)(1), the Court hereby finally certifies, for purposes of effectuating the Settlement only, a Monetary Relief Class consisting of all participants and beneficiaries of The University of Chicago Contributory Retirement Plan and The University of Chicago Retirement Income Plan for Employees from May 18, 2011 through the date of preliminary approval, excluding the Defendant or any participant who is a fiduciary to the Plans.

4.      Pursuant to Fed. R. Civ. P. 23(b)(1), the Court hereby finally certifies, for purposes of effectuating the Settlement only, a Structural Change Class consisting of all participants and beneficiaries of The University of Chicago Contributory Retirement Plan and The University of Chicago Retirement Income Plan for Employees from the date of preliminary approval until the date that is three years after the date of final approval.

5.     The Court appoints Winifred J. Daugherty, Walter James, and Gloria Jackson as the Class Representatives for both the Monetary Relief Class and the Structural Changes Class (collectively, the "Settlement Classes").

6.     The Court appoints the following firms as counsel to the Settlement Classes: (a) Berger & Montague, P.C.; (b) Schneider Wallace Cottrell Konecky Wotkyns, LLP; and (c) Wexler Wallace LLP; and appoints Berger & Montague, P.C. and Schneider Wallace Cottrell Konecky Wotkyns, LLP as Co-Lead Counsel.

7.     The Court finds that Defendant has complied with the notice requirements of 28 U.S.C. § 1715 and has previously filed a notice confirming its compliance.

8.     The Class Notice was previously provided to all Settlement Class Members who could be identified with reasonable effort. The form and method of notifying the Settlement Classes of the terms and conditions of the proposed Settlement met the requirements of Fed. R. Civ. P. 23, due process, and any other applicable law; constituted the best notice practicable under the circumstances; and constituted due and sufficient notice to all persons entitled thereto of the terms and conditions of the Settlement and the right to object.

9.     Based on the evidence submitted by the parties, the Court concludes that the Settlement is fair, reasonable and adequate. The Settlement is therefore approved, and the Parties are directed to consummate the Settlement Agreement in accordance with its terms and conditions.

10.     The Plan of Allocation is also hereby approved as fair, reasonable and adequate.

11.     The Court finds that the members of the Settlement Class are in privity with the interests of the plans, their participants and their beneficiaries, and all private parties authorized to sue under ERISA sections 502(a)(2) and (3), that such private parties are adequately represented

by the Class Members, and all parties authorized to sue under ERISA sections 502(a)(2) and (3) are hereby bound by the Settlement and this Order.

12.    The Action is hereby dismissed with prejudice in its entirety and without an award of costs, except as provided in the Settlement Agreement.

13.    The Settlement agreement is hereby approved in its entirety.

14.    For purposes of this Paragraph 14 of this Order, the following definitions (which are identical to the definitions in the Settlement Agreement, as modified above) shall apply:

a.    "Chicago Releasees" shall mean, collectively, the Defendant Released Parties (as defined below) and Other Released Parties (as defined below).

b.    "Defendant Released Parties" shall mean the University of Chicago and its affiliates, the Trustees of the University and the University's affiliates, and any and all current and former employees of the University and the University's affiliates including those who have acted as a fiduciary or provided services to one of the Plans at any time during the class period.

c.    "Other Released Parties" shall mean the University of Chicago's insurers and all third parties that provided services to the Plans, including but not limited to Vanguard, TIAA, Aon, and any mutual fund company whose funds were designated investment alternatives at any time during the class period.

d.    "Released Claims" shall mean any and all claims, debts, demands, rights or causes of action, suits, matters, and issues or liabilities whatsoever (including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses or liability whatsoever), whether based on federal, state, local, statutory or common law or any other law, rule or regulation, whether fixed or contingent,

4

accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, whether class, derivative, or individual in nature (collectively, "Claims"), including both known Claims and Unknown Claims, against any of the Chicago Releasees and Defendant's Counsel (i) that have been asserted in this litigation or which could have been asserted in this litigation, or (ii) that in any way arise out of, relate to, are based on, or have any connection with the Plans' management and administration, including, but not limited to any fees, expenses, investment option performance, monitoring of investment options, or Plan loans, or (iii) that would have been barred by res judicata had the Action been fully litigated to a final judgment. The Released Claims do not include (a) claims pertaining to errors in individual benefit calculations of failure to follow participant instructions or (b) any claims asserted against TIAA in *Haley v. Teachers Investment and Annuity Association*, 1:17-cv-00855-JPO (S.D.N.Y.).

Upon the occurrence of the Effective Date, all Monetary Relief Class Members and their successors and assignees are permanently enjoined, either directly, representatively, or in any other capacity, from prosecuting, instituting, or commencing any individual, class, or other action with respect to the Released Claims against any of the Chicago Releasees.

15. The terms of the Settlement Agreement and of this Final Approval Order and Judgment shall be forever binding on the Class Representatives, Structural Change Class Members, Monetary Relief Class Members, and all of their successors and assigns, and the Settlement shall have *res judicata* and other preclusive effect in all pending and future claims, lawsuits, or other proceedings involving the same or similar claims as those asserted in this Action, or that are otherwise encompassed by the Release and Covenant Not to Sue set forth in the

Settlement Agreement, and the Settlement Agreement may be pled as a full and complete defense to any such claims, lawsuits, or proceedings.

16.    For as long as Defendant and its successors and assignees continue to comply with Section IV of the Agreement, in connection with which the University (1) does not increase the per-participant recordkeeping fees for the next three years and (2) continues to conduct periodic reviews of the investment options in the new investment lineup, including the TIAA Real Estate Account, all Structural Changes Class Members and their successors and assigns are enjoined from instituting, maintaining, prosecuting, suing, or asserting in any action or proceeding in any federal or state forum any claim, based on conduct subsequent to, or any liability or damages claimed to arise or occur after, the date of Preliminary Approval, with respect to any of the Structural Changes. This covenant not to sue shall expire at the end of the calendar year occurring three years from the date of this Order.

17.    In recognition of their work, the time and expenses incurred on behalf of the Members of the Settlement Classes and the value of the results achieved on behalf of the Members of the Settlement Classes, pursuant to the terms of the Settlement Agreement, each named Plaintiff shall be entitled to receive out of the Settlement Amount a Case Contribution Fee in the amount of $[$10,000], and Class Counsel shall be entitled to receive out of the Settlement Amount reasonable attorneys' fees in the amount of $[__*1,850,000.00*___] *R.C.* plus reasonable costs and other expenses in the amount of $[_*67,985*_].*72* *R.C.*

18.    Without affecting the finality of this Final Approval Order and Judgment in any way, this Court hereby retains continuing jurisdiction over (a) implementation of the Settlement and any award or distribution of the Distributable Settlement Amount; and (b) the Parties and the

Members of the Settlement Classes for purposes of construing, enforcing and administering the

Agreement.

SO ORDERED this _____ day of _____ , 2018

_____

United States District Judge

Exhibit C

**Short v. Brown University**

**Proposed Plan of Allocation**

The proportion of the settlement allocated to each Settlement Class Member shall be calculated as the sum of month-end account balances of a Member of the Settlement Class during the Class Period divided by the sum of the month-end annual account balances of all Settlement Class Members during the Class Period.  The Settlement Administrator shall also obtain, in writing, an agreement between the Settling Parties as to the amount of the Net Settlement Amount.  The amounts due to each Settlement Class Member shall be calculated by the Settlement Administrator as follows:

**STEP 1:** The Settlement Administrator shall obtain the opening balance as of July 31, 2011 and each of the month-end account balances for every Member of the Settlement Class for the Class Period.  The last month-end account balance to be used in the calculation will be the account balances of March 31, 2019.

**STEP 2:** The Settlement Administrator shall sum each Settlement Class Member's opening account balance as of July 31, 2011 and month-end balances for the Class Period ("Total Balance"), and, for any Class Member with a positive sum, shall divide that sum by the sum of Total Balances of all the Members of the Settlement Class for the Class Period, with the quotient representing the Entitlement Percentage for each such Class Member.  (*Total Balance for Each Class Member (positive only) ÷ Sum of Total Balances for all Class Members = Entitlement Percentage*)

**STEP 3:** The Settlement Administrator shall next multiply each Settlement Class Member's Entitlement Percentage by the Net Settlement Amount, with the product representing the Preliminary Entitlement Amount.  (*Entitlement Percentage x Net Settlement Amount = Preliminary Entitlement Amount*)

**STEP 4:** All Members of the Settlement Class with a positive sum (as set forth in Step 2 above) who are Current Participants as of the distribution date will receive an allocation from the Settlement Administrator to be deposited in his or her accounts in the Plans, regardless of the amount of the Preliminary Entitlement Amount.  Former Participants who do not have an Active Account and whose Preliminary Entitlement Amount is less than $25 shall receive no disbursement (the "No Payment Group").  The Settlement Administrator shall recalculate the Entitlement Percentage described in STEP 2 for each Class Member with a positive sum (as set forth in Step 2 above),other than the No Payment Group, after reducing the denominator by the Total Balances of all Class Members in the No Payment Group.

**STEP 5:**  The Settlement Administrator shall then repeat STEP 3 to determine the Final Entitlement Amounts for each Member of the Settlement Class after eliminating the No Payment Group.

**STEP 6:**  The Final Entitlement Amount for each Member of the Settlement Class with a positive sum (as set forth in Step 2 above)  who is a Current Participant as of the date of entry of the Final Approval Order will be deposited into the Class Member's Plan account and shall be treated as additional earnings, as further outlined in Paragraph 6.5.

**STEP 7:**  The Final Entitlement Amount for each Former Participant whose Preliminary Entitlement Amount is more than $25 will be transferred to an automatic rollover individual retirement account, as that term is described in 29 C.F.R 2550.404a-2, sponsored by Retirement Clearinghouse, LLC.